**OUTTEN & GOLDEN LLP**
Nicholas H. Sikon
Aliaksandra Ramanenka
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH & MCLENNAN AGENCY LLC, | |
| Plaintiff, | No. 19-cv-03837 (VSB) |
| -against- | |
| ELMER "RICK" FERGUSON, | |
| Defendant. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE MOTION TO COMPEL ARBITRATION,
AND IN SUPPORT OF APPLYING CALIFORNIA LAW**

---

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 1

    I.     Plaintiff's Corporate Structure ................................................................................. 1

    II.    Background on Rick Ferguson and His Investment Advisor Work.................................. 2

    III.   Mr. Ferguson's Employment History ......................................................................... 5

    IV.   Mr. Ferguson has no Connection to New York ......................................................... 8

ARGUMENT .................................................................................................................... 8

    I.     MMA Does Not Have Standing to Bring Suit on Behalf of its Subsidiary, MMA
         Securities LLC .......................................................................................................... 8

    II.    In the Alternative, the Court Should Dismiss This Matter and Compel the Parties To
         Arbitrate ................................................................................................................. 13

         A.   If MMA has Standing to Bring these Claims, then it Knowingly Accepted the
             Benefits of the Agreement Between MMA Securities LLC and Mr. Ferguson and is
             Estopped from Avoiding Arbitration. ........................................................................ 13

         B.   If MMA has Standing to Bring these Claims, then MMA Securities LLC was its
             Agent and MMA is Required to Arbitrate this Dispute Pursuant to MMA Securities
             LLC's Agreement with Mr. Ferguson. ........................................................................ 18

    III.   The Complaint Should also Be Dismissed Under Rule 12(b)(7), Because Plaintiff Failed
         to Join MMA Securities LLC – a Necessary and Indispensable Party ........................... 20

    IV.   The Court Should Apply California Law to All Causes of Action in this Matter ............ 23

CONCLUSION ................................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*ACE Capital Re Oversees Ltd. v. Central United Life Insur. Co.*,
 307 F.3d 24 (2d Cir. 2002) ................................................................................ 17

*Alfa Laval U.S. Treasury v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
 857 F. Supp. 2d 404 (S.D.N.Y. 2012) ................................................................ 17

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
 170 F.3d 349 (2d Cir. 1999) ......................................................................... passim

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*,
 28 Cal. App. 5th 923, (2018) .............................................................................. 25

*Astra Oil Co. v. Rover Navigation, Ltd.*,
 344 F.3d 276 (2d Cir. 2003) ................................................................................ 20

*Bank of Am. Natl. Assn. v. Sopher*,
 10 Civ. 8870, 2011 WL 2419872 (S.D.N.Y. June 8, 2011) ................................ 14

*In re Beck Indus., Inc.*,
 479 F.2d 410 (2d Cir. 1973) .................................................................................. 9

*Bross Util. Serv. Corp. v. Aboubshait*,
 618 F. Supp. 1442 (S.D.N.Y.1985) ....................................................................... 9

*Business Incentives Co., Inc. v. Sony Corp. of America*,
 397 F. Supp. 63 (S.D.N.Y. 1975) ........................................................................ 24

*Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Intern., Inc.*,
 758 F. Supp. 908 (S.D.N.Y. 1991) ...................................................................... 19

*City of N.Y. v. Milhelm Attea & Bros., Inc.*,
 550 F.Supp.2d 332 (E.D.N.Y. 2008) ................................................................... 20

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
 No. 12 Civ. 0722, 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) .................... 9, 12

*Credit Suisse Sec. (USA) LLC v. Tracy*,
 812 F.3d 249 (2d Cir. 2016) ................................................................................ 17

*Deloitte Noraudit A/S v. Deloitte Haskins Sells*, U.S.,
 9 F.3d 1060 (2d Cir. 1993) ............................................................................ 14, 17

*Dover Ltd. v. A.B. Watley, Inc.*,
 423 F. Supp. 2d 303 (S.D.N.Y. 2006) ................................................................. 18

*Green Island Power Auth. v. F.E.R.C.*,
 577 F.3d 148 (2d Cir. 2009) ................................................................................ 10

*Heller v. MC Fin. Servs. Ltd.*,
 No. 97 Civ. 5317, 1998 WL 190288 (S.D.N.Y. Apr. 21, 1998) .......................... 18

*Holland v. Fahnestock & Co., Inc.*,
 210 F.R.D. 487 (S.D.N.Y. 2002) ......................................................................... 21

*Hudson Optical Corp. v. Cabot Safety Corp.*,
   No. 97 Civ. 9046, 1998 WL 642471 (2d Cir. Mar. 25, 1998)................................................ 9, 12

*In World Omni Financial Corp. v. Ace Capital Re Inc.*,
   64 Fed. Appx. 809 (2d Cir. 2003) ....................................................................................... 17

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004)................................................................................................. 20

*Life Tech. Corp. v. AB Sciex Pt. Ltd*,
   803 F. Supp. 2d 270 (S.D.N.Y. 2011) ........................................................................... 14, 16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................... 9

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
   268 F.3d 58 (2d Cir. 2001) .................................................................................................. 14

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013)................................................................................................. 21

*Mattera v. Clear Channel Commc'ns, Inc.*,
   239 F.R.D. 70 (S.D.N.Y. 2006)............................................................................................ 20

*Mazzio v. Kane*,
   No. 14-CV-616 ARR MDG, 2014 WL 2866040 (E.D.N.Y. June 24, 2014)......................... 22

*MBIA Ins. Corp. v. Royal Bank of Canada*,
   706 F.Supp.2d 380 (S.D.N.Y. 2009).................................................................................... 14

*Medicrea USA, Inc. v. K2M Spine, Inc.*,
   No. 17 Civ. 8677, 2018 WL 3407702 (S.D.N.Y. Feb. 7, 2018) ........................................... 24

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)................................................................................................... 13

*MGM Resorts Int'l Global Gaming Dev., LLC v. Malloy*,
   861 F. 3d 40 (2d Cir. 2017) ................................................................................................... 8

*Minskoff v. Amer. Express Travel Related Servs. Co.*,
   98 F.3d 703 (2d Cir. 1996) .................................................................................................. 19

*Morlife, Inc. v. Perry*,
   56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (1997) ........................................................... 25

*Motorola Credit Corp. v. Uzan*,
   274 F. Supp. 2d 481 (S.D.N.Y.2003).................................................................................... 10

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
   508 U.S. 656 (1993) ............................................................................................................... 8

*Oppenheimer Co. Inc. v. Deutsche Bank AG*,
   No. 09 Civ. 8154, 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010)............................................. 14

*Parker Madison Partners v. Airbnb, Inc.*,
   283 F. Supp. 3d 174 (S.D.N.Y. 2017)................................................................................... 12

*Pollara v. Radiant Logistics Inc.*,
   No. CV 12-344 GAF (JEMX), 2014 WL 12585781 (C.D. Cal. June 6, 2014)....................... 12

