**BARNEY & BARNEY/MMA NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT**

AGREEMENT, dated as of 2/1, 2014, between Barney & Barney, a Marsh & McLennan Agency LLC company, and/or subsidiaries thereof (the "Employer"), together with its parents and affiliates (collectively, the "Company"), and Elmer Ferguson, an employee of the Employer (the "Employee").

RECITALS:

WHEREAS, on the date hereof, Employer acquired one-hundred percent (100%) of the membership interest in BARNEY & BARNEY, LLC ("Barney & Barney", and such membership purchase referred to herein as the "Barney & Barney Acquisition"); and

WHEREAS, simultaneously with or immediately subsequent to the Barney & Barney Acquisition, Barney & Barney was merged with and into the Employer and the Employer shall be the surviving entity of such merger; and

WHEREAS, Employee was employed by Barney & Barney immediately prior to the Barney & Barney Acquisition, and subsequent to the merger has been offered, and has accepted, employment with the Employer; and

WHEREAS, this Agreement is entered into in consideration of the Employee's (a) employment or continued employment by the Employer, (b) access to Confidential Information and Trade Secrets belonging to the Company, as defined below; and (c) receipt of payment in the amount of $5,000.

NOW, THEREFORE, the Employer and the Employee hereby agree to be bound by this Non-Solicitation and Confidentiality Agreement, as follows:

1. **Confidential Information and Trade Secrets**

(a) Employee understands and acknowledges that as an employee of the Company, Employee will learn or have access to, or may assist in the development of, highly confidential and sensitive information and trade secrets about the Company, its operations and its clients, and that providing its clients with appropriate assurances that their confidences will be protected is crucial to the Company's ability to obtain clients, maintain good client relations, and conform to contractual obligations. Such Confidential Information and Trade Secrets include but are not limited to: (i) financial and business information relating to the Company, such as information with respect to costs, commissions, fees, profits, sales, markets, mailing lists, strategies and plans for future business, new business, product or other development, potential acquisitions or divestitures, and new marketing ideas; (ii) product and technical information relating to the Company, such as product formulations, new and innovative product ideas, methods, procedures, devices, machines, equipment, data processing programs, software, software codes, computer models, and research and development projects; (iii) client information, such as the identity of the Company's clients, the names of representatives of the

Company's clients responsible for entering into contracts with the Company, the amounts paid by such clients to the Company, specific client needs and requirements, specific client risk characteristics, policy expiration dates, policy terms and conditions, information regarding the markets or sources with which insurance is placed, and leads and referrals to prospective clients; (iv) personnel information, such as the identity and number of the Company's other employees and officers, their salaries, bonuses, benefits, skills, qualifications, and abilities; (v) any and all information in whatever form relating to any client or prospective client of the Company, including but not limited to its business, employees, operations, systems, assets, liabilities, finances, products, and marketing, selling and operating practices; (vi) any information not included in (i) or (ii) above which Employee knows or should know is subject to a restriction on disclosure or which Employee knows or should know is considered by the Company's clients or prospective clients to be confidential, sensitive, proprietary or a trade secret or is not readily available to the public; or (vii) intellectual property, including inventions and copyrightable works. Confidential Information and Trade Secrets are not generally known or available to the general public, but have been developed, compiled or acquired by the Company at its great effort and expense. Confidential Information and Trade Secrets can be in any form, including but not limited to: oral, written or machine readable, including electronic files.

(b) Employee acknowledges and agrees that the Company is engaged in a highly competitive business and that its competitive position depends upon its ability to maintain the confidentiality of the Confidential Information and Trade Secrets which were developed, compiled and acquired by the Company at its great effort and expense. Employee further acknowledges and agrees that any disclosing, divulging, revealing, or using of any of the Confidential Information and Trade Secrets, other than in connection with the Company's business or as specifically authorized by the Company, will be highly detrimental to the Company and cause it to suffer serious loss of business and pecuniary damage. Accordingly, Employee agrees that he or she will not, while associated with the Company and for so long thereafter as the pertinent information or documentation remains confidential, for any purpose whatsoever, directly or indirectly use, disseminate or disclose to any other person, organization or entity Confidential Information and Trade Secrets, except as required to carry out his or her duties as an employee of the Company, and except as expressly authorized by the President or highest executive officer of the Employer. Nothing in this Agreement is intended to prohibit Employee from discussing with other employees, or with third parties who are not future employers or competitors of the Company, wages, hours, or other terms and conditions of employment.

