**OUTTEN & GOLDEN LLP**
Nicholas H. Sikon
Aliaksandra Ramanenka
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARSH & MCLENNAN AGENCY LLC,

        Plaintiff,

    -against-

ELMER "RICK" FERGUSON,

        Defendant.

No. 19-cv-03837 (VSB)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS OR IN THE ALTERNATIVE MOTION TO COMPEL ARBITRATION,
AND IN SUPPORT OF APPLYING CALIFORNIA LAW**

---

## TABLE OF CONTENTS

ARGUMENT ............................................................................................................................. 1

    I.      MMA Does Not Have Standing to Bring this Suit on Behalf of MMA
Securities LLC. .................................................................................................... 1

           A.   MMA has no injury and therefore does not have standing to bring the
claims against Mr. Ferguson via a purported employment relationship. ........ 1

           B.   MMA has no injury and therefore does not have standing to bring the
claims against Mr. Ferguson via the restrictive covenant agreement. ............. 5

    II.     In the Alternative, the Court Should Compel the Parties to Arbitrate. ................... 8

           A.   Estoppel ........................................................................................................ 8

           B.   Agency ........................................................................................................ 10

    III.    The Complaint Should Also Be Dismissed Under Rule 12(b)(7) ......................... 12

           A.   MMAS is a necessary party ......................................................................... 12

           B.   MMAS is an indispensable party ................................................................. 13

    IV.    California Law Applies to All Causes of Action. ................................................. 14

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**        **Page(s)**

*AEP–PRI Inc. v. Galtronics Corp. Ltd.*,
   No. 12 Civ. 8981, 2013 WL 4400833 (S.D.N.Y. Aug. 13, 2013) ............................................. 8

*Agerbrink v. Model Serv. LLC*,
   No. 14 Civ. 7841, 2017 WL 933095 (S.D.N.Y. Mar. 3, 2017) .................................. 4

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
   170 F.3d 349 (2d Cir. 1999)................................................................................. 8, 10

*Astra Oil Co. v. Rover Navigation, Ltd.*,
   344 F.3d 276 (2d Cir. 2003)..................................................................................... 11

*Ayco Co., L.P. v. Frisch*,
   No. 11 Civ. 580, 2012 WL 42134 (N.D.N.Y. Jan. 9, 2012) .................................. 9, 10

*Bank of Am. Corp. v. Lemgruber*,
   385 F. Supp. 2d 200 (S.D.N.Y. 2005)........................................................................ 13

*Bank of Am. Natl. Assn. v. Sopher*,
   No. 10 Civ. 8870, 2011 WL 2419872 (S.D.N.Y. June 8, 2011)................................ 8

*BNP Paribas v. Bank of New York Tr. Co., N.A.*,
   No. 11 Civ. 350, 2012 WL 13059498 (S.D.N.Y. Mar. 28, 2012) ........................... 13

*CF Notes, LLC v. Weinstein*,
   No. 652206/2015, 2016 WL 6083871 (N.Y. Sup. Ct. Oct. 13, 2016) ....................... 9

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
   2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) ........................................................... 8

*Diesel Sys., Ltd. v. Yip Shing Diesel Eng'g Co.*,
   861 F.Supp. 179 (E.D.N.Y.1994) ............................................................................. 5

*Edwards v. Arthur Andersen LLP*,
   44 Cal. 4th 937 (2008) ............................................................................................ 15

*Felske v. Hirschmann*,
   No. 10 Civ. 8899, 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ................................. 3

*Green Island Power Auth. v. F.E.R.C.*,
   577 F.3d 148 (2d Cir. 2009)...................................................................................... 8

*Hart v. Rick's Cabaret Inter., Inc.*,
   967 F. Supp. 2d 901 (S.D.N.Y. 2013)........................................................................ 4

*Hudson Optical Corp. v. Cabot Safety Corp.*,
  No. 97 Civ. 9046, 1998 WL 642471 (2d Cir. Mar. 25, 1998) ................................... 5

*Krock v. Lipsay*,
  97 F.3d 640 (2d Cir. 1996)......................................................................... 15

*Life Tech. Corp. v. AB Sciex Pt. Ltd*,
  803 F. Supp. 2d 270 (S.D.N.Y. 2011)............................................................. 8, 10

*Mazzio v. Kane*,
  No. 14 Civ. 616, 2014 WL 2866040 (E.D.N.Y. June 24, 2014)............................... 14

*Merrill Lynch Intl. Fin., Inc. v. Donaldson*,
  27 Misc. 3d 391 (N.Y.Sup. 2010) ................................................................. 9

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
  337 F.3d 125 (2d Cir. 2003)........................................................................ 11

*Milan v. Wertheimer*,
  808 F.3d 961 (2d Cir. 2015)........................................................................ 6

*Motorola Credit Corp. v. Uzan*,
  274 F. Supp. 2d 481 (S.D.N.Y.2003).............................................................. 5

*Nature's Plus Nordic A/S v. Natural Organics, Inc.*,
  980 F. Supp. 2d 400 (E.D.N.Y. 2013) ............................................................ 8

