UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARSH & MCLENNAN AGENCY LLC,

Plaintiff,

-against-

ELMER "RICK" FERGUSON,

Defendant.

# 19 CV 03837

Case No.: _____

**COMPLAINT**

**JUDGE BRODERICK**

Plaintiff Marsh & McLennan Agency LLC ("MMA", the "Company", or "Plaintiff"), by and through its undersigned attorneys, Littler Mendelson, P.C., as for its Complaint against Defendant Elmer "Rick" Ferguson ("Defendant" or "Ferguson"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.     MMA brings this action to enforce the contractual promises of Ferguson, to protect its customers, goodwill, and confidential information, and to prevent irreparable injury to its business interests by Ferguson.

2.     Ferguson signed and entered into an Employment Agreement with Barney & Barney, dated February 26, 2007 (the "B & B Agreement"), which contained contractual restrictions on Ferguson's conduct during and after his employment with Barney & Barney, LLC ("Barney & Barney").

3.     On or about February 1, 2014, MMA acquired 100% of the membership interest in Barney & Barney.

4.     As a result, Barney & Barney merged with and into MMA, and MMA became the surviving entity of such merger.

5.     Ferguson signed and entered into a Barney & Barney/MMA Non-Solicitation and Confidentiality Agreement, dated February 1, 2014 (the "MMA Agreement") once he became

employed by MMA as a result of the merger.  A copy of the MMA Agreement is attached as Ex. A.

6.    The MMA Agreement provided broad protection for MMA's "Confidential Information and Trade Secrets" (defined below).  MMA's Confidential Information and Trade Secrets, which were protected from unauthorized disclosure or improper use, includes, among other things, MMA's non-public client information, such as the identity of clients, the identity of and a confidential compilation of contact information for decision-makers/stakeholders of clients, all other client and prospective client contact information, pricing information relating to MMA's products and services, information regarding specific client needs, requirements and/or preferences, confidential information and communications sent to or received from MMA clients, and all other non-public MMA information that is or may be subject to restrictions on public disclosure and/or otherwise relating to MMA's clients and prospective clients, and its business, operations, and sales and marketing plans (collectively, "Confidential Information and Trade Secrets"). *See* Ex. A at Section 1(a).

7.    The MMA Agreement prohibited Ferguson from engaging in any unauthorized disclosure, use or dissemination of MMA's Confidential Information and Trade Secrets during and after his MMA employment:

> Accordingly, Employee agrees that he . . . will not, while associated with the Company and for so long thereafter as the pertinent information or documentation remains confidential, for any purpose whatsoever, directly or indirectly use, disseminate or disclose to any other person, organization or entity Confidential Information and Trade Secrets, except as required to carry out his . . . duties as an employee of the Company[.]  *See* Ex. A at § 1(b).

8.    The MMA Agreement also prohibited Ferguson, during the twenty four (24) month period immediately following the termination of his MMA employment, from, directly or indirectly, using MMA's Confidential Information and Trade Secrets to solicit business from or

2

perform services for MMA's clients or prospective clients with whom Ferguson had contact during the last two years of his MMA employment.

9.      Furthermore, the MMA Agreement prohibited Ferguson from accessing or using the Company's computer systems and protected computers, including his laptop computer and cellphone/PDA, and all data contained therein, "for personal gain or to benefit third parties[,]" and Ferguson was not authorized to retain MMA's property, equipment or Confidential Information and Trade Secrets after his resignation/termination.

10.     Moreover, pursuant to the MMA Agreement, "[i]mmediately upon the termination of employment," Ferguson was required to return to MMA "(i) any originals and all copies of all files, notes, documents, slides (including transparencies), computer disks, printouts, reports, lists of the Company's clients or leads or referrals to prospective clients, and other media or property in [Ferguson's] possession or control which contain or pertain to Confidential Information and Trade Secrets; and (ii) all property of the Company, including, but not limited to, supplies, keys, access devices, books, identification cards, computers, telephones and other equipment."

11.     The B & B Agreement that Ferguson signed and entered into when he started work with Barney & Barney contained similar duties and obligations as the MMA Agreement regarding the protection of Confidential Information and Trade Secrets.

12.     Despite these clear contractual obligations, Ferguson breached the MMA Agreement, the B & B Agreement and his common law and statutory duties by, among other things, (a) using and disclosing MMA's Confidential Information and Trade Secrets to solicit MMA's clients to terminate their relationships and engagements with MMA and establish new relationships and engagements with Ferguson's new employer, Teros Advisors LLC ("Teros"), (b) unlawfully accessing, using, disclosing and/or disseminating MMA's property, equipment,

resources and Confidential Information and Trade Secrets to carry out this unlawful solicitation and, later, to perform services for MMA clients at Teros, and (c) engaging in unlawful solicitation and misappropriation on behalf of Teros *while Ferguson was still employed by MMA* (and continuing thereafter to the present).

13.     Moreover, upon his resignation, Ferguson continued to breach the MMA Agreement because he failed to immediately return all of MMA's Confidential Information and Trade Secrets to MMA and, to the date of this Complaint, upon information and belief, Ferguson continues to unlawfully retain MMA's Confidential Information and Trade Secrets.  Thus, while he still was employed by MMA, Ferguson unlawfully disclosed and disseminated MMA's Confidential Information and Trade Secrets by sending such information from MMA to Teros via email.   In addition, Ferguson unlawfully retained MMA's laptop computer and smartphone/PDA for more than a week after his resignation and, during this time period, upon information and belief, he unlawfully accessed, altered, modified and/or destroyed data and information on the MMA laptop computer, which required the expenditure of significant time and financial resources to retrieve and restore such data and information.

14.     Upon information and belief, prior to his resignation from MMA on February 15, 2019, and while he still was employed by MMA, Ferguson commenced employment with Teros, which is a direct competitor of MMA in the retirement benefits services industry.  After his employment with MMA ended, Ferguson continued to use and disclose MMA's Confidential Information and Trade Secrets to solicit and perform services for MMA's clients on behalf of Teros.

15.     At no time did MMA authorize Ferguson to use, disclose or disseminate its Confidential Information and Trade Secrets for any purpose other than for performing his authorized duties for MMA, and MMA *never* authorized such disclosure, use or dissemination

4

by Ferguson for purposes of soliciting MMA's clients to terminate their relationships and engagements with MMA and establish new relationships and engagements with Teros.

16.     On February 19, 2019, outside counsel for MMA sent a letter to Ferguson to demand his immediate compliance with his contractual, statutory and common law duties and obligations, to cease all unlawful conduct, and to return (and not retain) MMA's property, equipment and Confidential Information and Trade Secrets.  MMA's outside counsel included copies of Ferguson's MMA Agreement and the B & B Agreement along with this letter. Although Ferguson belatedly returned MMA's laptop computer and smartphone/PDA, Ferguson ignored all other aspects of the cease and desist letter and, among other things, he failed to return to MMA all of its Confidential Information and Trade Secrets and he continued to disclose and use that information to solicit MMA clients on behalf of his new employer.

17.     Ferguson also breached and continues to breach the MMA Agreement, the B & B Agreement and his common law and statutory duties by, among other things, failing to return, and continuing to retain, use and disclose MMA's Confidential Information and Trade Secrets, by soliciting and continuing to solicit MMA's clients on behalf of Teros while employed by MMA and thereafter (through Ferguson's use and disclosure of MMA's Confidential Information and Trade Secrets), by making false and misleading statements to MMA clients to attempt deceive them into believing that changing their relationship from MMA to Teros was a routine, administrative change and not a "big deal," by falsely asserting that MMA approved and agreed to such a change of the relationship, by unlawfully interfering with MMA's contractual and business relationships with its clients, and by unlawfully using, disclosing, accessing, modifying and/or attempting to delete MMA's computer information (causing MMA to expend significant amounts to forensically recover such information).

5

18.     Ferguson's blatant disregard for his contractual obligations and his common law and statutory duties has caused and continues to cause MMA to suffer irreparable harm such that immediate injunctive relief is necessary and warranted.

