UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARSH & MCLENNAN AGENCY LLC,

    Plaintiff,

-against-

ELMER "RICK" FERGUSON,

    Defendant.

Case No.: 19-cv-03837-VSB

**SECOND SUPPLEMENTAL DECLARATION OF MARA CRAIN**

---

**MARA CRAIN**, declares pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury that the following is true and correct:

1. Except where otherwise stated, I make this declaration based on my personal knowledge and/or based on MMA's books and records.

2. I am a Human Resources Business Partner at Marsh & McLennan Agency LLC ("MMA"), and I began my employment with Marsh & McLennan around December of 2016.

3. I submit this declaration in support of MMA's Motion for a Preliminary Injunction against Elmer "Rick" Ferguson.

4. Around August of 2018, Ferguson sent a number of accusatory emails to MMA employees, accusing MMA of "lying" to him, "stealing" his business, and "discriminating" against him by reimbursing his expenses too slowly.

5. On September 11, 2018, at 2 p.m., I held a meeting with Jeff Calder, Chris Williams, at the time, Managing Director, Principal – Bay Area, myself, Ferguson, Hal Dunning, at the time, President and COO – MMA West Region and Bill Peartree, Director of the Retirement Services Division of Marsh & McLennan Agency, the latter three attending by phone. The purpose of the meeting was to address Ferguson's workplace concerns and to clarify his role. In that

meeting, Calder informed Ferguson that his reactionary language and behavior was inappropriate. A true and correct copy of my typewritten notes from that meeting are attached hereto as Exhibit A.

6. In that September 11, 2018 meeting, Ferguson was offered an increase in salary. from $110,000 per year to $125,000, a 25% bonus for new business referrals, and a separate 12% bonus plan.

7. Ferguson accepted the salary increase that MMA offered him and signed a change form representing the salary increase and that there was no change in his role. A true and correct copy of the compensation change form is attached hereto as Exhibit B.

8. On December 5, 2018, Ferguson began an innocuous email chain asking Phillip Cloos (Manager, Centralized Operations & Finance Team), about whether a report had been sent out. Cloos replied that he was instructed to send the report only to Peartree and Ryan Stover, (Principal/Producer for Employee Health & Benefits), and that Ferguson should ask them for the report. Ferguon's reply accused Cloos, and MMA employees Kim Blackmore (Director, Financial Reporting), Peartree, and Jake Daly (Sr. Client Manager, Retirement Services), of "collud[ing]" and "l[ying]" to Ferguson and "his" clients to "steal his book of business," and claimed Daly and Blackmore had admitted to lying about "many things." A true and correct copy of the email chain, as Peartree forwarded to me, is annexed hereto as Exhibit C.

9. After learning about this email, I began working with Debbie Chelberg, Director of Human Resources, on a formal written warning to be delivered to Ferguson that addressed the manner in which he communicated his concerns to individuals within MMA.

10. Four days later, on December 10, 2018, Peartree informed Calder, Dunning, Williams, and Chelberg that Daly had decided to leave MMA in part because of Ferguson's

2

behavior, which had been aggressive and accusatory. A true and correct copy the email, which Chelberg forwarded to me, is attached hereto as Exhibit D.

11. On December 17, 2018, Calder emailed Rick Ferguson to request a 30-minute meeting on that Thursday, December 20, 2018. A true and correct copy of the email that Calder sent to Ferguson to set up the meeting is annexed hereto as Exhibit E.

12. Thereafter, also on December 19, 2018, Peartree informed me and Calder that Ferguson had emailed the Bay Area clients to announce Daly's departure from the firm, and copied his personal email address on the communication. Calder replied that the announcement "is very unusual" and he "surmise[d]" that Ferguson intended to separate from MMA and retain the contacts by copying his personal address. A true and correct copy of this email exchange is annexed hereto as Exhibit F.

13. On or about December 20, 2018, I participated in a meeting with Ferguson, Calder, and Peartree. During the first half of the meeting, we addressed some of Ferguson's concerns about his compensation and the transition of Jeff Stephens into the role of fiduciary. During the meeting, no one told Ferguson to fire clients or to recommend that clients end their relationship with MMA. In fact, to the contrary, we discussed at the meeting the fact that Peartree may step in to manage the clients who did not want to work with Stephens.

14. During the second half of the meeting, in which Peartree did not participate, Calder and I discussed Ferguson's performance and delivered to him a final written warning, which Ferguson refused to sign. A true and correct copy of that warning is attached as Exhibit G.

15. I took handwritten notes at that December 20, 2018 meeting. A true and correct copy of my handwritten notes is annexed hereto as Exhibit H.

Dated: December 20, 2019
San Francisco California

_____
Mara Crain

4