*In re Salomon Inc. Shareholders' Derivative Litig.*
   1994 WL 533595 (S.D.N.Y. Sept. 30, 1994) ...................................................... 18, 19
*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016) ................................................................................................ 9
*Steel Co. v. Citizens for Better Env't*,
   523 U.S. 83 (1998) ..................................................................................................... 9
*TGG Ultimate Holdings, Inc. v. Hollett*,
   224 F. Supp. 3d 275 (S.D.N.Y. 2016) ...................................................................... 24
*TGG Ultimate Holdings, Inc. v. Hollett*,
   No. 16 CIV. 6289 (VM), 2017 WL 1019506 (S.D.N.Y. Feb. 24, 2017) ................ 23
*The Ret. Grp. v. Galante*,
   176 Cal. App. 4th 1226, 98 Cal. Rptr. 3d 585 (2009) ......................................... 24, 25
*Thixomat, Inc. v. Takata Physics Int'l, Co., Ltd.*,
   No. 01 Civ. 5449, 2001 WL 863566 (S.D.N.Y. July 30, 2001) ............................. 20
*Thomas James Associates, Inc. v. Jameson*,
   102 F.3d 60 (2d Cir. 1996) ....................................................................................... 17
*Thomson–CSF, S.A. v. Am. Arbitration Assoc.*,
   64 F.3d 773 (2d Cir. 1995) ....................................................................................... 13
*Viacom Int'l, Inc. v. Kearney*,
   212 F.3d 721 (2d Cir. 2000) ................................................................................. 21, 22
*Wilhelmina Models, Inc. v. Fleisher*,
   19 A.D.3d 267 (1st Dep't 2005) ............................................................................... 10
*WTA Tour, Inc. v. Super Slam Limited*,
   339 F. Supp. 3d 390 (S.D.N.Y. 2018) ...................................................................... 17

**Statutes**

9 U.S.C. §§ 1-16 ............................................................................................................ 13
Cal. Bus. & Prof. Code § 16600 .................................................................................... 24
Cal. Civ. Code § 3426.1 (West) ..................................................................................... 25
California Penal Code Section 502 ................................................................................. 12

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................... 1, 20
Fed. R. Civ. P. 19 .......................................................................................................... 21

**Regulations**

17 C.F.R. § 248.30 ........................................................................................................... 3

**Other Authorities**

Restatement (Second) of Agency § 1 (1958) ................................................................................. 18

FINRA Code of Arbitration Procedure for Industry Disputes, § 13200 ................................. 14, 19

FINRA Code of Arbitration Procedure for Industry Disputes, § 13804 ...................................... 13

## PRELIMINARY STATEMENT

Defendant Elmer "Rick" Ferguson ("Defendant" or "Mr. Ferguson") submits this memorandum of law regarding threshold issues pursuant to the Court's May 20, 2019 Order (ECF No. 14). Mr. Ferguson respectfully submits that the Court should dismiss this matter pursuant to Fed. R. Civ. P., Rules 12(b)(1) and 12(b)(7), because Plaintiff Marsh & McLellan Agency ("Plaintiff" or "MMA") (a) does not have standing to bring these claims on behalf of its subsidiary – the true owner of the claims; (b) failed to join the subsidiary as a required party; or (c) must be compelled to arbitrate the claims.

The crux of MMA's complaint is that Mr. Ferguson has misappropriated confidential information and trade secrets and used it to solicit MMA's corporate retirement plan clients. However, MMA does not actually have any corporate retirement plan clients and does not own their confidential information and trade secrets – they belong to its subsidiary, MMA Securities LLC, which was Mr. Ferguson's actual employer. The only conceivable reason MMA has brought these claims as opposed to its subsidiary is to evade the Financial Industry Regulatory Authority's ("FINRA's") arbitration requirement. Plaintiff cannot have it both ways: either it has no claims, or it must bring them in a FINRA arbitration. Finally, to the extent this matter proceeds before the Court, the applicable substantive law should be California law.

## STATEMENT OF FACTS

### I.    Plaintiff's Corporate Structure

Plaintiff Marsh & McLellan Agency LLC ("MMA") is a national firm that provides corporate clients with an array of benefits solutions related to commercial risk, employee benefits, and marketing with respect to retirement plans. *See* ECF No. 1 ("Complaint"), ¶ 24; Declaration of Ferguson ("Ferguson Decl."), ¶ 1. Investment advice with respect to corporate retirement plans is not actually provided by MMA. *See* Ferguson Decl., ¶ 2. Rather, pursuant to various rules and

regulations, such services are offered via an appropriately registered entity, specifically a subsidiary of MMA, MMA Securities LLC. *Id.* Plaintiff's website confirms this distinction, noting "[s]ecurities offered through MMA Securities LLC, Member FINRA / SIPC, and a federally registered investment advisor." *See* https://www.marshmma.com/offerings/retirement-services (last visited June 5, 2019). Previously, these retirement plan services were offered by a different registered entity, SagePoint Financial ("SagePoint"). *See* Ferguson Decl., ¶ 4. A disclosure pointing out the separation of the entities and their services must be displayed on all emails, business cards, and marketing materials of MMA and MMA Securities LLC, so that clients know that MMA does not actually offer retirement plan services. *Id.* at ¶ 5.

Because MMA Securities LLC is an investment advisor engaged in the business of providing retirement investment advice, it must register with the Securities & Exchange Commission ("SEC") and publicly file SEC Form ADV ("Uniform Application for Investment Adviser Registration"). *Id.* at ¶ 6. Schedule A to MMA Securities LLC's ADV Form indicates that MMA Securities LLC is owned and controlled by Marsh Insurance & Investments LLC. *Id.*, Ex. A (MMA Securities LLC Form ADV).[1] Schedule B to the same ADV form indicates that Marsh Insurance & Investments LLC is owned and controlled by Seabury & Smith LLC, which in turn is owned and controlled by MMA. *Id.* In other words, Plaintiff MMA owns and controls Seabury & Smith LLC, which owns and controls Marsh Insurance & Investments LLC, which owns and controls MMA Securities LLC. MMA Securities LLC is therefore a subsidiary of MMA.

## II.    Background on Rick Ferguson and His Investment Advisor Work

Rick Ferguson is a veteran of the first Gulf War and a Registered Representative ("RR") under FINRA employed with Triad Advisors LLC ("Triad"). *See* Ferguson Decl., ¶ 11. Mr.

---

[1]    The full version of MMA Securities LLC's ADV Form is located on the SEC's website at: https://adviserinfo.sec.gov/IAPD/content/ViewForm/crd_iapd_stream_pdf.aspx?ORG_PK=44254 (June 5, 2019).

Ferguson is also a Registered Investment Advisor Representative ("RIAR" or "Investment Advisor") employed with Resources Investment Advisors LLC ("Resources"), a Registered Investment Advisor ("RIA").  *Id*. at ¶ 11.   Triad and Resources are not affiliated, and Mr. Ferguson uses Teros Advisors LLC ("Teros") as the marketing entity for his investment and advisory services.  *Id*.   Prior to joining Triad and Resources, Mr. Ferguson was employed by MMA Securities LLC as both a RR and a RIAR.  *Id*. at ¶ 12.   MMA Securities LLC is dually-registered as a RIA and a FINRA member firm and, as explained above, is a subsidiary of MMA.  *Id*.