(c) Immediately upon the termination of employment with the Company for any reason, or at any time the Company so requests, Employee will return to the Company: (i) any originals and all copies of all files, notes, documents, slides (including transparencies), computer disks, printouts, reports, lists of the Company's clients or leads or referrals to prospective clients, and other media or property in Employee's possession or control which contain or pertain to Confidential Information and Trade Secrets; and (ii) all property of the Company, including, but not limited to, supplies, keys, access devices, books, identification cards, computers, telephones and other equipment. Employee agrees that upon completion of the obligations set forth in this subparagraph, and if requested by the Company, Employee will execute a statement declaring that he or she has retained no property of the Company or materials containing Confidential Information and Trade Secrets nor has he or she supplied the same to any person, except as

required to carry out his or her duties as an employee of the Company. A receipt signed by an Officer of the Company itemizing the returned property is necessary to demonstrate that Employee has returned all such property to the Company.

(d) Employee acknowledges and agrees that Employee is not authorized to access and use the Company's computer systems and protected computers, including laptop computers and Company PDA's, and the data contained therein, for personal gain or to benefit third parties (other than in the course of Employee's performance of services for the Company or as expressly and specifically authorized by the Company) and that any such access or use is unauthorized and may be punishable by law as well as constituting a breach of this Agreement.

**2. <u>Non-Solicitation Of Clients</u>**

(a) Employee acknowledges and agrees that solely by reason of employment by the Company, Employee has and will come into contact with and develop and maintain relationships with a significant number of the Company's clients and prospective clients, and will have access to Confidential Information and Trade Secrets relating thereto, including those regarding the Company s clients, prospective clients and related information.

(b) Consequently, Employee covenants and agrees that in the event of separation from employment with the Company, whether such separation is voluntary or involuntary, Employee will not, for a period of twenty-four (24) months following such separation, directly or indirectly use Confidential Information and Trade Secrets or related information regarding the Company, the Company's clients and its prospective clients to solicit clients or prospective clients of the Company for the purpose of selling or providing products or services of the type sold or provided by Employee while employed by the Company. This restriction shall apply only to those clients or prospective clients of the Company with which Employee had contact during the last two (2) years prior to the separation of his or her employment with the Company. For the purposes of this Section 2, the term "contact" means interaction between Employee and the client which takes place to further the business relationship, or making (or assisting or supervising the performance or provision of) sales to or providing or performing (or assisting or supervising the performance or provision of) products or services for the client on behalf of the Company. For purposes for this Section 2, the term "contact" with respect to a "prospective" client means interaction between Employee and a potential client of the Company which takes place to obtain the business of the potential client on behalf of the Company. Employee shall not engage in any subterfuge to circumvent this prohibition, including providing Confidential Information and Trade Secrets to others to assist them in soliciting or serving the client.

3. **Non-Solicitation Of Employees**

Employee acknowledges and agrees that solely as a result of employment with the Company, and in light of the broad responsibilities of such employment which include working with other employees of the Company, Employee has and will come into contact with and acquire Confidential Information and Trade Secrets regarding other employees of the Company, and will develop relationships with those employees. Accordingly, both during employment with the Company and for a period of twenty-four (24) months thereafter, Employee shall not, either on Employee's own account or on behalf of any person, company, corporation, or other entity, directly or indirectly, solicit any employee of the Company with whom Employee, during the last two (2) years of his or her employment with the Company, came into contact for the purpose of soliciting or servicing business, to leave employment with the Company.

4. **Conflict Of Interest**

Employee may not use his or her position, influence, knowledge of Confidential Information and Trade Secrets or the Company's assets for personal gain, except as specifically provided in this Agreement. A direct or indirect financial interest, including joint ventures in or with a supplier, vendor, client or prospective client without disclosure and the express written approval of the President or highest executive officer of Employer is strictly prohibited and constitutes cause for dismissal.

5. **Employee's Acknowledgement**

Employee hereby expressly acknowledges and agrees that (a) the restrictions and obligations set forth in and imposed by Sections 1, 2, 3 and 4 will not prevent Employee from obtaining gainful employment in Employee's field of expertise or cause Employee undue hardship; and (b) the restrictions and obligations imposed on Employee under Sections 1, 2, 3 and 4 are necessary to protect the legitimate business interests of the Company and are reasonable in view of the benefits and consideration Employee has received or will receive from the Company.