*Oppenheimer & Co. Inc. v. Deutsche Bank AG*,
  No. 09 Civ. 8154, 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010) ............................... 10

*Parker Madison Partners v. Airbnb, Inc.*,
  283 F. Supp. 3d 174 (S.D.N.Y. 2017)............................................................. 3

*Polargrid LLC v. Videsh Sanchar Nigam Ltd.*,
  No. 04 Civ. 9578, 2006 WL 2266351 (S.D.N.Y. Aug. 7, 2006) ............................. 13

*Russell Pub. Grp., Ltd. v. Brown Printing Co.*,
  No. 13 Civ. 5193, 2014 WL 1329144 (S.D.N.Y. Apr. 3, 2014)............................... 7

*In re Salomon Inc. Shareholders' Derivative Litig.*,
  No. 91 Civ. 5500, 1994 WL 533595 (S.D.N.Y. Sept. 30, 1994)............................ 11

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
  542 F.3d 354 (2d Cir. 2008)........................................................................ 11

*TGG Ultimate Holdings, Inc. v. Hollett*,
  224 F. Supp. 3d 275 (S.D.N.Y. 2016)........................................................ 14, 15

*Thixomat, Inc. v. Takata Physics Int'l, Co., Ltd.*,
   No. 01 Civ. 5449, 2001 WL 863566 (S.D.N.Y. July 30, 2001) ............................................ 11

*WTA Tour, Inc. v. Super Slam Limited,*
   339 F. Supp. 3d 390 (S.D.N.Y. 2018) ................................................................................. 11

**Statutes**

15 U.S.C.A. § 78 (West) ................................................................................................ 2, 4, 7

Cal. Bus. & Prof. Code § 16600 ........................................................................................ 15

Cal. Corp. Code, § 25004 (West) ......................................................................................... 2

**Rules**

Fed. R. Civ. P., Rule 12(b) ......................................................................................... 8, 12, 16

**Regulations**

17 C.F.R. § 248.30 ............................................................................................................... 7

**Other Authorities**

FINRA Code, § 13200(a) ..................................................................................................... 8

Defendant Elmer "Rick" Ferguson ("Defendant" or "Mr. Ferguson") submits this Reply Memorandum of Law in further support of Defendant's Motion to Dismiss or in the Alternative Motion to Compel Arbitration, and in Support of Applying California Law.

## ARGUMENT

### I.   MMA Does Not Have Standing to Bring this Suit on Behalf of MMA Securities LLC.

MMA does not dispute, and therefore admits, the crux of Mr. Ferguson's argument regarding standing: that it has no corporate retirement plan clients or confidential information or trade secrets regarding the same, and therefore does not have standing to bring these claims. Instead, MMA argues it can bring these claims because (1) it is Mr. Ferguson's employer, and (2) pursuant to the restrictive covenant agreement. Both of these arguments fail as a matter of law as, in either case, MMA still does not allege an injury in relation to the claims in this matter.

#### A.   MMA has no injury and therefore does not have standing to bring the claims against Mr. Ferguson via a purported employment relationship.

MMA does not have standing to bring these claims because it does not have any corporate retirement plan clients. Rather, all such clients enter into agreements with a separate entity, MMA Securities LLC ("MMAS"). Ferguson Decl. in Supp. of Def.'s Mot. to Dismiss, ECF No. 25 ("Ferguson Mot. Decl."), ¶¶ 1-5, 15-18. MMA cannot have any legal relationship with these entities as it is not a registered entity and there are rules and regulations that require corporate retirement plans to be maintained by a registered entity. *Id.* ¶¶ 2, 16. Additionally, information related to these corporate retirement plan clients must be protected and walled off from non-registered entities like MMA. *Id.* ¶ 16. The non-registered individuals who work on MMA's other lines of businesses (commercial risk and health and welfare) cannot be privy to this information. *Id.* ¶ 17. Accordingly, information pertaining to Mr. Ferguson's corporate retirement plan clients was maintained by MMAS, a registered entity, and not MMA. *Id.* ¶ 17.

1

Numerous documents evidence this important distinction. For example, MMA's website confirms that corporate retirement plans are "offered through MMA Securities LLC, Member FINRA / SIPC, and a federally registered investment advisor." *See* https://www.marshmma.com/ offerings /retirement-services (last visited July 10, 2019). Every email Mr. Ferguson sent contained a disclosure that included this exact same language. *See, e.g.*, Ferguson Decl. in Supp. of Opp'n to Mot. for Prelim. Inj., ECF No. 41 ("Ferguson Opp. Decl."), Ex. C. An offer letter Mr. Ferguson received confirmed MMA was "solely providing ministerial and administrative support" and a Q&A form explicitly stated that MMA "does not service any clients." Ferguson Mot. Decl., Exs. D, E. Mr. Ferguson's former coworkers, Williams Peartree and Jeff Stephens, are identified on their FINRA Broker Check Reports as "currently employed by and registered with MMA Securities LLC." *Id.,* Ex. B. A March 2019 letter to Mr. Ferguson said he was "no longer authorized to conduct any securities business on MMA Securities' behalf." *Id.*, Ex. H.