## PARTIES AND RELEVANT NON-PARTY

19.     Plaintiff MMA is a Delaware limited liability company with its principal place of business located at 360 Hamilton Avenue, Suite 930, White Plains, NY 10601.  MMA is a wholly-owned subsidiary of its ultimate parent company, Marsh & McLennan Companies Inc. ("MMC"), and is a leading provider of insurance brokerage and employee benefits brokerage and management services.

20.     Defendant Ferguson is a natural person who, upon information and belief, resides in or around San Bruno, California, and is a former employee of MMA and, upon information and belief, is a current employee of Teros.

21.     Non-party Teros is a California limited liability company with its principal place of business located at 3697 Mt. Diablo Blvd, Suite 175, Lafayette, CA 94549.  Like MMA, Teros is engaged in the business of, among other things, providing retirement benefits management and services.

## JURISDICTION AND VENUE

22.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, under the Governing Law and Choice of Forum clause in the MMA Agreement ("Section 12"), this Court is the only federal venue for any action arising out of Ferguson's employment with MMA. Moreover, in Section 12 of the MMA Agreement, Ferguson and MMA unambiguously selected

the courts in New York City and New York County, including the U.S. District Court for the Southern District of New York, as the exclusive forum for any action or proceeding with respect to the MMA Agreement:

> The parties acknowledge that the Company is headquartered in New York, that senior members of the leadership team of the Company are based in New York, and that breach of this Agreement will cause injury in New York. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of laws provisions. The parties, being desirous of having any disputes resolved in a forum having a substantial body of law and experience with the matters contained herein, agree that any action or proceeding with respect to this Agreement and Employee's employment shall be brought exclusively in the Civil Court of the City of New York, New York County, or in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York and the parties agree to the jurisdiction thereof. The parties hereby irrevocably waive any objection they may now or hereafter have to the laying of venue of any such action in the said court(s), and further irrevocably waive any claim they may now or hereafter have that any such action brought in said court(s) has been brought in an inconvenient forum… *See* Crain Decl. Ex. A at § 12.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### *MMA's Reputation in the Marketplace*

24.     MMA is a world leader in risk, insurance and employee benefits brokerage and consulting. It provides clients with a comprehensive array of benefits solutions, including managing employee benefit plans and retirement plans, assisting clients with choosing the right employee benefits and retirement plans to fit their needs, providing access to market experts, and advising on regulatory compliance.

### *Ferguson's Employment with Barney & Barney*

25.     On February 22, 2007, Barney & Barney hired Ferguson as a retirement analyst.

26.     While employed by Barney & Barney, Ferguson signed and entered into the B & B Agreement, dated February 26, 2007, which contained contractual restrictions on his conduct and protected Barney & Barney's confidential information and trade secrets from unauthorized disclosure or use during and after Ferguson's employment with Barney & Barney.

27.     On April 5, 2010, Ferguson was promoted to a Client Manager role and, in 2011, Ferguson was promoted to a Client Executive, Service position.

28.     On or about August 6, 2012, Barney & Barney transferred Ferguson from its offices in San Diego, California, to its offices in San Francisco, California, and Ferguson transitioned from a Client Executive, Service position to a Client Executive, Sales (or Retirement Services Client Executive, Sales) position.

29.     In the new sales position, Ferguson's duties changed from principally providing service to clients (who were mostly if not entirely small, medium and large employers) regarding their retirement plans (which were mostly 401(k) plans) to performing a sales/business development role in which Ferguson was responsible for establishing and developing relationships with new and prospective clients and maintaining relationships with existing clients.  However, when Ferguson joined Barney & Barney, he did not bring new clients with him and, even after he transitioned into the sales role at Barney & Barney and MMA, Ferguson was largely dependent on Barney & Barney and later MMA to refer existing or potential new business opportunities to Ferguson.

*Ferguson's Employment with MMA*

30.     On or about February 1, 2014, MMA acquired 100% of the membership interest in Barney & Barney and, as a result, Barney & Barney merged with and into MMA, and MMA became the surviving entity of such merger.

31.     Among other things, MMA took assignment of Ferguson's B & B Agreement when it merged with Barney & Barney and, at that time, Ferguson became employed by MMA.

32.     When Ferguson became employed by MMA, he continued in his same Client Executive, Sales position and thus he started working at MMA in a sales/producer/business development role in February 2014. Like his duties at Barney & Barney, as a MMA Client Executive, Sales, Ferguson was responsible for developing and generating new client relationships on the retirement services team (mostly if not exclusively involving qualified and non-requalified retirement plans and services) and maintaining existing client relationships. In addition, however, given Ferguson's background on the service side of the business, Ferguson continued to provide service to MMA retirement plan clients.

33.     In or about September 2014, however, Ferguson told MMA that he wanted to return to work in the service side of the business.

34.     Thereafter, MMA granted Ferguson's request effective January 1, 2015, and MMA officially returned Ferguson to a Client Executive, Service position, in which he continued during the remainder of his MMA employment through his resignation in February 2019.

35.     When Barney & Barney hired Ferguson, Ferguson had no clients and he brought no business to Barney & Barney. Rather, he was assigned clients and only later developed client relationships through internal referrals of clients from within Barney & Barney. While employed by Barney & Barney and later with MMA, Ferguson developed clients through expending time and financial resources of his employers, Barney & Barney and MMA. Ferguson was assigned existing clients of Barney & Barney and he later was assigned clients from within MMA (and he developed some new client relationships too). A majority of clients serviced by Ferguson at Barney & Barney and later at MMA were established clients of Barney & Barney and/or MMA.

9

36.     At MMA, Ferguson relied on financial and internal resources from MMA to generate business, service clients, and manage client relationships. He developed client relationships by virtue of his employment with MMA with the support of an experienced team of MMA employees, on whom he relied to carry out his duties.  He also relied on MMA's Confidential Information and Trade Secrets to perform his duties and develop and maintain client relationships.  For instance, he relied on MMA's customer and prospective customer lists and MMA's confidential compilation of client contact information for key decision makers/stakeholders were only developed through Barney & Barney's and MMA's significant expenditure of time, money and resources over the years.

37.     MMA further supported Ferguson's business development and servicing efforts by sponsoring client events, financing his membership in professional and networking organizations, paying for travel and expenses related to client meetings and entertainment, and investing in marketing and sales tools, all of which Ferguson used to form and strengthen client relationships and engagements for and on behalf of MMA.

38.     Given MMA's significant expenditures of time and financial resources to identify and retain MMA clients (including all clients assigned to Ferguson), information regarding the MMA clients including the identity of key decision-makers at MMA clients, MMA's confidential compilation of business contact information for key decision makers/stakeholders at MMA clients, and pricing information was not publicly available and represented some of MMA's Confidential Information and Trade Secrets.  MMA took reasonable measures to maintain the confidential nature of its Confidential Information and Trade Secrets including, among other things, the fact that MMA employees were required to sign confidentiality agreements, computers, computer systems and cellular telephones were password protected, and

MMA restricted access to and adopted security precautions for MMA offices and to secure MMA's electronic data.

39.     Furthermore, none of the MMA clients Ferguson ultimately generated, serviced and later solicited "belonged" to him.  Rather, all such clients were clients of Barney & Barney and later MMA.

40.     On or about February 1, 2014, in connection with his commencement of employment with MMA, Ferguson entered into the MMA Agreement.

41.     Under Section 1(b) of the MMA Agreement, Ferguson agreed not to disclose or use MMA's Confidential Information and Trade Secrets during his employment and thereafter:

> Employee acknowledges and agrees that the Company is engaged in a highly competitive business and that its competitive position depends upon its ability to maintain the confidentiality of the Confidential Information and Trade Secrets which were developed, compiled and acquired by the Company at its great effort and expense.  Employee further acknowledges and agrees that any disclosing, divulging, revealing, or using of any of the Confidential Information and Trade Secrets, other in connection with the Company's business or as specifically authorized by the Company, will be highly detrimental to the Company and cause it to suffer serious loss of business and pecuniary knowledge.  *See* Ex. A at Section 1(b).