As a Registered Representative and Investor Advisor, Mr. Ferguson provides both investment broker services and investment-related fiduciary advice to companies regarding their corporate retirement plans.  *Id*. at ¶ 13.   Specifically, he advises corporate clients of all sizes with respect to ERISA-covered 401(k), 403(b), and other pension plans.  *Id*. at ¶ 14.   He helps these clients select a plan and investments, and thereafter advises them with respect to any issues that may arise.  *Id*.   In order to obtain investment brokerage services or investment advice, the clients must enter into appropriate brokerage and/or co-fiduciary investment advisory agreements with the relevant registered entity (*i.e.*, MMA Securities LLC, Traid, or Resources) as well as with a specific investment broker or Investment Advisor (*i.e.*, Mr. Ferguson).  *Id*. at ¶ 15.   Pursuant to these agreements, the clients pay the applicable FINRA or SEC-registered entity a fee in relation to the services Mr. Ferguson provides, and Mr. Ferguson owes his clients a fiduciary duty.  *Id*.

A RIA's marketing entity (*e.g.*, Teros or MMA) generally does not have any legal relationship with an Investment Advisor's corporate clients.  *Id*. at ¶ 16.   This is because there are rules and regulations, such as SEC Regulation S-P, 17 C.F.R. § 248.30, that require information related to corporate retirement plans – as well as participants in those plans – to be protected and walled off from non-registered individuals and entities.  *Id*.   As such, information pertaining to

Mr. Ferguson's corporate clients was maintained by MMA Securities LLC and not MMA. *Id.* at ¶ 17. MMA could not possess this information because it is not a RIA and its representatives on other lines of business (*i.e.*, commercial risk and health and welfare) cannot be privy to this information. *Id.* MMA and MMA Securities LLC maintained policies to this effect. *Id.*

Additionally, as noted, Mr. Ferguson's corporate clients enter into agreements with and pay their fees directly to the registered entities (*i.e.*, MMA Securities LLC or Resources) and not their corporate parents or marketing entities. *Id.* at ¶ 18. This is because the corporate parents, unlike Mr. Ferguson and the RIA, are not fiduciaries with respect to the corporate retirement plan and are not registered or licensed to provide these retirement plan services. *Id.* While he was employed at MMA Securities LLC, Mr. Ferguson, like many other Investment Advisors, had an outside business activity agreement with MMA that permitted any revenue generated with respect to his corporate clients to be paid to MMA Securities LLC and then remitted to MMA (such fees can only be paid to a registered entity or individual, which MMA is not). *Id.* at ¶ 19. MMA, in turn, paid Mr. Ferguson compensation based on the revenue received. *Id.* at ¶ 20.

Finally, pursuant to SEC and FINRA rules, Mr. Ferguson was required to work in an office identified as "MMA Securities LLC" and not MAA. *Id.* at ¶ 21. MMA Securities LLC had its own support staff separate and apart from MMA, including but not limited to a distinct Compliance Department. *Id.* Mr. Ferguson also held himself out to clients as an Investment Advisor with MMA Securities LLC, and his corporate email account contained a disclosure which stated that he was an Investment Advisor with MMA Securities LLC (as opposed to MMA). *Id.* at ¶ 22. Mr. Ferguson's former supervisor, Jeff Calder, was an MMA employee and Managing Director of the San Francisco office, but two of Mr. Ferguson's former colleagues, William Peartree and Jeff Stephens, are identified in their FINRA Broker Check Reports as being Investment Advisors

"currently employed by and registered with" MMA Securities LLC.  *Id*. at ¶ 23; *see also* Ferguson

Decl., Ex. B (FINRA Broker Check Reports for William Peartree and Jeff Stephens), at p. 3.

### III.    Mr. Ferguson's Employment History

In 2007, Mr. Ferguson joined SagePoint Financial Inc. ("SagePoint") as a Registered

Assistant.  *See* Ferguson Decl., Ex. C (FINRA Broker Check Report for Rick Ferguson), at p. 6.

Over the next seven years, Mr. Ferguson advanced to Registered Representative and Registered

Investment Advisor Representative, and built a significant book of corporate clients to whom he

provided investment advice regarding corporate retirement plans.  *See* Ferguson Decl., ¶ 25.  These

clients entered into agreements with SagePoint, which remitted the fees it received to Barney &

Barney LLC, and which in turn compensated Mr. Ferguson.  *Id*. at ¶ 26.

In 2014, MMA acquired 100% of the membership interest in Barney & Barney.  *See*

Complaint, ¶ 3.  At the time, Barney & Barney and MMA issued Mr. Ferguson a letter confirming

he would "continue to serve as a representative of SagePoint Financial, Inc. ("Broker Dealer")

until such time as the Company requires the arrangement to be terminated in its sole discretion."

*See* Ferguson Decl., Ex. D (January 31, 2014 Letter), at p. 1.  That letter also noted that Barney &

Barney and MMA were "solely providing ministerial and administrative support to [Mr. Ferguson]

relating to the Broker Dealer Products," *i.e.*, "securities, investment, or insurance product or

service sold in connection with [Mr. Ferguson's] relationship to the Broker Dealer."  *Id*.  This was

confirmed by a Q&A form issued in conjunction with the transaction which stated that  MMA

"does not service any clients and primarily serves as the corporate headquarters for all of its agency

companies."  *See* Ferguson Decl., Ex. E (Q&A Form), at p. 1.  Mr. Ferguson was also required,

without advice of legal counsel, to execute a non-solicitation agreement.  *See* Declaration of Crain

in Support of Order to Show Cause ("Crain Decl."), Ex. A.  That agreement indicated it was

between Mr. Ferguson and "Barney & Barney, a Marsh & McLennan Agency LLC company, *and/or subsidiaries thereof* (the 'Employer')." *Id*. at p. 1 (emphasis added).

In 2015, Mr. Ferguson's employment and registration was dually registered with SagePoint and MMC Securities LLC, so that Mr. Ferguson's client-related income could flow from SagePoint to MMC Securities to MMA. *See* Ferguson Decl., ¶ 31. At the time that he joined MMC Securities LLC, the firm filed a Form U-4 with FINRA. *Id*., Ex. F (Ferguson U-4 Form). That form indicated his starting employment date with MMC Securities LLC was August 2014 and that he was not an independent contractor. *Id*. at p. 1. The Form U-4 also indicated Mr. Ferguson's consent to arbitrate any dispute, claim, or controversy that may arise between him and his firm, which is confirmed by FINRA Rule 13200. *Id*. at p. 14. Shortly thereafter, Mr. Ferguson's employment and registration was transferred from SagePoint Financial and MMC Securities LLC to MMA Securities LLC.[2] *See* Ferguson Decl., ¶ 32; Ferguson Decl., Ex. G (FINRA CRD) (Mr. Ferguson's "Employment" dates with MMA Securities LLC were September 1, 2015 to February 15, 2019).

Mr. Ferguson excelled at MMA Securities LLC, generating numerous new clients and growing his book of business to approximately $600,000. *See* Ferguson Decl., ¶ 34. From 2015 to 2018, he received good performance reviews as well as several significant bonuses and was nationally recognized by the SagePoint Achievers Council as a Top Producer. *Id*. However, over time, Mr. Ferguson became concerned about discriminatory treatment he was experiencing on account of his sexual orientation. *Id*. at ¶ 15. He began to notice that he was not receiving the same training or support as his straight coworkers. *Id*. at ¶ 36. While his straight colleagues were allowed to work solely as producers, Mr. Ferguson was required to continue servicing accounts at

---

[2]      Mr. Ferguson does not have the documentation filed with FINRA effectuating this transfer. He has requested it from MMA Securities LLC but it has not been provided. *See* Ferguson Decl., ¶ 33.

the same time.  *Id.*  These colleagues were also given client accounts to start their books of business and compensated more favorably.  *Id.*  When Mr. Ferguson complained about this discriminatory treatment, he was told to shut up or he would be fired and that he did not fit the "proper" image of the company because he was gay.  *Id.* at ¶ 37.