6. **Equitable Relief**

In recognition of the fact that irreparable injury will result to the Company in the event of a breach by Employee of his or her obligations under Section 1, 2, 3 or 4 of this Agreement, that monetary damages for such breach would not be readily calculable, and that the Company would not have an adequate remedy at law therefor, Employee acknowledges, consents and agrees that in the event of such breach, or the threat thereof, the Company shall be entitled, in addition to any other legal remedies and damages available, to (a) specific performance thereof and to temporary and permanent injunctive relief (without the necessity of posting a bond) to restrain the violation or threatened violation of such obligations by Employee and persons acting for or in connection with Employee and (b) recovery of all reasonable sums and costs, including attorneys' fees, expert witness fees, and expenses and costs incurred by the Company in seeking to enforce the provisions of this Agreement.

7. **Liquidated Damages**



Marsh & McLennan Insurance Agency LLC
MarshMMA.com
CA Insurance Lic. 0H18131

(a) Employee acknowledges and agrees that the Company will be injured by any violation of Section 1, 2, 3 or 4, that it will be difficult or impossible to ascertain the full amount of damages that the Company will sustain by reason of such breach, and that accordingly the Company does not have an adequate remedy at law for any such breach. Employee further agrees that in the event that Employee breaches the provisions of Section 2 the Company is entitled to recover damages, in addition to all other remedies to which it is entitled, even though such damages cannot be readily ascertained and will not make the Company whole or fully remedy the breach. Employee acknowledges that many of the Company's clients enjoy long term business relationships with the Company and expand their business relationship with the Company over time and that the loss of a client will therefore likely result in the loss of an increasing revenue stream to the Company from that client for a significant but indeterminate period of time into the future, extending beyond the period that Section 2 is in effect. Employee further acknowledges that the loss of a client erodes the goodwill enjoyed by the Company, and that the loss of a client reduces referral opportunities and business from existing clients, including opportunities for the Company to obtain or service business from that client in addition to business from that client that Employee personally obtained or serviced. Employee acknowledges that the Company's acquisition of clients is a result of the Company's investment of time and money in hiring personnel, including Employee, and development of Confidential Information and Trade Secrets for the purpose of attracting and servicing clients, in developing a technological and business infrastructure, and in otherwise enabling Employee to form and maintain relationships with clients, and acknowledges that a breach of the obligations of Section 2 or reduces the value of the Company's investment in a manner and to an extent which cannot be fully calculated. Employee further acknowledges that a breach of the obligations set forth in Section 2 will force the Company to incur out-of-pocket costs such as increased overhead, increased costs in protecting and developing Confidential Information and Trade Secrets, increased financial accommodations to clients, increased costs in deploying personnel to attempt to retain clients, and other costs, which cannot be readily allocated or calculated. Employee acknowledges that these and other uncertainties make it difficult to ascertain the amount of damage that the Company will sustain from a breach of Section 2.

(b) Recognizing the difficulty of calculating actual damages and acknowledging the factors set forth in Section 7(a), among other factors, in the event of a violation of Section 1 or 2 resulting in a client either reducing the amount of business or canceling business with the Company and directing or redirecting such business through Employee or through any entity or person with whom Employee becomes associated, in addition to all other remedies provided herein, Employee agrees to pay the Company an amount equal to three (3) times the total fees and commissions received by the Company for such business during the 12 months prior to the breach. Said amount shall be payable to the Company no later than thirty (30) days following Employee's receipt of the Company's written statement of the total fees and commissions for that client for the prior12 months. Employee acknowledges and agrees that this amount is a reasonable approximation of the damages likely to occur following a breach of Section 1, 2, 3 or 4.

(c) The remedy set forth in Section 7(b) shall be in addition to and not in place of such additional remedies as the Court may order, including equitable relief to prevent further breaches or to provide further remedies. To the extent that the Court determines that

7(b) is not enforceable, or if the Company elects to prove its actual damages, the Court shall sever Section 7(b) and the Company shall recover its actual damages.

(d) This provision shall not affect the damages or other remedies the Company may recover from any other provisions of this Agreement.

8. **Severability**

The parties agree they have attempted to limit the scope of the post-employment restrictions contained herein to the extent necessary to protect Confidential Information and Trade Secrets, client relationships and good will. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under applicable laws and public policies. Accordingly, if any particular portion of this Agreement shall be adjudicated to be invalid or unenforceable, this Agreement shall be deemed amended to delete therefrom such invalid portion, and reformed to the extent valid and enforceable. Such deletion and reformation shall apply only with respect to the operation of this Agreement in the particular jurisdiction in which such adjudication is made.

9. **Other Agreements and Obligations Survive**

Neither the Employee nor the Company intends to waive or release the applicability of any other more extensive legal or contractual obligations the Employee may owe the Company at any particular time, including, but not limited to, obligations under any employment agreement between the Employee and the Company whether executed prior to this Agreement or at any time hereafter with regard to the subject matters of Sections 1, 2, 3 or 4.