MMA cannot have any retirement plan clients because it is unregistered, and Section 15(a)(1) of the Securities Exchange Act ("the Act") makes it unlawful for a "broker" or "dealer" to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless the broker/dealer is registered with the Securities and Exchange Commission ("SEC"). 15 U.S.C.A. § 78o (West).[1] Further, the SEC states that the "law [] does not permit unregistered entities [like MMA] to receive commission income on behalf of a registered representative." *See* https://www.sec.gov/reportspubs/investor-publications/divisionsmarketregbdguidehtm.html  (last visited July 10, 2019). Further, per the SEC, a registered broker-dealer like MMAS "hires and supervises all aspects of the employee's work and uses the payroll and benefits administrator

---

[1]     "Broker" and "dealer" are broadly defined under Sections 3(a)(4)(A), 3(a)(5)(A) of the Act. 15 U.S.C.A. § 78c (West). Additionally, a broker-dealer must register in every state in which it operates, and California Corporations Code, Section 25004 defines a broker-dealer as "any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account." Cal. Corp. Code § 25004 (West).

[MMA] merely as a means to centralize personnel services. *Id.* Thus, the distinction between MMA and MMAS is not only a matter of practice but also a matter of law.

Tellingly, MMA, in its Opposition, does not dispute or even really address this critical distinction. Its failure to do so means it has conceded it does not have any corporate retirement plan clients or confidential information or trade secrets regarding the same. *See Felske v. Hirschmann*, No. 10 Civ. 8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."). As such, MMA has no injury-in-fact in relation to the claims alleged herein and the Court should dismiss this matter for lack of standing under Article III. *See Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 180 (S.D.N.Y. 2017) (VSB) (dismissing complaint for lack of standing).

Faced with this problem, MMA instead argues it can bring these claims because it was also Mr. Ferguson's employer. *See* ECF No. 43, Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp."), pp. 9-11. As discussed previously, Mr. Ferguson disputes that MMA was his employer.[2] In order to perform his Investment Advisor services, he must be employed by a registered entity, and numerous documents including several filed by MMAS evidence that MMAS was his employer. Barney & Barney LLC and MMA were simply Mr. Ferguson's marketing entities; they were "non-investment related" "other business[es]" (*see* Ferguson Mot. Decl., ¶ 19; *id.*, Ex. F, pp. 9-10) that he had in conjunction with his employment with SagePoint Financial and then MMAS. The fact that Barney & Barney LLC or MMA labeled themselves as

---

[2]     Mr. Ferguson's FINRA broker check report does not, as MMA asserts, constitute an admission that MMA was his employer. That document clearly states that information contained therein comes from information submitted to FINRA or the SEC, which is submitted by the corporate entity as opposed to the individual employee. Ferguson Mot. Decl., Ex. C, p. 2. Further, Mr. Peartree's and Mr. Stephen's broker check reports also state that their employer was MMA but that they are "**currently employed by and registered with MMA Securities LLC**." *Id.*, Ex. B. Nor is it relevant that one of Mr. Ferguson's two supervisors was an MMA employee. In fact, Mr. Ferguson's other supervisor, William Peartree, is an MMAS employee, and, as noted, the SEC requires that a registered broker-dealer supervise all aspects of registered employee's work.

Mr. Ferguson's employer in various documents is, as a matter of New York law, generally irrelevant to the question of which entity was his employer.[3] *Hart v. Rick's Cabaret Inter., Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013) (noting with respect to common law test distinguishing employees and independent contractors, "it is not significant how the parties defined the employment relationship or how the worker identified herself on tax forms"); *id*. at 923 (New York courts use the common law test in a number of areas other than wage-protection including tort suits). Here, the law and the SEC are clear that a registered entity, *i.e.*, MMAS, must hire and supervise all aspects of Mr. Ferguson's Investment Advisor work and therefore is his employer. *See* https://www.sec.gov/reportspubs/investor-publications/divisionsmarketregbdguidehtm.html (last visited July 10, 2019); 15 U.S.C.A. § 78o.

Additionally, paystubs and W-2s are generally not dispositive of the employment relationship. *See Hart*, 967 F. Supp. 2d at 924; *Agerbrink v. Model Serv. LLC*, 14 Civ. 7841, 2017 WL 933095, at *7 (S.D.N.Y. Mar. 3, 2017). Indeed, Mr. Ferguson does not dispute that he was paid by MMA, as he had an "outside business activity" agreement with MMA. MMA even acknowledges in its Opposition that the sole reason it was able to receive the revenue derived from this agreement was because Mr. Ferguson, "as a condition of his employment, [] was required to register with FINRA as a representative of" MMAS. Pl.'s Opp., p. 9.