42.     In addition, Ferguson expressly agreed to "not use [his] . . . position, influence, [or] knowledge of Confidential Information and Trade Secrets or the Company's assets for personal gain[.]" *See* Ex. A at Section 4.

43.     Ferguson also agreed not to "directly or indirectly use Confidential Information and Trade Secrets . . . to solicit clients or prospective clients of the Company for the purpose of selling or providing products or services of the type sold or provided by [him] while employment by the Company." *See* Ex. A at Section 2(b).

44.     Under Section 2 of the MMA Agreement, Ferguson promised as follows:

11

(a)     Employee acknowledges and agrees that solely by reason of employment by the Company, Employee has and will come into contact with and develop and maintain relationships with a significant number of the Company's clients and prospective clients, and will have access to Confidential Information and Trade Secrets relating thereto, including those regarding the Company's clients, prospective clients and related information.

(b)     Consequently, Employee covenants and agrees that in the event of separation from employment with the Company, whether such separation is voluntary or involuntary, Employee will not, for a period of twenty-four (24) months following such separation, directly or indirectly use Confidential Information and Trade Secrets or related information regarding the Company, the Company's clients and its prospective clients to solicit clients or prospective clients of the Company for the purpose of selling or providing products or services of the type sold or provided by Employee while employed by the Company. This restriction shall apply only to those clients or prospective clients of the Company with which Employee had contact during the last two (2) years prior to the separation of his or her employment with the Company. *See* Ex. A, § 2.

45.     Moreover, "[i]mmediately upon the termination of employment," Ferguson was required to return to the Company "(i) any originals and all copies of all files, notes, documents, slides (including transparencies), computer disks, printouts, reports, lists of the Company's clients or leads or referrals to prospective clients, and other media or property in [Ferguson's] possession or control which contain or pertain to Confidential Information and Trade Secrets; and (ii) all property of the Company, including, but not limited to, supplies, keys, access devices, books, identification cards, computers, telephones and other equipment." *See* Ex. A at § 1(c).

46.     The MMA Agreement also prohibited Ferguson from accessing or using the Company's computer systems and protected computers, including his laptop computer and PDA, and all data contained therein, "for personal gain or to benefit third parties[,]" and he was not authorized to retain any of MMA's property, equipment or Confidential Information and Trade Secrets after his separation/termination. *See* Ex. A at § 1(d).

12

47.    Ferguson expressly acknowledged in the MMA Agreement that a breach of his obligations under the MMA Agreement would cause MMA to suffer irreparable harm, that monetary damages would not be readily calculable, and that MMA would be entitled to temporary and permanent injunctive relief without the necessity of posting a bond, and that MMA was entitled to recover its attorneys' fees, costs and expenses including expert fees, costs and expenses.

48.    Specifically, Section 6 of the MMA Agreement provides:

> In recognition of the fact that irreparable injury will result to the Company in the event of a breach by Employee of [his] obligations under Section 1, 2, 3 or 4 of this Agreement, that monetary damages for such breach would not be readily calculable, and that the Company would not have an adequate remedy at law therefor, Employee acknowledges, consents and agrees that in the event of such breach, or the threat thereof, the Company shall be entitled, in addition to any other legal remedies and damages available, to (a) specific performance thereof and to temporary and permanent injunctive relief (without the necessity of posting a bond) to restrain the violation or threatened violation of such obligations by Employee and persons acting for or in connection with Employee and (b) recovery of all reasonable sums and costs, including attorneys' fees, expert witness fees, and expenses and costs incurred by the Company in seeking to enforce the provisions of this Agreement. *See* Ex. A at Section 6.

**Ferguson Breaches the MMA Agreement While Still Employed By MMA**

49.    As early as February 12, 2019, Ferguson began soliciting MMA clients on behalf of Teros *while he was still employed by MMA*.

50.    For example, on February 12, Ferguson used his Teros email account, "rferguson@terosadvisors.com" to solicit a MMA client via email, using MMA's Confidential Information and Trade Secrets.   In this regard, Ferguson used MMA's highly confidential compilation of contact information for key decision makers/stakeholders at MMA clients to send the following message to a MMA client:

Following up from our discussion and prior email. **Below is my new [Teros] email address and phone number. Attached are the forms to change our advisory to Teros Advisors. These should be dated February 16.**

**Changing to Teros Advisors brings a host of benefits for you and your employees beyond the fee reduction. (Please note for efficiency and speed this paperwork keeps the current fee in place while processing then I can reduce the fee at Teros.)...**

**This change is EASY.** There is no required notice to employees or any material impact to the plan or your participants, this is administrative in nature. The RIA is in the background, responsible for compliance oversight, licensing & registration, and fee collection... (emphasis added).

51.     Then, on February 13 and 14, 2019, using his MMA email account, Ferguson sent a series of messages to existing MMA clients and solicited them to terminate their relationships and engagements with MMA and establish new relationships and engagements with Teros. For example, on February 13, Ferguson sent the following message to another MMA client he serviced at MMA:

Can I get schedule a meeting or call with you? I've decided to change my back office affiliation from MMA Securities to Teros Advisors. Not really a big deal since I'll still work with MMA benefits and insurance teams to support our common clients. It's just like the change we did in July from Sagepoint Financial to MMA Securities. No employee notices, no disclosures for you to send out – just like before it's just an administrative change with a couple of forms to sign.

52.     In so doing, Ferguson used and disclosed MMA's Confidential Information and Trade Secrets (e.g., MMA's confidential compilation of contact information for key decision makers/stakeholders at MMA clients) and he used MMA's property and equipment (e.g., his MMA laptop computer and email systems) to solicit this client on behalf of Teros while he still was employed by MMA. This solicitation is one of many he sent to MMA clients beginning on February 12 and continuing to the present which illustrate Ferguson's breach of the MMA

Agreement, his misappropriation of trade secrets, his breach of his duties of loyalty and fiduciary duties, his unlawful interference with MMA's contractual relationships with its clients and his unfair competition.

53.     This same client later responded to Ferguson's solicitation by asking Ferguson to "supply some information of Teros Advisors" because they were "not familiar with the firm." Ferguson then replied, stating "Yes definitely.  It will be sent via separate email."

54.     Similarly, again on February 13, while Ferguson was still employed by MMA, he sent an email message to yet another MMA client:

> Just a heads up on a fiduciary update. I've decided to change my back office affiliation from MMA Securities to Teros Advisors RIA. Not too big deal since I'll still work with MMA benefits and insurance teams to support our common clients. It's like the change we did in July from Sagepoint Financial to MMA Securities. Nothing changes for your 401k plan, you, or employees. No employee notices, no disclosures for you to send out – just like before it's an administrative change with a couple of forms to sign. The biggest change is a new email and phone number for me.
>
> …Please let me know if you'd like to schedule a call or meeting to discuss. I would love to introduce you to my new support team!

55.     Thus, once again, Ferguson used and disclosed MMA's Confidential Information and Trade Secrets (e.g., MMA's confidential compilation of contact information for key decision makers/stakeholders at MMA clients) and MMA's property and equipment (e.g., his MMA computer and MMA's email system) to solicit this MMA client, which gives rise to yet another breach of contract (the MMA Agreement), trade secret misappropriation, breach of duty of loyalty and fiduciary duty, unlawful interference with MMA's contractual relationships, and unfair competition.

56.     Further, Ferguson's statements in these messages to the effect that he had "decided to change" his "back office affiliation from MMA Securities to Teros Advisors" and

that he would "still work with MMA benefits and insurance teams to support our common clients" were purposely misleading and deceptive. In truth, Ferguson was <u>not</u> "changing his back office;" rather, Ferguson planned to resign and terminate his employment with MMA and go to work for a competitor, Teros, and he solicited MMA clients to follow him to his new employer, yet he did not make this clear to the MMA clients he solicited.