Eventually, when his clients were reassigned to a straight coworker without client knowledge or approval because that individual "better represented the image the company would like to promote," Mr. Ferguson complained that in so doing the company had breached its fiduciary obligation to the clients, and violated, among other statutes and regulations, the Investment Advisors Act of 1940, the Employee Retirement Income Security Act of 1974, and FINRA Rules adopted by the SEC.  *Id.* at ¶ 38.  Very shortly thereafter, on February 15, 2019, he was abruptly terminated.  *Id.* at ¶ 39.

Following Mr. Ferguson's termination, MMA Securities LLC filed a Form U-5 with FINRA.  *See* Ferguson Decl., Ex. H (Ferguson U-5 Form).  Notably, the cover letter to that Form U-5 stated that Mr. Ferguson was "no longer authorized to conduct any securities business *on MMA Securities' behalf.*"  *Id.* (emphasis added).  The U-5 Form itself noted that the February 15, 2019 termination was a "full termination," that MMA Securities LLC terminated Mr. Ferguson's "association with the firm in a capacity for which registration is required," and did not indicate that the termination was a "multiple termination with one or more firms affiliated with the filing firm."  *Id.* at pp. 1-2.  An addendum to the Form U-5 stated that at the time of the termination, MMA Securities LLC was conducting a review regarding the "removal of company property . . . [and] solicitation of clients and prospective clients while licensed with MMA Securities on behalf of unaffiliated third party before and after termination."  *Id.* at p. 6.  The Form U-5 was verified as accurate and completed by Mariane Liebowitz on behalf of MMA Securities LLC.  *Id.* at p. 5.

## IV.    Mr. Ferguson has no Connection to New York

For the past 19 years, Mr. Ferguson has lived and worked as a Registered Representative and/or Investment Advisor in the State of California.  *See* Ferguson Decl., ¶ 41.  He is licensed in that State, and all but two of his clients are located there.  *Id*. at ¶ 42.  On the other hand, Mr. Ferguson is not licensed in and has never conducted any Registered Representative or Investment Advisor work in New York.  *Id*. at ¶ 44; *see also* Ferguson Decl., Ex. C (FINRA Broker Check Report for Rick Ferguson), at p. 4.  Under SEC and FINRA rules, he is not allowed to advise any clients in New York.  *See* Ferguson Decl., ¶ 45.  Accordingly, none of his clients were or are currently based in New York, and he has never traveled there on Investment Advisor business.  *Id*. at ¶ 46.  In other words, Mr. Ferguson has no personal or business connection to New York.

## <u>ARGUMENT</u>

## I.    MMA Does Not Have Standing to Bring Suit on Behalf of its Subsidiary, MMA Securities LLC

A plaintiff must have standing in order to a pursue a claim in federal court.  To demonstrate standing under Article III, a plaintiff must show: (1) an "injury in fact," which is "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal relationship between the injury and the challenged conduct," establishing "that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court"; and (3) a "likelihood that the injury will be redressed by a favorable decision," such that "the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative."  *MGM Resorts Int'l Global Gaming Dev., LLC v. Malloy*, 861 F. 3d 40, 44 (2d Cir. 2017) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663–64 (1993) (internal quotation marks and citations omitted)).

The "first and foremost" of the three standing elements is injury-in-fact. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). To establish injury-in-fact, "a plaintiff must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 136 S.Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To be "particularized," such an injury "must affect the plaintiff in a personal and individual way." *Id*. To be "concrete," an injury "must actually exist." *Id*.

New York law bars parent corporations from bringing direct suits aimed at vindicating injuries suffered by their subsidiaries. The Second Circuit has held that a corporate subsidiary is a "separate corporation," and the parent entity does not have any inherent "standing to assert [the subsidiary's] legal rights." *See Hudson Optical Corp. v. Cabot Safety Corp.*, No. 97 Civ. 9046, 1998 WL 642471, at *3 (2d Cir. Mar. 25, 1998) (summary order); *see also In re Beck Indus., Inc.*, 479 F.2d 410, 418 (2d Cir. 1973) ("Where a parent corporation desires the legal benefits to be derived from organization of a subsidiary that will function separately and autonomously in the conduct of its own distinct business, the parent must accept the legal consequences, including its inability later to treat the subsidiary as its alter ego because of certain advantages that might thereby be gained. In short the parent cannot 'have it both ways.'"); *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 0722, 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012) ("It is black-letter law that one corporation cannot assert an affiliate's legal rights."); *Bross Util. Serv. Corp. v. Aboubshait*, 618 F. Supp. 1442, 1444–45 (S.D.N.Y.1985) ("A parent corporation cannot create a subsidiary corporation and then ignore the separate corporate existence of that subsidiary whenever it would be advantageous to the parent . . . . the courts will not allow a parent to pierce the corporate veil it created for its own benefit, so as to assert the claims of its subsidiary.") (emphasis in original).

9

Under New York law, the fact of corporate affiliation – *e.g.*, parent-subsidiary – does not give an entity the right to bring a suit in its own name for an injury to an affiliate. *See Green Island Power Auth. v. F.E.R.C.*, 577 F.3d 148, 161 (2d Cir. 2009) (holding that subsidiary had "fail[ed] to explain the mechanism by which injury would flow to it" from injury to its parent, and thus subsidiary had no standing); *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 495 (S.D.N.Y.2003) *aff'd in part, vacated in part, remanded, on other grounds*, 388 F.3d 39 (2d Cir. 2004) ("While, given their affiliated status, it may be that Motorola, Inc. and MCC can be conflated or viewed as agents of one another for certain evidentiary and other purposes, when it comes to bringing a claim the corporate forms must be respected and, absent an assignment or the like (not present here), only a company that itself suffered an injury can sue on that claim."); *Wilhelmina Models, Inc. v. Fleisher*, 19 A.D.3d 267, 269 (1st Dep't 2005) ("As separate entities from the potential borrower, plaintiffs could not directly profit from the loan proceeds and therefore damages were insufficiently pleaded.").