Except as otherwise provided in this Section, the obligations of Employee under this Agreement shall be independent of, and unaffected by, and shall not affect, other agreements binding Employee which apply to Employee's business activities during and/or subsequent to Employee's employment by the Company, including any employment agreement between Employee and the Company whether executed prior to this Agreement or at any time hereafter. The obligations under this Agreement also shall survive any changes made in the future to the employment terms of Employee, including but not limited to changes in salary, benefits, bonus plans, job title and job responsibilities.

10. **Employment Unaltered**

Employee understands that this Agreement does not constitute a contract of employment and does not promise or imply that his or her employment will continue for any period of time

11. **Binding Effect; Assignment**

Employee expressly consents to be bound by the provisions of this Agreement for the benefit of Employer or any of its subsidiaries or affiliates to whose employ he or she may be transferred without the necessity that this Agreement be re-signed at the time of such transfer. Employee consents that any such subsidiary or affiliate may enforce this Agreement. Further, the rights of the Company hereunder may be assigned or, as applicable, shall pass by operation

of law, without further consent of the Employee, at any time, to any successor in interest of the Company, or any portion thereof, by reason of merger, consolidation, sale, lease or other disposition of any or all of the assets or stock of the Company.

**12. Governing Law and Choice of Forum**

The parties acknowledge that the Company is headquartered in New York, that senior members of the leadership team of the Company are based in New York, and that breach of this Agreement will cause injury in New York. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of laws provisions. The parties, being desirous of having any disputes resolved in a forum having a substantial body of law and experience with the matters contained herein, agree that any action or proceeding with respect to this Agreement and Employee's employment shall be brought exclusively in the Civil Court of the City of New York, New York County, or in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York and the parties agree to the jurisdiction thereof. The parties hereby irrevocably waive any objection they may now or hereafter have to the laying of venue of any such action in the said court(s), and further irrevocably waive any claim they may now or hereafter have that any such action brought in said court(s) has been brought in an inconvenient forum. Employee recognizes that, should any dispute or controversy arising from or relating to this Agreement be submitted for adjudication to any court, arbitration panel or other third party, the preservation of the secrecy of Confidential Information and Trade Secrets may be jeopardized. Consequently, Employee agrees that all issues of fact shall be severed for trial without a jury.

**13. Non-Waiver**

The failure of either the Company or Employee, whether purposeful or otherwise, to exercise in any instance any right, power, or privilege under this Agreement or under law shall not constitute a waiver of any other right, power, or privilege, nor of the same right, power, or privilege in any other instance. Any waiver by the Company or by Employee must be in a written or electronic instrument signed by either Employee, if Employee is seeking to waive any of his or her rights under this Agreement, or by the President or highest executive officer of Employer, if the Company is seeking to waive any of its rights under this Agreement.

**14. Modification; Agreement to Enter into Additional Agreements**

No modification of this Agreement shall be valid unless made in a written or electronic instrument signed by both parties hereto, wherein specific reference is made to this Agreement; provided, however, that the Company may make changes to the Agreement that are favorable to Employee (*e.g.*, to conform the provisions of this Agreement to changes in court decisions or legislation), without securing the written consent of Employee to the change. Should Employee move to a different state or jurisdiction while employed by the Company or upon written request of the Company, Employee agrees to sign, without further consideration, upon direction by the Company, such further writings to effectuate the provisions of this Agreement as necessary to comply with applicable law. Employee's failure to sign such additional agreements shall constitute a breach of this Agreement.

**15. Cooperation**

Both during Employee's employment with the Company and after the termination thereof for any reason, Employee agrees to provide the Company with such information relating to his or her work for the Company or others, as the Company may from time to time reasonably request in order to determine his or her compliance with this Agreement.

**16. Disclosure**

Employee hereby specifically authorizes the Company to contact his or her future employers to determine his or her compliance with the Agreement or to communicate the contents of this Agreement to such employers. Employee further specifically authorizes the Company to, in its sole discretion and without further permission from Employee, furnish copies of the Agreement to any client or prospective client of the Company and indicate that Employee has entered into this Agreement with the intention that the Company and each of its clients or prospective clients may rely upon his or her compliance with this Agreement.

**17. Headings**

Section headings are used herein for convenience or reference only and shall not affect the meaning of any provision of this Agreement.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]





IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first hereinabove set forth.

Employee Signature

ELMER R FERGUSON
Employee Name (Please Print)

Date: 2/1/14

Employer:

Name: Sharon M. Werner
Title: Senior Vice President, Human Resources

Date: January 31, 2014