At best, MMA argues it jointly employed Mr. Ferguson with MMAS. However, MMA cites no case law for the proposition that a joint employer – particularly one with no injury-in-fact

---

[3]     As such, Mr. Ferguson acknowledging an employee handbook (ECF No. 44, Crain Decl., Ex. A), signing a producer agreement (*id*., Ex. B), or signing an offer letter (*id*., Ex. C) is generally irrelevant to the question of which entity was his employer with respect to the claims herein. Moreover, the producer agreement (as well as the offer letter which explicitly refers to it) clearly relates to Mr. Ferguson's work for MMAS as it discusses his "Book of Business" and Mr. Ferguson, as noted, only had a book of business with MMAS. *Id*., Ex. B. Finally, contrary to MMA's assertion, the non-solicitation agreement at issue *did not* explicitly define MMA as Mr. Ferguson's employer. Rather, as noted, the agreement defined Mr. Ferguson's employer as MMA **and/or subsidiaries thereof**," which obviously includes MMAS. ECF No. 38, Crain Decl., Ex. A (emphasis added).

in relation to the claims – can bring suit in place of the injured entity. MMA's own documentation is clear that it solely provides ministerial/administrative support and "does not service any clients." Ferguson Mot. Decl., Exs. D, E. *See Hudson Optical Corp. v. Cabot Safety Corp.*, No. 97 Civ. 9046, 1998 WL 642471, at *3 (2d Cir. Mar. 25, 1998) ("A corporation does not have standing to assert claims belonging to a related corporation, simply because their business is intertwined.") (citing *Diesel Sys., Ltd. v. Yip Shing Diesel Eng'g Co.*, 861 F.Supp. 179, 181 (E.D.N.Y.1994)); *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 495 (S.D.N.Y.2003), *aff'd in part, vacated in part, remanded, on other grounds*, 388 F.3d 39 (2d Cir. 2004). Thus, the Court should dismiss this matter for lack of standing.

**B.**   **MMA has no injury and therefore does not have standing to bring the claims against Mr. Ferguson via the restrictive covenant agreement.**

MMA's assertion that it has standing to bring these claims due to an agreement with Mr. Ferguson suffers from the same fatal flaw as its employer argument: it admittedly has no injury in relation to these claims.

As an initial matter, MMA claims that it is the only "specifically named" party to the restrictive covenant agreement. However, it conspicuously omits the language that immediately follows which states that "subsidiaries" (*i.e.*, MMAS) are also Mr. Ferguson's "employer" and parties to the agreement. ECF No. 38, Crain Decl., Ex. A ("Agreement"), p.1. The Agreement specifically empowers subsidiaries like MMAS to bring actions to enforce it. *Id.*, p. 6 ("any . . . subsidiary or affiliate may enforce this Agreement"). Thus, the entity with the actual alleged injury, MMAS, could have brought this action, but MMA has done so instead in an effort to circumvent FINRA's arbitration requirement.

Moreover, the Agreement defines "Confidential Information and Trade Secrets," in relevant part, as

(iii) client information, such as the identity of the Company's clients, the names of representative of the Company's clients responsible for entering into contracts with the Company, the amounts paid by such clients to the Company, specific client needs and requirements, specific client risk characteristics, **policy expiration dates, policy terms and conditions, information regarding the markets or sources with which insurance is placed**, and leads and referrals to prospective clients

Agreement, p. 2 (emphasis added). This language is clearly in reference to MMA's other lines of business (commercial risk and health insurance) as there are *no* policy expiration dates, terms and conditions, or information regarding markets and sources with respect to corporate retirement plans. In other words, MMA is trying to use an agreement tailored to its insurance products with respect to corporate retirement plans, which, as Mr. Ferguson has repeatedly noted, are readily available to the public and therefore not protectible as confidential information or trade secrets.

MMA confirms as much in its Opposition. It first makes conclusory allegations that it has suffered "irreparable injury," "loss of goodwill," and "harm to its business." Pl.'s Opp., p.11. The Court may disregard such conclusory statements and legal conclusions couched as factual allegations. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (per curiam). Unable to argue it has corporate retirement plan clients or confidential information or trade secrets regarding the same, MMA next argues it is a "highly integrated business" that cross-sells its products and services. Pl.'s Opp., p. 12. While this argument is somewhat difficult to follow, MMA is presumably arguing that because of its supposedly integrated nature it has standing pursuant to the Agreement to bring these claims. However, there are no allegations in the complaint that MMA's integrated business or ability to cross-sell its products or services has in any way been injured by Mr. Ferguson's actions. To the extent a corporate retirement plan client has chosen to go with Mr. Ferguson as opposed to MMAS, how does that in any way affect MMA's ability to cross-sell its insurance products? It does not, and MMA is free to continue cross-selling its products to its insurance clients. Moreover, MMA cannot be as integrated as it would have the Court believe as

there are unrefuted documents in the record as well as statutes and rules that clearly state corporate retirement plan clients must be serviced by SEC-registered individuals/entities, and information regarding the same must be walled off from non-registered entities like MMA.[4]