57. On February 13, Ferguson also requested a Broker-Dealer Change Form on behalf of another MMA client. Upon information and belief, this client has since terminated its relationship with MMA because of Ferguson's unlawful actions.

58. In total, on February 12, 13 and 14, Ferguson solicited at least 20 MMA clients and urged them to sever their contractual and business relationships with MMA (and MMAS) and to establish new business relationships with Teros (and its broker dealer), all while Ferguson was still employed by MMA, and all while Ferguson unlawfully used, disclosed and disseminated MMA's Confidential Information and Trade Secrets, and all while Ferguson used MMA's property and equipment (e.g., his MMA laptop computer and/or smartphone/PDA issued to Ferguson and MMA's email server) to carry out this unlawful conduct.

59. Additionally, on information and belief, Ferguson planned on using previously booked air travel to Vancouver, Canada that was paid for by MMA to attempt to meet with an MMA client on February 15 in order to solicit them on behalf of Teros. However, although Ferguson's original schedule in Vancouver was from February 14 through 16, upon learning of Ferguson's resignation from MMA, this client cancelled its appointment with Ferguson shortly before the scheduled meeting.

60. On or about February 13, 2019, Ferguson sent two or more email messages from his MMA email account to his Teros email address, rferguson@terosadvisors.com, and he attached to these messages MMA Outlook contact cards from its confidential compilation of

contact information for key decision makers at MMA clients (and contact information regarding prospective clients), which represented MMA's confidential, trade secret information and included the names, telephone numbers, addresses, email addresses and other contact information for key decision makers at MMA's clients and for prospective clients. In addition, for each of his email messages sent to MMA clients on February 12 through 15 (and thereafter), he copied his Teros email address as he sent these solicitations to MMA clients from his MMA email address/account.

61.     On or about February 14, 2019, MMA started to uncover Ferguson's unlawful conduct including his solicitation of MMA's clients to leave MMA to join Ferguson at his new firm, Teros. Once his misconduct was discovered, MMA's Managing Director, Principal of the Bay Area, Jeff Calder (who was Ferguson's direct supervisor), sent an email message to Ferguson and directed him to cease and desist from sending solicitations to MMA clients. In addition, Calder asked Ferguson to call him immediately.

62.     While on the phone call with Ferguson, Calder confronted Ferguson regarding his solicitations of MMA clients and his improper use of MMA's Confidential Information and Trade Secrets. Calder informed Ferguson that Ferguson's MMA office card key had been deactivated and Calder instructed Ferguson to make an appointment with MMA to return his laptop and iPhone. Finally, Calder told Ferguson that he would be hearing from MMA about the legal issues concerning his actions shortly.

63.     On February 15, 2019, Ferguson preemptively submitted his voluntary resignation from MMA before MMA was able to officially terminate his employment.

***Ferguson Continues To Breach the MMA Agreement After He Leaves MMA To Join Teros***

64.     MMA is informed and believed that Ferguson had been planning and plotting his unlawful scheme for some time and that he actually commenced his employment with Teros

17

some time prior to his February 15 resignation from MMA.  For example, as of February 12, 2019, Ferguson already had a Teros email account set up at Teros and he already was forwarding emails from his MMA email to his Teros email account.  Like MMA, Teros is and was in the business of selling and servicing retirement plans for employers.  As such, Teros is and was a direct competitor of MMA in the retirement services field.

65.     A few days after Ferguson's resignation from MMA, he sent the following email message to a select group of employees and/or principals *at MMA*:

Hello Friend and Business Partner;

**I'm emailing you b/c I have clients in common with you and I want to assure you I am not trying to move your business in any way.** The firm I've moved to doesn't do EHB or BI. I will partner with outside EHB and BI relationships like MMA. **It's in my best interest to keep the status quo on our current clients just like it is for you. I'm trying to avoid our clients going out to bid.**

A perfect example is that a MMA benefits producer is in danger of losing a benefits client. Client told me during a review meeting recently they aren't happy with the MMA EHB team service. I'm also already engaging two producers on new lines of biz on clients of mine. I'll follow up/continue with those relationships respectively.

1.     Teros Advisors partners with a number of firms who look to Teros as a strategic partner in benefits and commercial. We don't compete with you. Teros was specifically formed to be independent of other services due to some possible rules that may make in-house retirement services non-compliant. I can even offer NDA's if desired.

2.     Teros Advisors is a "best of the best" team. My new direct client manager has over 20 years direct industry experience. Every member of the Teros support team has at least 10+ years industry experience.

3.     Teros Advisors has a larger local and national team thus more support for our mutual clients. Something you all know I struggled with as a one-man operation for 6+ years. I now have an entire team supporting me!

18

4.      FIRST Advisor/company in the nation to integrate HSA with 401k. INNOVATIVE and on the forefront of developing new products and legislation!

5.      Teros has a Trust 401k product for small market. Like our H&W trusts. I now have a product for the 8 small clients that were referred to me the past 16 months and couldn't sign b/c of pricing.

6.      Advisor Managed Accounts – next-generation investment management for advanced clients. (Only 3 advisor firms in the nation qualified for this.)

7.      RIA is #1 FASTEST GROWING RIA FIRM IN 2017 by WealthManagement.com. $39 Billion assets under management, 48 offices across the US.160, 2,100+ retirement plans serviced, 500,000+ plan participants serviced,15,000+ individual accounts serviced.

8.      Awards include: Financial Times Top Advisors, Plan Sponsor Advisor Team of the Year, Plan Sponsor Top Advisors, National Association of Plan Advisors Top Women Advisors, Young Guns and Top Advisor Teams.

9.      Additional resources for personal investing, alternative Investments, investment banking & capital markets, IPO's, private equity, cannabis industry, and more.

I could go on and on, but you get the idea. I moved so I could join a more advanced team and offer more features and services.

**The fact is we will have clients in common.** I know you are good at what you do. You know I am good at what I do. **If we work at cross-purposes we may both lose some - retirement compensation is much lower; I have much less to lose - and I will just look elsewhere for those relationships.**

If you need something for one of our common clients please let me know. I'll do the same. (emphasis added).

66.     With this message, Ferguson made a not so veiled threat to his former colleagues at MMA in which Ferguson implied that his MMA colleagues should not react harshly to his misconduct because Ferguson would retaliate and attempt to convince their shared clients to terminate all ties to MMA.

67.     Thereafter, on or about February 19, 2019, on information and belief, Ferguson used MMA's Confidential Information and Trade Secrets to send yet another email message to yet another MMA client, in which he solicited that client to switch to use Teros' services and he

19

informed the client that he had "officially changed back-office resources." He also sent to this client a GoTo meeting invitation under his "colleague's name, Nate White" (a principal at Teros). When, however, this MMA client cancelled the meeting with Ferguson and alerted MMA of Ferguson's solicitation, Ferguson sent the following message to the MMA client:

> Just left you a VM.
>
> OK. Do you want to propose some dates/times for this discussion?
>
> Or did someone from MMA reach out with a changed attitude? It's ok if it is and I'm happy to answer any questions. **It's really odd b/c I had an agreement with MMA on this change since it's relatively minor. But apparently once I left MMA, someone changed their minds for some clients.** But for other clients it's no problem at all and they're already sending in signed paperwork today to facilitate the change. I'm sorry I don't have an answer for what's happening at MMA.
>
> I'd welcome the chance to discuss. And showcase new retirement plan/investment features and services available to me now which is what I'm most excited about! (emphasis added).

68.     This message demonstrates that Ferguson was so single-minded in his pursuit of MMA clients that he made false statements to the client about MMA's alleged "agreement" with Ferguson. But, not only did MMA <u>not</u> have any agreement with Ferguson regarding his solicitations of MMA clients, MMA previously directed Ferguson to cease and desist from making such solicitations as soon as his misconduct was uncovered. In any event, at this time, Ferguson was not only unlawfully using and disclosing MMA's Confidential Information and Trade Secrets to solicit this MMA client but he also was making false statements to the client about MMA which were also defamatory and disparaging of MMA.