Here, Plaintiff MMA has no injury-in-fact. The Complaint demonstrates that each of the alleged injuries in this matter are actually alleged injuries of MMA's subsidiary, MMA Securities LLC. For example, MMA alleges in its first claim that Mr. Ferguson breached a non-solicitation agreement by retaining and disclosing confidential information and trade secrets in order to solicit his former clients. *See, e.g.*, Complaint, ¶¶ 12-13, 17, 100-01. However, MMA does not actually have any corporate retirement plan clients. *See* Ferguson Decl., ¶¶2, 16-18. All such clients must enter into agreements with MMA Securities LLC as it is a federally-registered RIA. *Id*. MMA even acknowledges as much on its website, stating "[s]ecurities offered through MMA Securities LLC, Member FINRA / SIPC, and a federally registered investment advisor." *Id*. at ¶ 3. Additionally, all confidential information and trades secrets related to such corporate retirement

plans and their participants (to the extent there are any) are maintained by MMA Securities LLC. *Id.* at ¶¶ 16-17.  SEC and FINRA rules and regulations require information related to corporate retirement plans to be walled-off from non-registered individuals and entities (*i.e.*, MMA).  *Id.* Accordingly, any alleged injury with respect to a breach of the agreement at issue belongs to MMA Securities LLC and not MMA.  Notably, the non-solicitation agreement at issue specifically identities MMA Securities LLC as a party to the agreement ("Marsh & McLellan Agency LLC company, *and/or subsidiaries thereof*") and states that a "subsidiary or affiliate may enforce the agreement."  *See* Crain Decl., Ex. A, at pp. 1, 6.  MMA Securities LLC therefore could have brought these claims against Mr. Ferguson but did not.

Similarly, MMA's alleged injuries for breach of the duty of loyalty and tortious interference (claims two and three) actually belong to MMA Securities LLC.  Mr. Ferguson was employed by MMA Securities LLC and not MMA, and any duty of loyalty he allegedly violated or tortious interference he supposedly committed by misappropriating confidential information or trade secrets and encouraging his clients to "terminate their engagements and relationships" in order "to obtain an unfair economic advantage" are potential injuries to MMA Securities LLC. *See, e.g.*, Complaint, ¶¶ 12-14, 106-07, 113.  Since MMA has no corporate retirement plan clients (Ferguson Decl., ¶¶ 2, 16-18), the entities at issue are clients of MMA Securities LLC, and all confidential information and trade secrets related to such corporate retirement plans belongs to MMA Securities LLC.  *Id.*  The same can be said of the unfair competition causes of action (claims four and five), which allege Mr. Ferguson unfairly competed with the company by breaching the aforementioned agreement and duty of loyalty and using confidential information and trade secrets to solicit clients.  *See, e.g.*, Complaint, ¶¶ 12-14, 17, 122-23, 130.[3]

---

[3]      Plaintiff's misappropriation and violation of the Uniform Trade Secrets Act causes of action (claims six and ten) also obviously relate to MMA Securities LLC, as MMA has no confidential information or trade secrets related

In other words, the Complaint in this matter very generally alleges injuries to MMA, but in reality, any supposed injuries were actually suffered by its subsidiary, MMA Securities LLC. MMA simply does not have any relevant relationship with the corporate clients at issue or any alleged confidential information or trade secrets relating to them. Any alleged harm in relation to these lost clients or trades secrets has been suffered by MMA Securities LLC. MMA Securities LLC has even recently reported these issues to FINRA as alleged harms it has suffered (as opposed to MMA). *See* Ferguson Decl., Ex. H. The only reason MMA has brought this suit as opposed to MMA Securities LLC – which it could have done under the agreement at issue – is to circumvent FINRA's arbitration requirement. *See* Section II, *infra*. Case law is clear that a parent company does not have standing to bring suit for injuries suffered by its subsidiary. *See Hudson Optical Corp.*, *supra*; *Clarex Ltd.*, *supra*. Accordingly, the Court should dismiss this matter pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 180 (S.D.N.Y. 2017) (VSB) (dismissing complaint for lack of standing under Article III as the "conclusory statements and untethered assertions" in the complaint did not "allege any actual injury tied to [defendant's] actions. . . . Plaintiff's general allegations of 'damage to their business,' 'threats to their industry and the professional standards' of that industry, and 'substantial lost revenues'—not directly tied to injury suffered by Plaintiff—do not establish any cognizable injury as they do 'not include a single example' or give any details whatsoever as to any actual injury to Plaintiff connected to [defendant's] activities.").

---

to corporate retirement plans. *See, e.g.*, Complaint, ¶¶ 13, 15, 136-38, 164-67; *see also* Ferguson Decl., ¶¶ 16-18. Any alleged defamation (claim nine) regarding permission to solicit business or perform services for MMA Securities LLC clients is, again, an alleged injury to MMA Securities LLC. *See, e.g.*, Complaint, ¶¶ 56, 68, 156; *see also* Ferguson Decl., ¶¶ 16-18. Finally, alleged harm in relation to Mr. Ferguson supposedly using MMA computer systems to misappropriate confidential information or trades secrets in violation of California Penal Code Section 502 (claim eight) is, again, an alleged injury to MMA Securities LLC. *See e.g.*, Complaint), ¶ 151. MMA isn't allowed to possess this information on their computers; it must be maintained by MMA Securities LLC. *See* Ferguson Decl., ¶¶ 16-18.

## II.    In the Alternative, the Court Should Dismiss This Matter and Compel the Parties To Arbitrate

For the reasons discussed above, MMA has not been injured in relation to this matter and therefore does not have standing to assert the claims herein.  However, should the Court determine that MMA does have standing to bring these claims, then is should, for the following reasons, dismiss this matter and compel the parties to arbitrate.[4]

### A.    If MMA has Standing to Bring these Claims, then it Knowingly Accepted the Benefits of the Agreement Between MMA Securities LLC and Mr. Ferguson and is Estopped from Avoiding Arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citations omitted).  Section 2 of the FAA provides, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 4 of the FAA allows a party to such an agreement to petition a district court for an order compelling arbitration where a counterparty "fail[s], neglect[s], or refus[es] . . . to arbitrate" under the terms of an arbitration agreement.  *Id*. § 4.

The Second Circuit has stated that "non-signatories may be bound by arbitration agreements entered into by others . . . pursuant to five different theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel."  *Am. Bureau*

---

[4]        Defendant acknowledges that pursuant to FINRA Rule 13804(a), Plaintiff – or rather, MMA Securities LLC, as Plaintiff does not have standing to bring these claims – may seek temporary injunctive relief before a court of competent jurisdiction.  *See* FINRA Code of Arbitration Procedure for Industry Disputes (the "Code"), § 13804(a).  However, requests for permanent injunctive relief must be made before a FINRA arbitration panel, *id*. at § 13804(b), and the Complaint.  For the reasons discussed herein, should be dismissed for lack of standing or because the claim therein must be arbitrated.

*of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999) (citing *Thomson–CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (2d Cir. 1995)); *see also MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F.Supp.2d 380, 398 n. 9 (S.D.N.Y. 2009).

A non-signatory may be estopped from avoiding arbitration where it knowingly accepted the benefits of an agreement with an arbitration clause. *Bank of Am. Natl. Assn. v. Sopher*, 10 Civ. 8870, 2011 WL 2419872, at \*3 (S.D.N.Y. June 8, 2011) (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)); *see also Deloitte Noraudit A/S v. Deloitte Haskins Sells*, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993). "The benefits must be direct— which is to say, flowing directly from the agreement." *Oppenheimer Co. Inc. v. Deutsche Bank AG*, No. 09 Civ. 8154, 2010 WL 743915, at \*2 (S.D.N.Y. Mar. 2, 2010) (quoting *MAG Portfolio*, 268 F.3d at 61); *see also Tencara Shipyard*, 170 F.3d at 353. Benefits are direct – and will lead to estoppel when knowingly exploited – when they (1) arise specifically from the agreement containing the arbitration provision, and (2) were specifically contemplated by the relevant parties. *See Life Tech. Corp. v. AB Sciex Pt. Ltd*,, 803 F. Supp. 2d 270, 276 (S.D.N.Y. 2011).