Finally, MMA's claim that Mr. Ferguson has not offered any factual or legal support for the distinction between registered and non-registered entities or that his employer was MMAS (Pl.'s Opp., pp 11-12) is simply misplaced. In addition to his declaration, Mr. Ferguson has proffered numerous documents evidencing that his employer was MMAS including, for example, certain FINRA documents indicating as much. Ferguson Mot. Decl., Exs. G, H. Additionally, as noted, there are numerous statutes and rules that require this corporate distinction, a fact which MMA makes no serious effort to dispute.[5] Conversely, MMA has offered no legal support for the proposition that it has standing to bring a breach of contract claim where it, admittedly, has no injury-in-fact. Case law is clear that a parent corporation, especially one that does not actually have an injury-in-fact, does not have standing to bring suits on behalf of it subsidiary. *See Russell Pub. Grp., Ltd. v. Brown Printing Co.*, No. 13 Civ. 5193, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014) (dismissing for lack of standing and observing that a party lacks standing to bring claims for breach of contract where injuries to that party "were indirectly caused by harm to [a different entity] and therefore are not 'distinct,'" and that "[i]t is axiomatic that '[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.'")

---

[4]    *See* MMA's website, https://www.marshmma.com/offerings/retirement-services, indicating "*Securities offered through MMA Securities LLC;*" 15 U.S.C.A. § 78o; https://www.sec.gov/reportspubs/investor-publications/divisionsmarketregbdguidehtm.html (last visited July 10, 2019).

[5]    MMA mistakenly claims SEC Rule S-P does not address confidential information pertaining to businesses or their representatives. Pl.'s Opp., p.11, n. 7. MMA is incorrect. Rule S-P states, "every broker, dealer, and investment company, and every investment advisor registered with the Commission must adopt written policies and procedures that address administrative, technical, and physical safeguards for the protection of customer records and information." 17 C.F.R. § 248.30. FINRA echoes this requirement. *See* https://www.finra.org/industry/books-and-records; https://www.finra.org/industry/notices/05-49 (last visited July 10, 2019). Thus, MMAS, which is registered, is required to safeguard this information while MMA is not.

(citations omitted); *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 980 F. Supp. 2d 400, 409-11 (E.D.N.Y. 2013) (rejecting parent entity's argument regarding its subsidiary's "integration . . . into the [parent entity's] family of companies" and dismissing breach of contract claim due to lack of standing; "New York law bars parent corporations from bringing direct suits aimed at vindicating injuries suffered by their subsidiaries.") (*quoting AEP–PRI Inc. v. Galtronics Corp. Ltd.*, 12 Civ. 8981, 2013 WL 4400833, at *8 (S.D.N.Y. Aug. 13, 2013).[6] Accordingly, the Court should dismiss this matter pursuant to Fed. R. Civ. P., Rule 12(b)(1).

## II.   In the Alternative, the Court Should Compel the Parties to Arbitrate.

### A.   Estoppel

Courts in this Circuit will estop a non-signatory from avoiding arbitration where it knowingly accepted the benefits of an agreement with an arbitration clause. *Bank of Am. Natl. Assn. v. Sopher*, 10 Civ. 8870, 2011 WL 2419872, at *3 (S.D.N.Y. June 8, 2011). Benefits are direct – and will lead to estoppel when knowingly exploited – when they (1) arise specifically from the agreement containing the arbitration provision, or (2) were specifically contemplated by the relevant parties. *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *Life Tech. Corp. v. AB Sciex Pt. Ltd.*,, 803 F. Supp. 2d 270, 276 (S.D.N.Y. 2011).

MMA argues in its Opposition that it (1) does not derive a direct benefit from the agreement between Mr. Ferguson and MMAS, and (2) is not a third-party beneficiary of that agreement.[7]

---

[6]     MMA's attempt to distinguish Mr. Ferguson's other authority as standing for "general propositions" is unavailing. The fact that holdings may be "general" does not make them any less persuasive. Moreover, MMA mischaracterizes several of the cases cited by Defendant. For example, in *Clarex Ltd. v. Natixis Sec. Am. LLC*, the court held that one corporation may not assert an affiliate's legal rights in rejecting plaintiffs' argument regarding common entity ownership. No. 12 Civ. 0722, 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012). Similarly, in *Green Island Power Auth. v. F.E.R.C.*, the court dismissed the claim for lack of standing not only because the injury was speculative but also because it was not the injured entity. 577 F.3d 148, 161 (2d Cir. 2009).

[7]     As an initial matter, MMA mischaracterizes the agreement between Mr. Ferguson and MMAS. The requirement to arbitrate is found not only in the U-4 agreement but also in FINRA Rule 13200, which requires that all disputes between Members and Associated Persons be arbitrated. *See* FINRA Code, § 13200(a).