69.     Additionally, on or about February 21, 2019, a MMA client spoke with Robb Schiemann, a Principal in MMA's Employee Health & Benefits Division, and this client informed Schiemann that Ferguson was telling MMA's clients that "**I can now lower your fees**

20

**— I wanted to in the past but MMA wouldn't let me.**" (emphasis added).  The MMA client further stated that Ferguson was telling the client that it was at "his discretion" to make this solicitation, which obviously shocked the client.

70.     Moreover, when Ferguson stated that "MMA wouldn't let" him lower the client's fees, Ferguson, in effect, unlawfully used his knowledge of MMA's confidential pricing information to solicit this client and to attempt to persuade this client to switch to Teros by offering more favorable pricing at Teros.

71.     Later, on March 7, 2019, on information and belief, Ferguson used and disclosed MMA's Confidential Information and Trade Secrets to solicit yet another MMA client to whom he sent the following email message:

> I hope this finds you well. By now you've heard the news that I have officially moved over to Teros Advisors, and probably heard that the transition didn't go exactly as planned. My apologies on behalf of all parties involved if it ended up confusing in any way. I had 15 great years there, love the people, and still have lots of common clients. And I am sorry for the delay in reaching out; there were some time requirements per regulations.
>
> But concentrating on the positives! Are you open to me presenting the new capabilities I can now bring to the table in support of you and [your] 401k plan? I'm excited because some things I struggled with previously are solved and there's just...more.
>
> *More dedicated local service help for you and participants means faster response time on service questions and requests. Before I was pretty much a one-man team. Now I have a dedicated, local person with over 20 years industry experience in addition to the larger support team.
> *Resources for your employees such as quarterly participant newsletters in English and Spanish.
> *Automatic quarterly investment reviews for you regardless if we're actually having a committee meeting or not.
> *Real economist market commentary and forward looking guidance in our investment reports that's actually useful to you.
> *More detailed fee benchmarking from top-tier sources instead of just general overall benchmarking.
> *Industry leading Financial Wellness benefit program option.

72.     Again, on information and belief, Ferguson used and disclosed MMA's Confidential Information and Trade Secrets to solicit this MMA client, and this represents yet another breach of contract (the MMA Agreement), trade secret misappropriation, unlawful interference and unfair competition.

73.     This client subsequently forwarded Ferguson's email to MMA, stating, "Just so ya know…" to give MMA a heads up regarding Ferguson's misconduct.

74.     As recently as April 16, 2019, Ferguson continues to solicit MMA clients and to make false and deceptive statements about MMA. Thus, on April 16, Ferguson sent yet another message to a MMA client as follows:

> Are you open to a capabilities presentation from me with my new team? I'd love the chance to show you why I changed my investment services to Teros RIA and all the additional things we can offer you and your people.
> *   Ability to do 3(38) fiduciary status which puts all the investment liability on me and my team instead of on your as it is under your current 3(21) arrangement.
> *   Advanced investment resources with an actual investment committee lead by a Chief Economist from the London School of Economics and multiple Chartered Financial Analysts'.
> *   Actual, real, forward looking guidance in our reports. See the attached market update section from our standard review report.
> *   Newsletter of important issues for you as plan sponsor - attached
> *   Newsletter for participants - attached; also available in Spanish
> *   Quarterly market & investment review reports even if the committee isn't meeting.
> *   Award winning financial wellness program, "Financial Elements" (Pensions&Investments Award) https://financial-elements.com/
> *   Independent of other benefits so there's no Fiduciary conflict of interest under Fiduciary Rules. (an investment Fiduciary controlled by a larger firm must do what the large firm says which could cause possible conflicts of interest.)
> *   And much more.
> I know there was some mudslinging by MMA management. I don't believe in mudslinging but will answer questions if you'd like. Of course all those accusations turned out to be not true. All that happened is I changed investment companies to get more and better resources for my clients and that made MMA upset. Oddly, it was MMA Managements idea in the first place. They had already arranged for the [client] account to be moved to another advisor without your informed consent. When I protested on the improper legalities, MMA offered the option of changing to a different firm for those clients that wanted to keep me as their advisor; which turned out to be the better option for me and many clients. I think they just didn't expect so many clients to move to the

better services. But in the end I still work with MMA on many mutual clients. I've even referred them new business in the last few weeks because I know the brokers there to be quality people. My apologies on behalf of everyone if this has been frustrating.

Again, would love the opportunity to show you all these great new resources so you can make an informed decision.
Thank you.
Rick Ferguson, AIF, CEBS

75.    Yet again, on information and belief, Ferguson used and disclosed MMA's Confidential Information and Trade Secrets to solicit this MMA client, and this illustrates yet another breach of contract (the MMA Agreement), trade secret misappropriation, unlawful interference and unfair competition.   Likewise, Ferguson continued to make false and defamatory statements about MMA, stating, among other things, "Oddly, it was MMA Managements idea in the first place. They had already arranged for the [client] account to be moved to another advisor without your informed consent," even though this statement was false and intended to cast MMA in a negative light.

76.    Finally, on information and belief, before Ferguson returned his computer to MMA, it appears that he unlawfully accessed that computer after his employment was terminated (even though he was not authorized to do so) and Ferguson appears to have unlawfully accessed and/or deleted, destroyed and/or altered MMA Confidential Information and Trade Secrets on the computer (which has required MMA to expend significant amounts to recover such information).

77.    Upon information and belief, Ferguson will continue to breach the MMA Agreement and his common law and statutory duties unless and until injunctive relief is granted.

***MMA's Efforts to Abate Ferguson's Breaches***

78.    On or about February 19, 2019, MMA's outside counsel, Douglas A. Wickham, sent a cease and desist letter to Ferguson via email and U.S. mail. This letter advised Ferguson

23

that he was in breach of his post-employment obligations and that MMA would not hesitate to pursue any and all legal remedies necessary to enforce such obligations. This cease and desist letter also enclosed copies of the B & B Agreement and the MMA Agreement. Moreover, Nate White, Founder and President of Teros, was copied on the cease and desist letter; thus, Teros was put on notice of Ferguson's misconduct and his breach of his contractual and statutory and common law duties.

      79.     Specifically, in the February 19 cease and desist letter, MMA's outside counsel wrote to Ferguson as follows:

> Notwithstanding these contractual duties and obligations, the Company has obtained information indicating that you breached your contractual and common law obligations by, among other things, using and disclosing the Company's confidential information and/or trade secrets both during your employment and thereafter to solicit MMA's clients and to actively encourage such clients to terminate their relationship with MMA and to retain your new employer, Teros Advisors. You also accessed and used the Company's confidential information and trade secrets using your Company laptop and the Company's computer systems to carry out this misconduct for your person gain and/or for the benefit of your new employer. Furthermore, you failed to return/wrongly retained MMA's confidential information and trade secrets and its property and equipment (including the laptop computer and cell phone issued to you).

> You also misrepresented to MMA's clients that your move to Teros Advisors would be an "administrative change with a couple forms to sign" and that you would continue to work with MMA to "support our common clients" in an apparent effort to make it appear that MMA sanctioned or otherwise authorized your misconduct and/or that no real change would be required as a result of your departure from MMA. It also appears that you booked air travel to Canada that was paid for by MMA to meet with an MMA client in order to solicit them on behalf of Teros Advisors. You also may have engaged in other acts and omissions which violate FINRA regulations and/or state and/or federal law. You even represented to a client that MMA agreed to or authorized your misconduct here. To be clear, however, MMA has not authorized you to engage in this misconduct nor has MMA agreed to allow you to engage in this misconduct.

> In sum, you have engaged in multiple, flagrant violations of your legal duties and obligations and agreements, which also give rise to actual or potential violations of state and federal law.  While the Company hopes to avoid litigation, MMA will take appropriate action if required to protect its legal interests and to recover damages proximately caused by your misconduct.