Here, MMA does not have standing to bring these claims on behalf of its subsidiary, MMA Securities, LLC. *See* Section I, *supra*. To the extent it does, however, such standing would be based solely upon an alleged benefit it received directly from the agreement between Mr. Ferguson and MMA Securities LLC.[5] For example, the only reason MMA is able to advertise on its website

---

[5]    As noted, the employment agreement between Mr. Ferguson and MMA Securities LLC contains a provision requiring Mr. Ferguson and MMA Securities LLC "to arbitrate any dispute, claim or controversy that may arise between [him] and [his] *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* . . . ." *See* Ferguson Decl., Ex. F, at p. 14. This requirement to arbitrate is confirmed by FINRA Rule 13200, which states: "Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." *See* FINRA Code, § 13200(a). Mr. Ferguson is an Associated Person and MMA Securities LLC is a Member firm. *See* Ferguson Decl., ¶¶ 11-12. Further, the issues in this matter are undeniably "disputes, claims, or controvers[ies]" between Mr. Ferguson and his firm (*i.e.*, MMA Securities LLC), as well as "disputes aris[ing] out of the business activities of a member or an associated person," and are therefore contemplated by the arbitration provision.

that it provides "retirement services" including helping companies "assess[], "create" and "execute" retirement plans is because Mr. Ferguson agreed to provide those services via his employment agreement and registration with MMA Securities LLC.  *See* Ferguson Decl., ¶ 3.  The only reason MMA derives any revenue from those services is because Mr. Ferguson, by virtue of his employment agreement and registration, agreed to provide them for MMA Securities LLC.  *Id*. at ¶¶ 31-32.  Even then, the revenue in relation to Mr. Ferguson's services cannot be paid to MMA directly, and instead, must be paid to MMA Securities LLC, then to Mr. Ferguson, and then finally to MMA.  *Id*. at ¶¶ 18-19.  These benefits are knowingly exploited by MMA (it advertises the "retirement services" on its corporate website), arise specifically from an agreement containing an arbitration provision, and are specifically contemplated by the relevant parties, *i.e.*, Mr. Ferguson, MMA, and MMA Securities LLC.  *Id*. at ¶¶ 3, 12-19, 31-32.

MMA is also seeking to have it both ways with respect to the agreement between Mr. Ferguson and MMA Securities LLC.  On the one hand, it has filed this action claiming it and not MMA Securities LLC was Mr. Ferguson's employer and has suffered the injuries alleged herein.  On the other hand, it has represented in documents filed with FINRA that MMA Securities LLC was Mr. Ferguson's employer, and it has exploited the agreement between Mr. Ferguson and MMA Securities LLC to report its allegations against him to FINRA.  *Id*., Ex. F, H .  As recently as March 2019, MMA Securities LLC reported that it was investigating Mr. Ferguson's supposed "removal of company property" and "solicitation of institutional clients and prospective clients." *Id*., Ex. H, at p. 7.   These are the *exact same* claims alleged by MMA herein, and the only way Mr. Ferguson can now attempt to remedy these statements is by initiating an arbitration proceeding before FINRA against MMA Securities LLC.  Because MMA is using MMA Securities LLC to

report these same claims to FINRA thereby limiting Mr. Ferguson's forum options, it should be stopped from avoiding the arbitration provision between Mr. Ferguson and MMA Securities LLC.

New York courts, in these circumstances, regularly estop individuals and entities from avoiding arbitration where they have knowingly accepted the benefits of an agreement containing an arbitration clause. For example, in *Life Tech. Corp.*, the court concluded that a non-signatory entity was nevertheless bound to an agreement containing an arbitration provision as it had "knowingly accepted and exploited benefits provided for in, and contemplated by, a contract containing an arbitration provision." 803 F. Supp. 2d at 277. The court held that by contracting for the benefits of a previous agreement and then using those benefits in commerce, all with the knowledge that the original agreement contained an arbitration provision, the non-signatory had knowingly exploited the benefits of the original agreement. *Id.* at 288. The same holds true here. Mr. Ferguson and MMA Securities LLC entered into an employment agreement containing an arbitration provision, and Mr. Ferguson subsequently agreed to remit revenue derived from his Investment Advisor duties to MMA. *See* Ferguson Decl., ¶ 19, 31-32. MMA exploited the agreement between Mr. Ferguson and MMA Securities LLC by not only receiving the revenue but also by using the benefits of the agreement in commerce (*i.e.*, advertising Mr. Ferguson's services as an Investment Advisor). *Id.* at ¶ 3. MMA therefore knowingly accepted benefits provided for in an agreement containing an arbitration provision.

Similarly, in *Tencara Shipyard*, a shipyard's contract with a classification society, which contained an arbitration provision, allowed boat owners to lower their insurance rates and fly their national colors (which the owners did). 170 F.3d at 351–53. The Second Circuit held that the owners, even though they had not signed the agreement containing the arbitration provision, were nevertheless estopped from avoiding arbitration as they had received a direct benefit from the

agreement which was made for the purpose of completing business with the non-signing owners. *Id*. at 353.  MMA is also estopped from denying the benefits it directly received from the agreement between Mr. Ferguson and MMA Securities LLC, which was made in contemplation of the business they had with MMA.  *See also, e.g., In World Omni Financial Corp. v. Ace Capital Re Inc.*, 64 Fed. Appx. 809, 813 (2d Cir. 2003) ("to the extent [plaintiff] pursues claims . . . that fall within the scope of the arbitration clause contained in the [] agreement, we conclude that it is estopped from denying a duty to arbitrate") (citing *ACE Capital Re Oversees Ltd. v. Central United Life Insur. Co.*, 307 F.3d 24, 34 (2d Cir. 2002)); *Deloitte Noraudit*, 9 F.3d at 1061–64 (company's settlement with litigation opponent permitted affiliates to use a trade name, and the affiliates had knowledge of the settlement and actually used the trade name, and were therefore estopped from avoiding arbitration provision); *WTA Tour, Inc. v. Super Slam Limited*, 339 F. Supp. 3d 390 (S.D.N.Y. 2018) (non-signatory tennis tournament owner compelled to arbitrate where it accepted the reputational, operational, and financial benefits of an agreement including an arbitration provision); *Alfa Laval U.S. Treasury v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 857 F. Supp. 2d 404, 414-15 (S.D.N.Y. 2012) (non-signatory plaintiffs received direct benefits from indemnity agreements and were therefore estopped from denying their obligation to arbitrate).

Accordingly, to the extent MMA has standing to bring these claims on behalf of its subsidiary – which it does not – it has knowingly accepted the benefits of an agreement between Mr. Ferguson and MMA Securities LLC containing an arbitration provision and is therefore estopped from avoiding arbitration.[6]

---

[6]     Defendant anticipates Plaintiff may argue the parties waived arbitration via the non-solicitation agreement. However, the second Circuit has noted that "pre-dispute complete waiver of [FINRA] arbitration has been held unenforceable in the employment context."  *See Credit Suisse Sec. (USA) LLC v. Tracy*, 812 F.3d 249, 256 (2d Cir. 2016); *see also Thomas James Associates, Inc. v. Jameson*, 102 F.3d 60, 66-67 (2d Cir. 1996) (holding pre-dispute waiver of FINRA arbitration unenforceable in employment context given public policy favoring arbitration).