However, MMA effectively concedes it derives a direct benefit from the agreement and is an intended third-party beneficiary. Specifically, it acknowledges that "**as a condition of his employment**, Ferguson was required to register with FINRA as a representative of their affiliated regulated entities . . . ." Pl.'s Opp., p. 9 (emphasis added). Again, Mr. Ferguson disputes that MMA was his employer, but to the extent the Court determines otherwise, MMA is effectively admitting it knowingly accepted the benefits of an agreement containing an arbitration provision.[8] It should therefore be required to arbitrate. *See CF Notes, LLC v. Weinstein*, No. 652206/2015, 2016 WL 6083871, at *3 (N.Y.Sup. Ct. Oct. 13, 2016) (compelling affiliate of a FINRA member to arbitrate on estoppel theory where, as here, without the underlying employment agreement containing the arbitration clause, plaintiff would not have been able to bring action); *Merrill Lynch Intl. Fin., Inc. v. Donaldson*, 27 Misc. 3d 391, 397 (N.Y.Sup. 2010) (compelling non-signatory to arbitrate, where non-signatory financed a loan that served as part of the compensation offered to the employee and where the loan was conditioned upon continued employment with FINRA member).

In attempting to avoid arbitration, MMA relies on *Ayco Co., L.P. v. Frisch*, but that case is distinguishable. No. 11 Civ. 580, 2012 WL 42134 (N.D.N.Y. Jan. 9, 2012). First, the defendants in *Ayco* provided a broad range of services including, but not limited to, tax and estate planning, wealth transfer, insurance planning, and investment management, many of which did not require registration. *Id.* at *1. Mr. Ferguson *only* provides corporate retirement plan services, which requires that he be registered. Second, the corporate entities at issue in *Ayco* were affiliates and subsidiaries of the *same* parent entity and the alleged benefit from one to the other was much more attenuated. *Id.* at *2. Here, MMAS is MMA's wholly-owned and controlled subsidiary. Third, the

---

[8]     Advertising Mr. Ferguson's corporate retirement plan services and receiving the revenue he generated are just two examples of the benefits MMA knowingly received. For example, Mr. Ferguson also provided general consulting regarding securities/retirement plans.

court in *Ayco* held that the non-signatory entity did not receive any renumeration as a result of requiring its employees to register with FINRA. *Id*. at *10. Here, MMA did receive revenue as a result of the "condition" that Mr. Ferguson register with FINRA, specifically all of the corporate retirement plan revenue he generated.[9]

At its core, the instant matter is much more akin to *Tencara Shipyard* and *Life Tech. Corp*., *supra*. MMA concedes Mr. Ferguson's employment was "conditioned" on him entering into an agreement containing an arbitration provision with MMAS so that he could work as a registered Investment Advisor. Like the agreement in *Tencara Shipyard, supra* at 353, that allowed boat owners to lower their insurance rates and fly their national colors, the agreement here was made solely for the benefit of MMA and so that it could advertise Mr. Ferguson's services, receive the revenue he generated, and enjoy the other benefits he provided (*e.g.*, general securities consulting). Moreover, like the entity in *Life Tech. Corp*, *supra* at 288, MMA contracted for the benefits of the agreement between Mr. Ferguson and MMAS and then used those benefits in commerce, all with the knowledge that the original agreement contained an arbitration provision. MMA should therefore be estopped from avoiding arbitration.

### B.     Agency

MMA should also be compelled to arbitrate under an agency theory. MMA asserts that corporate affiliation on its own is insufficient to bind a non-signatory parent entity, Pl.'s Opp., p. 15, but Mr. Ferguson makes no such argument. Rather, Mr. Ferguson argues, and MMA does not contest, that MMA wholly-owns and controls its subsidiary MMAS; MMAS acts at the behest of

---

[9]     *Oppenheimer & Co. Inc. v. Deutsche Bank AG,* No. 09 Civ. 8154, 2010 WL 743915 (S.D.N.Y. Mar. 2, 2010), is also distinguishable as it is not an employment case where a parent entity directly benefited from an individual's employment agreement with its subsidiary. Rather, *Oppenheimer* involved a dispute related to the purchase of securities. *Id*. at *1. Further, in *Oppenheimer*, the non-signatory did not exploit the agreement at issue, while here MMAS has raised these exact same claims to FINRA. Ferguson Mot. Decl., Ex. H.

and for the benefit of MMA; MMAS's agreement with Mr. Ferguson specifically contemplated MMA; and MMA is enmeshed in the underlying dispute and its claims against Mr. Ferguson are predicated on the business of MMAS, its subsidiary and agent.[10] Def.'s Mem. in Supp. of Mot. to Dismiss, pp. 2, 14-20. These are the same facts the court found indicative of an agency relationship in *Salomon* and, thus, required the parties to arbitrate. *In re Salomon Inc. Shareholders' Derivative Litig.*, No. 91 Civ. 5500, 1994 WL 533595, at *5-6 (S.D.N.Y. Sept. 30, 1994).