80.     On or about February 21, 2019, Ferguson acknowledged receipt of the cease and desist letter via email but he did not take steps to ensure that he was honoring his obligations to MMA, and he did not otherwise confirm that Teros would take steps to ensure Ferguson's compliance with his obligations to MMA.

81.     Later that day, Mara Crain, a Human Resources Business Partner at MMA, reached out to Ferguson to schedule the return of the MMA equipment in Ferguson's possession, including the Company laptop, the Company-provided iPhone, office key card, and keys to Ferguson's desk (collectively, the "MMA Equipment").

82.     After receiving no response from Ferguson, Crain followed up with Ferguson again on February 22, 2019.

83.     That afternoon, Ferguson responded by stating that he would only return the MMA Equipment if MMA provided "binding proof" that "all contents of the computer and phone will be imaged for permanent non-alterable storage for future reference" and that MMA paid him his final paycheck, "service bonus for 2018," and a "new business bonus for 2018."

84.     On or about February 25, 2019, Crain replied to Ferguson's message, stating that MMA would discuss with Ferguson the other matters mentioned in his February 22 email message but, for the time being, he must immediately return the MMA Equipment.

85.     Later that afternoon on February 25, Ferguson finally returned the MMA Equipment to MMA's San Francisco office.  In this regard, even though Calder directed Ferguson on February 14 to schedule an appointment to return the MMA Equipment to MMA,

after Ferguson resigned on February 15, he unlawfully retained and took with him MMA's Equipment (which contained MMA's Confidential Information and Trade Secrets) and he kept the MMA Equipment for ten days after his resignation.

86.     In the meantime, Ferguson did not respond to MMA's cease and desist letter until on or about March 1, 2019, when MMA's outside counsel received a letter from  Jamie Dupree of the law firm Futterman Dupree Dodd Croley Maier LLP, which stated that Dupree was "in the process of being retained" by Ferguson.

87.     On or about March 7, 2019, counsel for MMA did not hear anything further from Ferguson's counsel, so MMA counsel sent an email message to Ferguson's counsel, requesting that Ferguson's counsel inform MMA whether she had "been formally retained by Mr. Ferguson and/or Teros Advisors and, if so, when [MMA] should expect to receive a substantive response to the February 19, 2019 letter addressed to Mr. Ferguson."

88.     Later that afternoon on March 7, Ferguson's counsel responded by stating that she had been retained by Ferguson and would respond "substantively" the following week.

89.     On or about March 8, 2019, MMA's counsel explained to Ferguson's counsel in an email message "that Mr. Ferguson continues to retain/possess MMA's Confidential Information and Trade Secrets and he continues to engage in the misconduct described in [the] February 19, 2019 [cease and desist] letter," and MMA's counsel urged Ferguson's counsel to promptly address those issues with Ferguson.

90.     On or about March 13, 2019, MMA's counsel received a letter from Ferguson's counsel, which largely ignored the substance of MMA's cease and desist letter and instead alleged that Ferguson is owed "approximately $30,000" for his "2018 service bonus" and "approximately $95,000" for his "sales referral bonus."

91.    Further, without offering any supporting evidence, Ferguson's counsel asserted other baseless allegations which are irrelevant to MMA's claims regarding Ferguson's misconduct.

92.    On or about April 2, 2019, MMA's counsel sent another letter to Ferguson's counsel, demanding that Ferguson cooperate with MMA by April 8, 2019 at 5 p.m., in connection with ceasing and desisting from engaging in all improper conduct, making his personal and work equipment available for inspection and forensic review, and complying with his contractual obligations set forth in the MMA Agreement.

93.    Ferguson and/or Ferguson's counsel failed to substantively respond to MMA's April 2 letter until April 8 at which time Ferguson's counsel once again ignored her client's disloyal misconduct (including his solicitation of MMA clients on behalf of Teros *while still employed by MMA*, his misrepresentations made to MMA clients, and his misappropriation of MMA's Confidential Information and Trade Secrets) and she refused to agree that Ferguson would cease his misbehavior.

94.    Accordingly, although MMA originally wished to secure Ferguson's compliance with his post-employment duties and obligations voluntarily, now that both he and his counsel refuse to even recognize his misconduct (let alone correct it), MMA is now left with no choice but to bring the instant action to enforce the contractual promises of Ferguson to protect its customers, goodwill, and confidential information, and to prevent irreparable injury to its business interests.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

95.    MMA repeats and realleges each and every allegation contained in Paragraphs 1 through 94 of the Complaint as if fully set forth herein.

96.     The MMA Agreement signed by Ferguson is valid and enforceable.

97.     Under the MMA Agreement, Ferguson is prohibited from directly or indirectly using, disseminating or disclosing MMA's Confidential Information and Trade Secrets, except as required to carry out his duties as an employee of MMA, or as expressly authorized by the President or highest officer of the Company.

98.     Upon information and belief, Ferguson has used or disclosed, or threatens to use or disclose, MMA's Confidential Information and Trade Secrets, in violation of his MMA Agreement.

99.     Further, under the MMA Agreement, Ferguson is prohibited for a period of 24 months following his separation (i.e. through February 14, 2021) from directly or indirectly using MMA's Confidential Information and Trade Secrets regarding MMA, its clients, and its prospective clients to: (i) solicit MMA clients with whom Ferguson had contact in the last two years of his employment for the purpose of selling or providing products or services of the type Ferguson sold or provided while employed by MMA; (ii) induce MMA clients or prospective clients with whom Ferguson had contact during the last two years of their employment to terminate, cancel, not renew, or not place business with MMA; and (iii) perform or supervise the performance of services or provision of products to MMA clients with whom Ferguson had contact, or about whom Ferguson obtained confidential information, during the last two years of Ferguson's employment.

100.    Ferguson breached the MMA Agreement by using and disclosing MMA's Confidential Information and Trade Secrets regarding MMA, its clients, and its prospective clients to solicit, service, and/or otherwise interfere with MMA's relationships with its clients.

101.    Ferguson further breached the MMA Agreement by, among other things, (a) retaining and sending to his Teros email account MMA's Confidential Information and Trade

Secrets, (b) using and disclosing MMA's Confidential Information and Trade Secrets in order to solicit MMA clients, (c) using MMA's property and equipment in order to solicit MMA clients, (d) retaining MMA's property and equipment and Confidential Information and Trade Secrets after his MMA employment ended, and (e) engaging in much of this misconduct when he was still was employed by MMA.

102.    MMA fully performed its obligations under the MMA Agreement.

103.    As direct and proximate result of Ferguson's breaches of the MMA Agreement, MMA has suffered and will continue to suffer irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.  MMA will continue to suffer this harm unless and until Ferguson is restrained from his current conduct and is compelled to abide by the terms of the MMA Agreement.

104.    As a direct and proximate result of Ferguson's breaches of the MMA Agreement, MMA has suffered and will continue to suffer additional damages, including liquidated damages as provided in the MMA Agreement, which continue to accrue as well as attorneys' fees and costs and expert witness fees related Ferguson's misconduct and this litigation.

## SECOND CLAIM FOR RELIEF
### (Breach of Duty of Loyalty)

105.    MMA realleges and incorporates by reference each of the allegations in Paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.    At all relevant times herein mentioned, Ferguson, by virtue of his employment with MMA, owed MMA a duty of loyalty.  That duty included, but was not limited to, a requirement that, during his employment with MMA, Ferguson avoid all conflicts of interest in his business relationships and that he, among other things, not encourage MMA clients to terminate their engagements and relationships with MMA, not misappropriate or otherwise steal

29

MMA's property, including MMA's Confidential Information and Trade Secrets, and not make false, misleading and/or deceptive statements to MMA clients about MMA.

107.     Ferguson willfully and intentionally breached his duty of loyalty to MMA by engaging in the conduct herein alleged.

108.     As a direct and proximate result of Ferguson's breaches of his duties of loyalty through the wrongful misappropriation and use of MMA's Confidential Information and Trade Secrets, the wrongful solicitation of MMA clients while still employed by MMA, the false and deceptive statements made to MMA clients, and the unlawful interference with MMA's contractual and prospective economic relationships, MMA has suffered and will continue to suffer irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. MMA will continue to suffer this harm unless and until Ferguson is restrained from taking further actions in breach of their fiduciary duties to MMA.