**B.      If MMA has Standing to Bring these Claims, then MMA Securities LLC was its Agent and MMA is Required to Arbitrate this Dispute Pursuant to MMA Securities LLC's Agreement with Mr. Ferguson.**

A non-signatory may also be bound by an arbitration agreement under a theory of agency. *Tencara Shipyard S.P.A.*, 170 F.3d at 352.  "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."  Restatement (Second) of Agency § 1 (1958).  The authority for an agent to act on behalf of a principal may be either actual or apparent. *See Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 318 (S.D.N.Y. 2006).

In the shareholders derivative action *In re Salomon Inc. Shareholders' Derivative Litig.*, the court granted a motion to compel arbitration against a non-signatory parent entity on the basis of agency.  No. 91 Civ. 5500, 1994 WL 533595 (S.D.N.Y. Sept. 30, 1994).  The plaintiffs in that matter filed suit on behalf of Salomon Inc. against four individual defendants alleging various regulatory and fiduciary violations.  *Id*. at *1.  The individual defendants moved to compel arbitration, arguing they were employed by a subsidiary of Salomon Inc., Salomon Brothers, and that both they and Salomon Brothers were registered representatives and members of the New York Stock Exchange ("NYSE").[7]  *Id*. at *2.  Accordingly, the parties were required to arbitrate. *Id*. at *2-3.  The court agreed, noting that Salomon Inc. was "thoroughly enmeshed in the underlying dispute in the case at hand," was "the sole parent of Salomon Brothers, and Plaintiffs' claims on behalf of Salomon Inc are largely predicated on the conduct of the business of its subsidiary and agent, Salomon Brothers."  *Id*. at *5.  Accordingly, the court granted defendants' motion to compel arbitration.  *Id*. at *6; *see also Heller v. MC Fin. Servs. Ltd.*, No. 97 Civ. 5317,

---

[7]      In 2007, the member regulation, enforcement, and arbitration functions of NYSE were consolidated with the National Association of Securities Dealers, Inc. to form FINRA.

1998 WL 190288, at *3 (S.D.N.Y. Apr. 21, 1998) (characterizing Salomon as applying an "'agency' theory of arbitrability" consistent with *Thomson-CSF*).

Here, if MMA has standing to bring these claims against Mr. Ferguson, then it is required to arbitrate them as MMA Securities LLC, as its agent, bound it to an arbitration agreement. The only reason MMA is able to market itself as a provider of corporate retirement benefits is because its subsidiary, MMA Securities LLC, is a RIA and FINRA member firm. *See* Ferguson Decl., ¶¶ 3, 12. MMA Securities LLC acts at the behest of and for the benefit of MMA and agreed to arbitrate all disputes with its Registered Representatives and Investment Advisors, including Mr. Ferguson. *Id*. at ¶ 31-32; *see also* FINRA Rule 13200. That agreement contemplated and referenced MMA's predecessor in interest, Barney & Barney, as an outside business activity. *See* Ferguson Decl., Ex. G at pp. 9-10. Further, MMA actually and apparently manifested its consent to be bound by the agreement with Mr. Ferguson by *inter alia*, controlling MMA Securities LLC, advertising Mr. Ferguson's services on its website, supervising him (one of Mr. Ferguson's two supervisors, Jeff Calder, was employed by MMA), and compensating him. *See* Ferguson Decl., ¶¶ 3, 13-20, 23; *Id*., Ex. A (noting MMA "controls" MMA Securities LLC). *See Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Intern., Inc.*, 758 F. Supp. 908, 919 (S.D.N.Y. 1991) (actual authority is express or implied based on the parties' words and conduct as construed in light of the surrounding circumstances); *Minskoff v. Amer. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996) ("Apparent authority . . . is normally created through the words and conduct of the principal as they are interpreted by a third party").

MMA, if it has standing, is also enmeshed in the underlying dispute, is a parent entity to MMA Securities LLC, and its claims against Mr. Ferguson are entirely predicated on the business of its subsidiary and agent, MMA Securities LLC. *In re Salomon*, 1994 WL 533595 at *6; *see*

*also* Ferguson Decl., ¶¶ 7-10, 16-18 (MMA has no corporate retirement clients or confidential information or trade secrets related to the same).   Accordingly, MMA is enmeshed in the underlying dispute between Mr. Ferguson and MMA Securities LLC and has manifested its assent to be bound by their agreement including the arbitration provision therein.   *See also, e.g., JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004) (finding that non-signatory parent companies were bound by arbitration agreements signed by their subsidiaries, where the parent and subsidiary companies had a "close relationship" and where the parent companies' claims defendants sought to arbitrate were "undeniably intertwined" with the terms of the agreements containing arbitration provisions); *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280 (2d Cir. 2003) (holding that a non-signatory company could be compelled to arbitrate under an agreement entered by a company with the same corporate parent, where evidence suggested a "close relationship" among the entities and that signatory "treated the [non-signatory] as if it were a signatory"); *Thixomat, Inc. v. Takata Physics Int'l, Co., Ltd.*, No. 01 Civ. 5449, 2001 WL 863566 (S.D.N.Y. July 30, 2001) (finding claims to be arbitrable where there was a close connection between the alleged wrongs, the relationship of the entities, and the claims were intimately founded in and intertwined with the underlying contract obligations).

## III.   The Complaint Should Also Be Dismissed Under Rule 12(b)(7), Because Plaintiff Failed to Join MMA Securities LLC – a Necessary and Indispensable Party

Rule 12(b)(7) permits a party to move to dismiss a complaint based on a failure to join an indispensable party under Rule 19.   "The party moving for dismissal for failure to join an indispensable party has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence."   *City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F.Supp.2d 332, 353 (E.D.N.Y. 2008) (internal quotation marks omitted); *accord Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D.

70, 74 (S.D.N.Y. 2006).  In ruling on a motion to dismiss under Rule 12(b)(7), the court "may

consider matters outside the pleadings." *Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487, 495

(S.D.N.Y. 2002).

The court must engage in a two-step inquiry to determine whether Rule 19 requires the

dismissal of an action for failure to join a party.  First, as a threshold matter, the court must

determine "whether an absent party belongs in the suit, *i.e.,* whether the party qualifies as a

'necessary' party under Rule 19(a)."  *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir.

2000).  Under Rule 19(a)(1)(B), a party must be joined if:

> that person claims an interest relating to the subject of the action and is so situated
> that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest;
> or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple,
> or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P., Rule 19(a)(1)(B).

If a party is required to be joined under Rule 19(a) but cannot be joined without depriving

the court of subject matter jurisdiction, the court must proceed to the second step of the analysis

under Rule 19(b).  "Rule 19(b) requires courts to consider whether, 'in equity and good

conscience,' the party is one without whom the action between the remaining parties cannot

proceed—or, in the traditional terminology, whether the absent party is 'indispensable.'"  *Marvel*

*Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013).  According to Rule 19(b), in assessing

this issue, the court should consider factors including:

> (1) the extent to which a judgment rendered in the person's absence might prejudice
> that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P., Rule 19(b).  "If the court determines that a party is indispensable, then the court must dismiss the action pursuant to Rule 19(b)."  *Viacom Int'l*, 212 F.3d at 725.