MMA claims that *Salomon* does not "stand for the proposition that a party may compel a parent company to arbitrate its claims because it is the 'sole parent' of a signatory subsidiary. Rather, indicators of an agency relationship must be present." Pl.'s Opp., p. 16. But this was not the extent of what Mr. Ferguson argued, and the court in *Salomon* looked at the factors discussed above including, in particular, that Salomon Inc. (*i.e.*., the parent entity) (1) was "thoroughly enmeshed in the underlying dispute in the case at hand," (2) was "the sole parent of Salomon Brothers (the registered subsidiary), and (3) the plaintiffs' claims on behalf of Salomon Inc. were largely predicated on the conduct of the business of its subsidiary and agent, and determined those factors to be indicative of an agency relationship. The same can be said of MMA here, and MMA makes no real attempt to distinguish *Salomon*. Accordingly, the Court should also dismiss this matter and compel arbitration pursuant to an agency theory.[11]

---

[10]    MMA inexplicably ignores these indicia of agency, as discussed in *Salomon*, *infra* at *5-6, and instead focuses on the *additional* facts that one of Mr. Ferguson's supervisors was an MMA employee and MMA, via the "outside business activity" agreement, compensated him. Further, *Merrill Lynch Inv. Managers v. Optibase, Ltd* is distinguishable from the case at hand as it is not an employment matter. 337 F.3d 125, 130 (2d Cir. 2003).

[11]    Defendant did not cite *Sokol Holdings, Inc. v. BMB Munai, Inc.,* 542 F.3d 354, 357 (2d Cir. 2008), so MMA is simply wrong that he mischaracterizes its holding. Pl.'s Opp., p. 17. *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280 (2d Cir. 2003) and *Thixomat, Inc. v. Takata Physics Int'l, Co., Ltd.*, No. 01 Civ. 5449, 2001 WL 863566, at *3 (S.D.N.Y. July 30, 2001) are relevant for their discussion of the parties' "close" relationship, which MMA claims here (a "highly integrated" business). Finally, the court in *WTA Tour, Inc. v. Super Slam Limited* held that a *non-signatory owner* was estopped from avoiding arbitration where he accepted the reputational, operational, and financial benefits of an agreement with an arbitration provision. 339 F. Supp. 3d 390, 400-02 (S.D.N.Y. 2018).

**III.    The Complaint Should Also Be Dismissed Under Rule 12(b)(7).**

**A.    MMAS is a necessary party.**

MMA argues MMAS is not a necessary party because (1) "MMA employed Ferguson and has relationships with clients" and, therefore, "owned the trade secrets and confidential information at issue in this action;"[12] (2) Ferguson did not provide evidence showing MMAS is claiming an interest relating to the subject of this action; and (3) MMAS's interests are "virtually identical" to MMA's and MMA can represent its interests in this litigation. Pl.'s Opp., pp. 18-19.

MMA's attempt to distance MMAS from the corporate retirement plans clients is unpersuasive because, as discussed above, MMAS has the relevant relationships with them (those related to retirement plan lines of business) – not MMA. *See, e.g.,* MMA's website, https://www.marshmma.com/offerings/retirement-services (last visited July 10, 2019), indicating "*Securities offered through [MMAS]."* Additionally, as noted, MMA is walled off from accessing confidential information related to MMAS's clients. To accept MMA's argument would not only go against the undisputed record, it would allow companies like MMAS to circumvent FINRA's arbitration requirement by simply having a related, unregistered entity file a suit like the one herein. This transparent strategy based on corporate formalities should not be endorsed.

MMA's second argument is equally unavailing because MMAS, in fact, claims an interest in the subject matter of this action. MMAS recently represented to FINRA that it is investigating Mr. Ferguson's alleged "removal of company property" and "solicitation of clients." *See* Ferguson Mot. Decl., Ex. H, p. 7. From this submission, it is clear MMAS believes the trade secrets and clients at issue belong to it – not MMA. As such, there is a significant risk of MMAS bringing the same claims against Mr. Ferguson and him incurring double or otherwise inconsistent obligations.

---

[12]    MMA's assertion regarding owning trade secrets is conclusory and the Court should therefore disregard it.

Third, MMA and MMAS's interests are not "virtually identical" because MMAS and MMA are different entities selling different services as evident from MMA's website and other documents discussed above. MMA sells insurance products related to corporate risk and health and welfare, while MMAS sells corporate retirement plan services. In fact, MMA has *no* interest in the subject matter of this lawsuit – only MMAS does. As such, MMA's reliance on *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 233 (S.D.N.Y. 2005); *BNP Paribas v. Bank of New York Tr. Co., N.A.*, No. 11 Civ. 350, 2012 WL 13059498, at *14 (S.D.N.Y. Mar. 28, 2012); and *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04 Civ. 9578, 2006 WL 2266351 (S.D.N.Y. Aug. 7, 2006)[13] is misplaced. In those cases, the plaintiffs had an interest in the subject matter and were not, like MMA here, merely a shell brought into the matter to avoid arbitration.