109.     As a direct and proximate result of Ferguson's breaches of his duties of loyalty, MMA has suffered and will continue to suffer additional damages, which continue to accrue in the form of attorneys' fees and costs and expert witness fees and costs related to this litigation and/or Ferguson's misconduct, and lost business in an amount to be proven at trial.

110.     Ferguson committed his actions knowingly, willfully, and in conscious disregard of MMA's rights. Accordingly, MMA is entitled to recover actual and exemplary damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Tortious Interference with Existing and Prospective Business Relationships)

111.     MMA repeats and realleges each and every allegation contained in Paragraphs 1 through 110 of the Complaint as if fully set forth herein.

112.   As a result of his employment with MMA, Ferguson was intimately familiar with, and had detailed knowledge concerning, the business relationships that existed between MMA and certain clients.

113.   Upon information and belief, Ferguson utilized MMA's Confidential Information and Trade Secrets and he made false, misleading and/or deceptive statements to MMA clients in order to unlawfully solicit MMA's clients and to interfere with MMA's contractual and other prospective economic relationships with MMA's clients, and Ferguson was motivated by a desire to obtain an unfair advantage in its competition with MMA, and to damage or injure MMA's business, goodwill, reputation, or standing in the marketplace.

114.   Ferguson intentionally, with malice, and without privilege or justification, interfered with MMA's contractual and prospective economic relationships with MMA clients using unfair or improper means, and/or with the intent to interfere with such relationships and he actually interfered with and disrupted MMA's contractual and other prospective economic relationships with one or more clients.

115.   MMA possesses a protectable interest in its contracts and relations with its clients, in that it has a reasonable expectation of their continued association with MMA.

116.   Ferguson's conduct was undertaken with malice, or in knowing disregard of or indifference to, the rights and interests of MMA.

117.   As a direct and proximate result of Ferguson's interference, MMA suffered and will continue to suffer irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.

118.   MMA will suffer this harm unless and until Ferguson is restrained from his respective current and intended conduct.

119.    As a direct and proximate result of Ferguson's interference, jointly and severally, MMA suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs and expert witness fees and costs related to his misconduct and this litigation, and lost business in an amount to be proven at trial.

120.    Ferguson also committed these actions knowingly, willfully, and in conscious disregard of MMA's rights. Accordingly, MMA is entitled to recover actual and exemplary and punitive damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Unfair Competition)

121.    MMA repeats and realleges each and every allegation contained in Paragraphs 1 through 120 of the Complaint as if fully set forth herein.

122.    Ferguson engaged in unfair methods of competition in that he has unlawfully seized, appropriated, and used unfair advantages in his competition with MMA from Ferguson's breach of his MMA Agreement; Ferguson's breach of his fiduciary duty and duty of loyalty, and Ferguson's interference with MMA's business, advantages, and prospective economic relations and contracts, all of which are more fully set forth above.

123.    The aforementioned conduct has resulted in the pirating of MMA's Confidential Information and Trade Secrets.

124.    Ferguson was and is driven by unlawful predatory motives and malice, or acted in knowing or reckless disregard of the rights and interests possessed by MMA in its attempts to obtain an unfair advantage over MMA and to damage or injure MMA in the industries within which Ferguson competes with MMA.

125.    As a direct and proximate result of Ferguson's conduct, MMA has been damaged in that, by way of illustration and without limitation: (a) the name, reputation and goodwill of

32

MMA has been damaged; (b) a direct competitor, Teros, has secured MMA's Confidential Information and Trade Secrets; (c) MMA has lost business, in an amount unable to be ascertained at this time; and (d) the damages suffered by MMA is expected to continue and multiply by reason of ongoing breaches by Ferguson.

126.    As a direct and proximate result of Ferguson's conduct, MMA has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to their business, and other injury and damages for which there is no adequate remedy at law.

127.    MMA will suffer this harm unless and until Ferguson is restrained from their current and intended conduct.

128.    As a direct and proximate result of Ferguson's unlawful competition, MMA has suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs and expert witness fees and costs related to his misconduct and this litigation, and lost business in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**(Statutory Unfair Competition and Unfair Business Practices in Violation of California Business and Professions Code Section 17200 et seq.)**

129.    MMA repeats and realleges each and every allegation contained in Paragraphs 1 through 128 of the Complaint as if fully set forth herein.

130.    By virtue of the misconduct described herein, Ferguson has engaged in unlawful, unfair, and/or fraudulent business acts and practices in violation of California Business and Professions Code Sections 17200 *et seq.* and under the common law.

131.    As a proximate result of such unlawful, unfair, and/or fraudulent business acts and practices, MMA has suffered actual damages, and Ferguson has enjoyed unlawful profits, in a sum not yet fully ascertained but well in excess of the jurisdictional limits of this Court.

132.　　MMA seeks the remedy of disgorgement and restitution for illicit profits obtained by Ferguson from his misappropriation of MMA's Confidential Information and Trade Secrets and his other unlawful, unfair, and/or fraudulent business acts and practices.

133.　　Pursuant to California Business and Professions Code Section 17200 *et seq.*, MMA also seeks permanent injunctive relief to enjoin and restrain Ferguson's unlawful conduct. Ferguson's unfair business practices and his wrongful misappropriation and use of MMA's Confidential Information and Trade Secrets will, unless and until enjoined and restrained by order of this Court, cause great and irreparable injury to MMA's business by destroying the confidential and proprietary nature of MMA's Confidential Information and Trade Secrets and making this information available to MMA's competitors including, without limitation, Teros.

134.　　Injunctive relief is also appropriate to avoid the necessity of a multiplicity of legal proceedings (with the attendant substantial costs thereof) to restrain Ferguson from further unlawful conduct for which MMA has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### (Misappropriation of Confidential Information)

135.　　MMA repeats and realleges each and every allegation contained in Paragraphs 1 through 134 of the Complaint as if fully set forth herein.

136.　　As an employee of MMA, Ferguson learned or had access to MMA's Confidential Information and Trade Secrets.

137.　　Upon information and belief, Ferguson has used or disclosed, or threatens to use or disclose, MMA's Confidential Information and Trade Secrets.

138.　　Upon information and belief, Teros induced, procured and/or assisted Ferguson in the misuse, misappropriation and disclosure of MMA's Confidential Information and Trade Secrets.

34

139.     Ferguson is presently misappropriating MMA's Confidential Information and Trade Secrets, and using such information to the detriment of MMA.

140.     As a direct and proximate result of Ferguson's conduct, MMA has suffered and will continue to suffer extensive irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.  MMA will suffer this harm unless and until Ferguson is restrained from their current and intended conduct.

141.     As a direct and proximate result of Ferguson's conduct, MMA has suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

142.     Ferguson also committed these actions knowingly, willfully, and in conscious disregard of MMA's rights. Accordingly, MMA is entitled to recover actual and exemplary and punitive damages in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
**(Violation of California Labor Code Sections 2860 and 2862)**

143.     MMA re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 142 as set forth above.

144.     Ferguson engaged in the conduct referred to hereinabove and hereinafter, during and after the terms of his employment with MMA.

145.     The conduct engaged in by Ferguson, as described hereinabove and hereinafter, was unlawful and constitutes a violation of California Labor Code sections 2860 and 2862, which prohibit an employee from acquiring and refusing to return, upon demand by his employer, those things which belong to his employer.

146.     As a direct, foreseeable, and proximate result of Ferguson's violations of Labor Code sections 2860 and 2862, MMA has suffered damages in excess of the minimum

jurisdictional amount of this Court, the exact amount to be proven at trial. Unless enjoined by this Court, Ferguson will continue to retain, and refuse to return confidential information belonging to MMA.