Here, MMA Securities LLC is a necessary and indispensable party to this action because *inter alia* it was Mr. Ferguson's employer, owned all of the alleged trade secrets and confidential information, and is a party to the non-solicitation agreement at issue.  *See* Ferguson Decl., ¶¶ 12, 16-18; Crain Decl., Ex. A.  MMA Securities LLC has also recently represented to FINRA that it is investigating Mr. Ferguson's alleged "removal of company property" and "solicitation of clients and prospective clients."  *See* Ferguson Decl, Ex. H, at p. 7.  There is a significant risk of MMA Securities LLC bringing the same claims against Mr. Ferguson and him incurring double or otherwise inconsistent obligations.  In New York, "[i]t is well-established that a party to a contract which is the subject of the litigation is considered a necessary party."  *Mazzio v. Kane*, No. 14-CV-616 ARR MDG, 2014 WL 2866040, at *6 (E.D.N.Y. June 24, 2014) (collecting cases).  Additionally, "[n]umerous courts have held that a party to a contract at issue 'is the paradigm of an indispensable party.'"  *Id*., 2014 WL 2866040, at *7 (citation omitted).  As the Court held in *Mazzio*, *supra*, "[t]o the extent that plaintiffs allege that defendant violated the Restrictive Covenant Agreement by soliciting [absent party's] customers, [the absent party] is an indispensable party because the claims belong to [it]."  2014 WL 2866040, at *8.

Because joining MMA Securities LLC would deprive the Court of subject matter jurisdiction due to FINRA's arbitration requirement, the Court should dismiss the case and compel MMA and MMA Securities LLC to arbitrate the claims before FINRA.

**IV.    The Court Should Apply California Law to All Causes of Action in this Matter**

Should the Court not dismiss or compel arbitration in this matter, it should apply California law to all of the causes of action.  Except for the contractual choice of law, every other fact about this dispute centers around California.[8]  Although New York law respects contractual choices of law, courts here examine the relationships and public policies of other states to determine whether such clauses should be enforced.  One test for that examination comes from the Restatement (Second) of Conflict of Laws, which provides, in part, that choice of law provisions should govern unless either:

> (a) the chosen state, has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*TGG Ultimate Holdings, Inc. v. Hollett*, No. 16 CIV. 6289 (VM), 2017 WL 1019506, at *3 (S.D.N.Y. Feb. 24, 2017), *motion to certify appeal denied*, No. 16 CIV. 6289 (VM), 2017 WL 1536056 (S.D.N.Y. Mar. 23, 2017).

Here, California law must be applied under either part of this test.  First, New York has no substantial relationship to the parties or Plaintiff's claims and there is no other reasonable basis for New York choice of law.  At all relevant times, Mr. Ferguson resided and worked in California and had no personal or business connection to the State of New York.  *See* Ferguson Decl., ¶¶ 41-46.  At all relevant times, none of Mr. Ferguson's clients were located in New York and he has never traveled here on Investment Advisor business.  *Id*. at ¶ 46.  Additionally, none of Plaintiff's claims have any connection to New York and are solely based in California.  *See Hollett*, 2017

---

[8]    The first cause of action (breach of contract) is the only cause of action arguably covered by the choice of law provision.  As such, even if the Court determines that the breach of contract cause of action is governed by New York law, all other causes of action in this matter will still be governed by California law.

WL 1019506, at *3 (discussing choice-of-law standard and finding that California law applies where Defendants' alleged connections to New York were almost non-existent)

The only connection to New York Plaintiff alleges in the Complaint is that MMA's principal place of business is in White Plains, New York. *See* Complaint, ¶ 19. However, as discussed above, MMA has no actual injury in relation to this matter, and such conclusory allegations are insufficient to show that New York has a *substantial* relationship to this matter. In addition, "'[s]ufficient contacts' generally requires more than just one contact." *See TGG Ultimate Holdings, Inc. v. Hollett*, 224 F. Supp. 3d 275, 282 (S.D.N.Y. 2016) (citing *Business Incentives Co., Inc. v. Sony Corp. of America*, 397 F. Supp. 63, 67 (S.D.N.Y. 1975)).

Even if the Court finds that New York does have a substantial relationship to this dispute, California law still applies because application of New York law would be contrary to a fundamental policy of California state, which has a materially greater interest than New York in this matter. *See Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 Civ. 8677, 2018 WL 3407702, at *9-10 (S.D.N.Y. Feb. 7, 2018) (applying California law to restrictive covenant despite New York choice of law clause because California had a greater interest given that employees lived and worked in California and the restrictive covenants contravened California public policy). California has a fundamental policy against enforcing non-competition provisions like the one signed by Mr. Ferguson. Cal. Bus. & Prof. Code § 16600 ("Section 16600") provides that, subject to certain statutory exceptions inapplicable here, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Further, California courts have repeatedly held a former employee may only be "barred from soliciting existing customers to redirect their business away from the former employer and to the employee's new business *if the employee is utilizing trade secret information* to solicit those customers." *The*

*Ret. Grp. v. Galante*, 176 Cal. App. 4th 1226, 1237, 98 Cal. Rptr. 3d 585, 593 (2009) (citing cases) (emphasis in the original). *See also AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923, 940, (2018) (describing the tension between trade secrets and Section 16600 and observing that utilizing trade secrets information is wrongful "independent of any contractual undertaking" and is not an exception to Section 16600) (citing *Galante, supra*, at 1233, 1238).

Additionally, the non-solicitation agreement's definition of "Confidential Information and Trade Secrets" is overly broad and violates California's public policy because, at a minimum, it does not state that such information must have independent economic value based on the fact that it is kept secret.  *See* Crain Decl., Ex. A, at pp. 1-2; *see also* Cal. Civ. Code § 3426.1 (West); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522, 66 Cal. Rptr. 2d 731, 736 (1997) (discussing factors California courts consider in determining whether a customer list may be protected as a trade secret);  *Pollara v. Radiant Logistics Inc.*, No. CV 12-344 GAF (JEMX), 2014 WL 12585781, at \*5-7 (C.D. Cal. June 6, 2014) (same). Therefore, the non-solicitation agreement here would be unenforceable under California law.  For these reasons, Defendant respectfully submit that should the Court not dismiss the case or compel arbitration in this matter, it should apply California law to all the causes of actions.[9]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss this matter pursuant to Rules 12(b)(1) and 12(b)(7) or compel the parties to arbitrate.

---

[9]      Plaintiff has not yet effectuated service of the Complaint on Mr. Ferguson. To the extent the Court is inclined not to dismiss or compel arbitration in this matter, Defendant requests a reasonable period of time following service of the Complaint to either answer or file a Rule 12(b)(6) motion to dismiss.

Dated: June 5, 2019                          Respectfully submitted,
New York, New York

                                             */s Nicholas H. Sikon*
                                             Nicholas H. Sikon
                                             Aliaksandra Ramanenka
                                             **OUTTEN & GOLDEN LLP**
                                             685 Third Avenue, 25th Floor
                                             New York, New York 10017
                                             Phone: (212) 245-1000
                                             Email: nsikon@outtengolden.com
                                                       aramanenka@outtengolden.com

                                             *Attorneys for Defendant*