## B.      MMAS is an indispensable party.

First, contrary to MMA's assertion, a judgment without absent party MMAS will prejudice Mr. Ferguson because it would not prevent MMAS from bringing a claim against him before FINRA. As described above, MMAS has already notified FINRA that it is investigating Mr. Ferguson's alleged "removal of company property" and "solicitation of clients and prospective clients." *See* Ferguson Mot. Decl., Ex. H, at p. 7. Common law estoppel principals would not protect Mr. Ferguson from multiple lawsuits. For example, it is conceivable that after protracted litigation, the Court may determine that MMAS is the true owner of any alleged trade secrets, and at that point MMAS could file an arbitration claim against Mr. Ferguson before FINRA. In this

---

[13]      *Polargrid* is also distinguishable because of the differences in contract language, which the *Polargrid* court found to be critical. Unlike in *Polargrid*, 2006 WL 2266351, at *8-10, the Agreement here does not indicate that MMA executed the Agreement on its subsidiaries' behalf or that Mr. Ferguson accepted MMA as MMAS' representative. *See* Agreement, pp. 1, 9. If the Court determines otherwise, it should compel MMA to arbitrate on the agency theory described above and in Defendant's moving brief. MMA simply cannot have it both ways

likely scenario, neither *res judicata* nor collateral estoppel will preclude a new proceeding, but Mr. Ferguson will have already occurred significant attorneys' fees and costs defending this action.

For the same reasons, a judgement in MMAS's absence will not be adequate and there is risk of prejudice to Mr. Ferguson if he has to litigate two separate matters in two different forums arising under the same contract. *Mazzio v. Kane*, No. 14 Civ. 616, 2014 WL 2866040, at *4 (E.D.N.Y. June 24, 2014), which Plaintiff failed to distinguish, is instructive. In *Mazzio*, plaintiffs filed a diversity action against an individual defendant claiming, *inter alia*, that defendant violated a tow truck company's restrictive covenant agreement. The *Mazzio* plaintiffs, like MMA here, were merely owners of the company – not the company itself, and the court dismissed the case for non-joinder finding that the company was "a necessary and indispensable party because plaintiffs are raising claims that properly belong to [it]." 2014 WL 2866040, at *4.

Finally, if this case is dismissed for non-joinder, MMAS may file its claims against Mr. Ferguson before FINRA, which would not prejudice MMA given its argument that its interests are "virtually identical" to MMAS's. Pl.'s Opp., p. 19. The Court should therefore dismiss this matter under Rule 12(b)(7) because MMA has failed to join MMAS, a necessary and indispensable party.

**IV.     California Law Applies to All Causes of Action.**

MMA argues (1) Mr. Ferguson's motion to apply California law is premature at this stage; (2) New York law applies because under the agreement, "The parties acknowledge that the Company is headquartered in New York, that senior members of the leadership team of the Company are based in New York, and that breach of this Agreement will cause injury in New York;" and (3) the contractual choice of law provision covers tort claims as well.

First, the Court has discretion to decide the choice-of-law question at this stage. *See, e.g., TGG Ultimate Holdings, Inc. v. Hollett*, 224 F. Supp. 3d 275, 283 (S.D.N.Y. 2016) (finding, on a

motion to dismiss, that a New York choice-of-law provision was improper under both the substantial relationship test and the significant state policy test and applying California law).

Second, there is no substantial relationship to the parties in this matter because Mr. Ferguson had no contact with New York and none of the clients at issue are located here. MMA's argument under the conclusory language of the agreement that it has contacts with New York is unpersuasive because "'[s]ufficient contacts' generally requires more than just one contact." *See Hollett*, at 282. In addition, as noted, MMA has no actual injury in relation to this matter.

California law must also apply as the State has a materially greater interest in determining the scope of restrictive covenants applied to its citizens who reside and work in California. Contrary to Plaintiff's assertion, California's fundamental public policy is at odds with New York's because Cal. Bus. & Prof. Code § 16600 ("Section 16600") voids "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Unlike New York courts, California courts do not engage in a "reasonableness" analysis because all such covenants are automatically void under Section 16600 even if they are reasonable. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945 (2008) (finding that Section 16600's absolute bar on contractual restrictions repudiated the earlier, common law "rule of reasonableness" that allowed "[reasonable] restraints on the practice of a profession, business, or trade."). Finally, California law applies to the tort claims here because the choice-of-law provision is insufficiently broad to encompass the entire relationship between the parties. The provision is narrow and merely states "[t]he Agreement shall be governed by, and construed in accordance with, the laws of the State of New York[.]" It says nothing about the parties' relationship outside of the agreement.[14]

---

[14]    The case MMA cites in support of its argument, in fact, supports Mr. Ferguson's position. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (declining to apply choice-of-law provision to a tort claim, where the provision – just like here – stated only that "[t]his [document] shall be governed by and construed in accordance with the laws of [another state]."). Therefore, California law applies to all causes of action in the instant matter.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss this matter pursuant to Rules 12(b)(1) and 12(b)(7), or compel the parties to arbitrate.


Dated: July 10, 2019                                    Respectfully submitted,
New York, New York

                                                        */s Nicholas H. Sikon*
                                                        Nicholas H. Sikon
                                                        Aliaksandra Ramanenka
                                                        **OUTTEN & GOLDEN LLP**
                                                        685 Third Avenue, 25th Floor
                                                        New York, New York 10017
                                                        Phone: (212) 245-1000
                                                        Email: nsikon@outtengolden.com
                                                                 aramanenka@outtengolden.com

                                                        *Attorneys for Defendant*

16