147.    As a direct and proximate result of Ferguson's unlawful conduct, MMA suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

148.    Ferguson also committed these actions knowingly, willfully, and in conscious disregard of MMA's rights. Accordingly, MMA is entitled to recover actual and exemplary and punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### (Violation of California Penal Code Section 502)

149.    MMA re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 148, as set forth above.

150.    By virtue of California Penal Code section 502, Ferguson had a duty to, among other things, refrain from knowingly accessing and without permission reviewing, disclosing, copying, altering, damaging, deleting, destroying, or otherwise using or causing to be used any data, computer, computer system, and/or computer services developed, owned, and/or leased by MMA.

151.    MMA is informed and believes and on that basis alleges that Ferguson breached this duty by knowingly accessing, using or causing to be used, and/or copying MMA's computer data, computers, computer system, computer software, supporting documentation and files and has, therefore, violated California Penal Code Section 502, and this required MMA to expend significant time and financial resources to recover any data or information that Ferguson deleted or destroyed.

152.    As a proximate result of Ferguson's knowing violation of Penal Code Section 502, MMA has sustained and will continue to sustain damages, including forensic expert witness fees and costs, in an amount to be determined at trial and, on information and belief, said damages are in excess of the jurisdictional minimum of this Court.

153.    As a direct and proximate result of Ferguson's unlawful conduct, MMA suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs and expert witness fees and costs related to his misconduct and this litigation, and other damages in an amount to be proven at trial.

154.    Ferguson also committed these actions knowingly, willfully, and in conscious disregard of MMA's rights. Accordingly, MMA is entitled to recover actual and exemplary and punitive damages in an amount to be determined at trial.

### NINTH CLAIM FOR RELIEF
#### Defamation

155.    MMA re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 154, as set forth above.

156.    Ferguson, both verbally and in writing, have published false, misleading and deceptive statements to third parties about, among other things, MMA's supposed agreement to permit Ferguson to solicit business from or perform services for MMA clients on behalf of Teros and his statements about MMA pricing.

157.    The misrepresentations cast MMA in a negative light and are false and thus are defamatory, giving rise to this defamation claim.

158.    At the time such statements were published, Ferguson knew that such statements were false, and he maliciously made the statements to third parties anyway.

159.    Ferguson was not privileged to make false statements about MMA.

160.   As a proximate result of Ferguson's defamatory statements about MMA, MMA has sustained and will continue to sustain damages in an amount to be determined at trial and, on information and belief, said damages are substantial and in excess of the jurisdictional minimum of this Court.

161.   As a direct and proximate result of Ferguson's unlawful conduct, MMA suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proven at trial.

162.   Ferguson also committed these actions knowingly, willfully, and in conscious disregard of MMA's rights. Accordingly, MMA is entitled to recover actual and exemplary and punitive damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF
### (Violation of Uniform Trade Secrets Act, Civil Code 3246-3246.10)

163.   MMA repeats and realleges each and every allegation contained in Paragraphs 1 through 162 of the Complaint as if fully set forth herein.

164.   Ferguson's conduct as alleged herein constitutes a misappropriation of MMA's Confidential Information and Trade Secrets as defined in California Civil Code section 3426.1(d).

165.   In this regard, MMA's Confidential Information and Trade Secrets includes MMA's confidential customer information, including its confidential compilation of contact information for key decision makers/stakeholders at MMA clients, and that information is and has been electronically and/or magnetically stored on or in MMA's secure network applications and/or laptop computers hard drives in databases and applications.  This information, including the compilation of this information, is not publicly known or readily ascertainable and it is not even available to MMA employees without a valid MMA equipment, account, and password.

166.   MMA's Confidential Information and Trade Secrets derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.   Specifically, MMA's Confidential Information and Trade Secrets are (a) valuable because such information is confidential, it has not been publicly disclosed by MMA and is not publicly available or readily available in the industry, (b) the product of substantial time and investment in, among other things, sales and marketing activities, and (c) subject to efforts that reasonable to maintain the secrecy of such information (including, among other things, the fact that MMA employees are required to sign confidentiality agreements, MMA computers, computer systems and cellular telephones are password protected and subject to other security protocols, and access to MMA's offices is restricted by appropriate security protocols to prevent unauthorized access).

167.   MMA is informed and believes, and thereon alleges that Ferguson has disclosed or used its Confidential Information and Trade Secrets without MMA's express or implied consent.

168.   Ferguson knew or had reason to know that his knowledge of MMA's Confidential Information and Trade Secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

169.   As a proximate result of such misappropriation, MMA has suffered actual damages in a sum not yet fully ascertained but well in excess of the jurisdictional limits of this Court.

170.   Ferguson's actions were willful and malicious and undertaken in knowing disregard of his obligation to preserve the confidential and proprietary nature of MMA's Confidential Information and Trade Secrets.   Ferguson's conduct was undertaken with the deliberate intent to usurp MMA's Confidential Information and Trade Secrets for his or Teros'

own use, and thereby save him or Teros the substantial time and financial investment that is required to develop this Confidential Information and Trade Secrets. Ferguson's actions constitute despicable conduct for which individual awards of punitive damages in an amount to be determined at trial is necessary and appropriate to punish and deter Ferguson's misconduct.

171.    MMA also seeks permanent injunctive relief to enjoin and restrain Ferguson's unlawful conduct.  Ferguson's wrongful misappropriation and use of MMA's Confidential Information and Trade Secrets will, unless and until enjoined and restrained by order of this Court, cause great and irreparable injury to MMA's business by destroying the confidential and proprietary nature of MMA's trade secrets and making that information available to MMA's competitors including, but not limited to, Teros.

172.    Injunctive relief is also appropriate to avoid a multiplicity of legal proceedings to restrain Ferguson from further unlawful conduct for which MMA has no adequate remedy at law.

173.    As a direct and proximate result of Ferguson's unlawful conduct, MMA suffered and will continue to suffer damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and other damages including lost profits and/or Ferguson's unjust enrichment in an amount to be proven at trial.

174.    Ferguson also committed these actions knowingly, willfully, and in conscious disregard of MMA's rights. Accordingly, MMA is entitled to recover actual and exemplary and punitive damages in an amount to be determined at trial.

**WHEREFORE**, MMA respectfully requests that judgment be made and entered against Ferguson and in favor of MMA, as follows:

(a) Enjoining and restraining Ferguson, and any person or entity acting in concert with them or under his supervision, through February 15, 2021, and as extended during any period

that Ferguson has breached his obligations to MMA, from, soliciting or servicing, or inducing not to place business with MMA, any clients of MMA with whom Ferguson had contact, or about whom Ferguson obtained Confidential Information and Trade Secrets, or for whom Ferguson was responsible for making (or assisting or supervising the making of) sales to, or performing or providing (or assisting or supervising the performance or provision of) services or products on behalf of, MMA, during the last two years of his employment;

(b) Enjoining and restraining Ferguson, and any person or entity acting in concert with them or under his supervision, from possessing, using, disclosing or disseminating MMA's Confidential Information and Trade Secrets;

(c) Enjoining Ferguson, and any person or entity acting in concert with them or under his supervision, from any other actions in violation of Ferguson's contractual obligations or fiduciary duties owed to MMA;

(d) Awarding compensatory damages and interest to MMA, including expert consulting fees, in an amount to be determined at trial;

(e) Awarding liquidated damages as a result of Fergusons' breach of the MMA Agreement;

(f) Awarding exemplary and punitive damages;

(g) Awarding all damages and other remedies available under the Uniform Trade Secrets Act;

(h) Awarding prejudgment interest and costs of suit herein; and

//

//

//

//

41

(i) Granting MMA its costs and disbursements incurred in connection with this litigation, including attorneys' fees, together with such other further relief as the Court may deem just and proper.

Dated: April 29, 2019
      New York, New York

_____

A. Michael Weber
Kevin K. Yam
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
(212) 583-9600
MWeber@littler.com
KYam@littler.com

*Attorneys for Plaintiff*
*MARSH & MCLENNAN AGENCY LLC*