*Hofstra Law Review, Vol. 38, Iss. 2 [2009], Art. 11*

the subject matter involved in the action,'" falls within the ambit of the duty to preserve.[112] *Zubulake* held that the duty to preserve "extends to those employees likely to have relevant information—the 'key players' in the case."[113]

Once the duty to preserve attaches, *Zubulake* requires that "[a] party . . . must retain all relevant documents (but not multiple identical copies) in existence at the time the duty to preserve attaches, and any relevant documents created thereafter," and, as a general rule, the preservation obligation does not apply to inaccessible backup tapes, except in cases where "a company can identify where particular employee documents are stored on backup tapes."[114] Then, the tapes storing the documents of the "key players" to the existing litigation should be preserved if the information is not otherwise available.[115] Despite the recognition of *Zubulake*'s importance to e-discovery, in actuality, the decision does little in the way of offering bright-line standards, or even significant guidance, on the duty to preserve.[116]

### D. *Something to be Desired: E-Discovery in the Post-*Zubulake *Era*

Following the *Zubulake* decision, there was hope throughout the federal court system that parties and judges alike would have a clearer understanding of their responsibilities relating to document preservation in relation to ESI.[117] After *Zubulake*, courts began to recognize and impose a heightened duty on parties to preserve electronic evidence.[118] Under this duty, once a dispute reaches the point where litigation is reasonably anticipated, a party must put in place a "litigation hold"[119] and suspend any routine document purging system to ensure document preservation.[120]

Despite the attempt by the *Zubulake* court to clarify a party's duty to preserve, inconsistent decisions in its wake dashed the hope for

---

112.  *Id.* (quoting FED. R. CIV. P. 26(b)(1)).

113.  *Id.*

114.  *Id.*

115.  *Id.*

116.  *Cf.* Crist, *supra* note 29, at 18 (noting that there was disagreement among courts as to when the duty to preserve attaches in the wake of *Zubulake*).

117.  *See* Sharon D. Nelson & John W. Simek, *Spoliation of Electronic Evidence: This Way Be Dragons*, 68 TEX. B.J. 478, 478 (2005).

118.  *Id.* at 479.

119.  A "litigation hold" is a duty placed upon organizations to suspend any document deletion polices in order to preserve potentially relevant evidence. *Zubulake*, 220 F.R.D. at 218.

120.  Rambus, Inc. v. Infineon Techs. AG, 222 F.R.D. 280, 295, 298 (E.D. Va. 2004) (holding that a litigation hold should have been in place before the commencement of litigation because the litigation was reasonably anticipated).

uniformity in the federal courts.[121] What proved most problematic in the post-*Zubulake* era was the rule that an obligation to preserve is triggered at the moment when a party begins to "consider the possibility of litigation," which imposes too onerous a burden on corporate defendants in light of the "constant threat of litigation facing corporate America."[122]

Thus, while the *Zubulake* decision seems to alleviate e-discovery problems, the realities of electronic information storage, coupled with a nearly perpetual threat of litigation faced by corporate defendants, make its application infeasible in practice.[123] Strict application of the *Zubulake* principles would require that nearly every shred of electronic data be saved, as corporate defendants face the reality that potential plaintiffs' attorneys are on a seemingly constant mission to litigate.[124] Viewed through the lens of *Zubulake*, this essentially requires that potential defendants place a perpetual litigation hold on document production and retention.[125] Although a litigation hold appears reasonable in the abstract, or when considered on a case-by-case basis, such a preservation obligation is overly burdensome in practice.[126]

In its wake, the standard set by *Zubulake* has resulted in a heavily plaintiff-friendly approach to document retention, especially considering that corporate defendants have a "seemingly limitless obligation" to retain documents when there is even the slightest possibility of litigation in the future.[127] *Zubulake*, then, rather than providing the clarity and uniformity that many had initially hoped it would,[128] largely seemed to result in a "'litigation hold' for some corporate defendants in perpetuity."[129]

Consequently, courts in the wake of *Zubulake* did not apply the duty to preserve and implement litigation holds in a uniform manner. In

---

121. *Compare* E*TRADE Sec. LLC v. Deutsche Bank AG, 230 F.R.D. 582, 588 (D. Minn. 2005) (holding that the duty to preserve attached prior to the commencement of litigation because of the evidence's relevance to the subject matter of the future litigation), *with* Treppel v. Biovail Corp., 233 F.R.D. 363, 371 (S.D.N.Y. 2006) (holding that a party's preservation obligations attached when the party became aware of the *filing of the complaint*, because the mere existence of dispute between the parties was not sufficient to impose reasonable anticipation of litigation on the parties).

122. Nelson & Rosenberg, *supra* note 19, at 29.

123. *Id.* at 28.

124. *Id.* at 31.

125. *Id.*

126. *See, e.g.*, Andrew Hebl, *Spoliation of Electronically Stored Information, Good Faith, and Rule 37(e)*, 29 N. ILL. U. L. REV. 79, 92 (2008) ("[P]arties cannot be expected to preserve every relevant electronic document after a preservation obligation arises. Because of the nature of electronically stored information, [it] . . . places too great a burden on the parties.").

127. *See* Nelson & Rosenberg, *supra* note 19, at 32.

128. *See* Nelson & Simek, *supra* note 117, at 479 ("Will *Zubulake*'s clear reasoning and explicit standards be heeded? Commentators . . . believe it will.").

129. Nelson & Rosenberg, *supra* note 19, at 31.

*Hofstra Law Review, Vol. 38, Iss. 2 [2009], Art. 11*

some instances, courts followed the standard set by *Zubulake*.[130] One such example is *Broccoli v. Echostar Communications Corp.*,[131] where the court held that the defendant's duty to preserve was triggered when the plaintiff employee first began to complain about sexual harassment by his supervisor, which was eleven months before the plaintiff was fired and fourteen months before a complaint was filed.[132]

Other courts, such as the court in *Treppel v. Biovail Corp.*,[133] recognized the severity of the *Zubulake* standard on corporate defendants and were unwilling to impose quite as heavy a burden.[134] These courts took a more narrow approach to the application of the duty to preserve, and the court in *Treppel* held that a mere dispute between the parties was insufficient to trigger the duty to preserve, as it did not create grounds for the reasonable anticipation of litigation.[135] Instead, the court held that the duty to preserve did not attach until the defendant became aware of the filing of a formal complaint.[136]

When attempting to impose sanctions for the seemingly inadvertent destruction of potential evidence resulting from adherence to corporate document retention policies, it is necessary for courts to strike a balance between the policies behind the *Zubulake* standard, favoring the wide availability of potential evidence, with the realities of the burdens that such a standard imposes on defendants, especially in the corporate context.[137] In *E\*TRADE Securities LLC v. Deutsche Bank AG*,[138] the United States District Court for the District of Minnesota held that sanctions may be imposed for the destruction of potential evidence that occurred before litigation commenced when that destruction is the result of bad faith.[139] However, the court noted that, absent the destruction of relevant paper documents by a corporate defendant, mere failure to institute a "litigation hold" in and of itself does not suffice to constitute

---

130.  *See, e.g.*, Danis v. USN Commc'ns, Inc., 53 Fed. R. Serv. 3d (West) 828, 834-35 (N.D. Ill. 2000) (imposing sanctions for spoliation on a party for failure to implement a suitable document preservation program; even though the party took affirmative steps to preserve relevant evidence, those steps were inadequate, thus warranting sanctions and serving as a strict application of the duty to preserve relevant evidence).

131.  229 F.R.D. 506 (D. Md. 2005).

132.  *Id.* at 511.

133.  233 F.R.D. 363 (S.D.N.Y. 2006).

134.  *See id.* at 371.

135.  *Id.*

136.  *Id.*

137.  *See* Crist, *supra* note 29, at 35-36; Nelson & Rosenberg, *supra* note 19, at 31.

138.  230 F.R.D. 582 (D. Minn. 2005).

139.  *Id.* at 588.

Wright: Federal Rule of Civil Procedure 37(e): Spoiling the Spoliation Do

2009]                   *SPOILING THE SPOLIATION DOCTRINE*                   811

bad faith.[140] This decision is an example of a court attempting to strike a balance between *Zubulake*'s countervailing policies.[141]

In *E*TRADE Securities*, the court held that sanctions for spoliation are appropriate when a party acted in bad faith, a finding of which can be based on a party's behavior with regard to its corporate document retention policy.[142] To determine bad faith, the court considered the reasonableness of that policy "considering the facts and circumstances surrounding those documents, . . . whether lawsuits or complaints have been filed frequently concerning the type of records at issue, and . . . whether the document retention policy was instituted in bad faith."[143]

Because no easily applicable standards were promulgated in the federal court system, parties remained uncertain as to precisely when the duty to preserve potential evidence arises.[144] In *United States v. Arthur Andersen, LLP*,[145] these problems were brought to light.[146] In this infamous case,[147] employees of the accounting firm Arthur Andersen were advised to shred documents on the eve of the SEC's investigation of the firm's client, Enron.[148] The destruction, despite the pending investigation of Enron, was conducted based on the corporate document retention policy in place at the firm.[149] The conflict between corporate document retention policies and the duty to preserve potential evidence in a foreseeable litigation is the source of the greatest confusion in terms of the application of spoliation sanctions.[150]

The necessity of corporate document destruction policies is widely recognized.[151] In *Arthur Andersen*, the Supreme Court noted that when

---

140. *See id.* at 591.

141. *Id.* (citing Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)).

142. *Id.* at 588.

143. *Id.* at 588-89 (quoting Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 747-48 (8th Cir. 2004)).

144. Crist, *supra* note 29, at 18.

145. 374 F.3d 281 (5th Cir. 2004), *rev'd on other grounds*, 544 U.S. 696 (2005).

146. *See* Jeffrey S. Kinsler, *Arthur Andersen and the Temple of Doom*, 37 Sw. U. L. Rev. 97, 107-11 (2008).

147. *Id.* at 97.

148. *Arthur Andersen, LLP*, 374 F.3d at 285-86.

149. Arthur Andersen in-house counsel Michael Odom sent an e-mail message, based on outside counsel Nancy Temple's advice, on October 10, 2001 that "urged Andersen personnel to comply with the document retention policy," and noted that if a potentially relevant document was "'destroyed in the course of normal policy and litigation is filed the next day, that's great . . . we've followed our own policy and whatever there was that might have been of interest to somebody is gone and irretrievable.'" *Id.* at 285-86 (omission in original).

150. *See* Kinsler, *supra* note 146, at 112-15 (discussing case law with varied applications of the duty to preserve and imposition of sanctions).

151. *Id.* at 111 ("Storage of documents and other records is expensive and burdensome. Thus, a company ordinarily may destroy documents pursuant to a document retention policy that is

*Hofstra Law Review, Vol. 38, Iss. 2 [2009], Art. 11*

812                     *HOFSTRA LAW REVIEW*                  [Vol. 38:793

such a policy is reasonable and evenly applied, it is "not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances."[152] However, when litigation becomes foreseeable, it becomes necessary to reconcile compliance with company policy with the duty to preserve potential evidence, and courts will impose sanctions for parties that fail to do so.[153]

Despite this recognition, different standards continued to be applied across the federal court system, and uniformity had yet to be achieved.[154] Courts across the country recognized that when a party knew or should have known that documents might become material to litigation at some point in the future, and nonetheless destroys them, that party "cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy."[155] It was against this background, in an attempt to clarify the duty to preserve, that Rule 37(e) was adopted into the FRCP.[156]

## IV.   RULE 37(e): A FEDERAL ATTEMPT AT A SOLUTION TO THE E-DISCOVERY PROBLEM

### A.   Aiming for Clarity: The Backdrop of Rule 37(e), the "Safe Harbor" Provision

Rule 37(e) was proposed by the Federal Rules Advisory Committee as an addition to the FRCP as part of the 2007 e-discovery amendments.[157] It was added specifically to deal with the nuanced problems brought about by e-discovery and the preservation obligation in litigation.[158] It was also intended to rectify the lack of clarity as to the

---

reasonable and evenly applied.").

152.   544 U.S. 696, 704 (2005).

153.   Courts have held that parties may be sanctioned for failure to preserve potential evidence as a consequence of compliance with document retention policies based on failure to provide notification to relevant personnel when litigation becomes foreseeable, failure to suspend the destruction plan when litigation becomes foreseeable, and inconsistent application of said document policy and a lack of bad faith, shown by unusual or sporadic destruction of documents associated with a particular foreseeable litigation. *See* Kinsler, *supra* note 146, at 112-15.

154.   *See supra* notes 117-43 and accompanying text.

155.   Lewy v. Remington Arms Co., 836 F.2d 1104, 1112 (8th Cir. 1988) (citing Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 96 (3d Cir. 1983)).

156.   *See infra* Part IV.A.

157.   Lloyd S. van Oostenrijk, Comment, *Paper or Plastic?: Electronic Discovery and Spoliation in the Digital Age*, 42 HOUS. L. REV. 1163, 1168-69 (2005).

158.   *See* Memorandum from Honorable Lee H. Rosenthal, Chair, Advisory Comm. on Fed. Rules of Civil Procedure, to Honorable David F. Levi, Chair, Standing Comm. on Rules of Practice & Procedure 55 (May 17, 2004), *available at* http://www.uscourts.gov/rules/Reports/CV5-2004.pdf.

circumstances under which it is appropriate for a court to impose sanctions for the spoliation of potential evidence.[159]

Rule 37(e) was proposed in order to achieve "the needed balance between information preservation and continuation of business operations."[160] In addition, Rule 37(e) attempted to address the prevalent problems associated with the massive amounts of data that corporate defendants were theoretically required to store in the interest of potential future litigation.[161]

Prior to its implementation into the FRCP, there was a general feeling of skepticism towards Rule 37(e).[162] While it was clear that courts had not reached a consensus as to when spoliation sanctions were appropriate, critics did not believe that Rule 37(e) offered much in the way of providing a stricter or more easily applicable set of guidelines for courts to follow.[163] Rather, many believed that the proposed Rule would have an insignificant impact on e-discovery.[164]

At the time of its drafting, Rule 37(e) appeared to be a well-intentioned, yet premature, attempt at a solution to e-discovery problems.[165] While it was not debated that ESI continued to have an increasingly prominent role in discovery, this role varied from case to case, largely as a consequence of the relatively new nature of e-discovery.[166] Consequently, rather than the adoption of a federal rule to govern this aspect of e-discovery, it was thought that a "wait and see" approach ought to be taken until ESI had a more clear-cut role in

---

159. Chan, *supra* note 101, at 820 ("[N]o federal law solely addresses the management of electronic records retention and destruction. Companies are accountable for their own policies, yet are still responsible for incorporating a myriad of inconsistent state and federal laws.").

160. Mason, *supra* note 86, at 786.

161. Nelson & Rosenberg, *supra* note 19, at 36 ("The . . . amendments represent a wide-ranging effort to conform the Federal Rules of Civil Procedure to the digital age."); Richard Marcus, *Only Yesterday: Reflections on Rulemaking Responses to E-Discovery*, 73 FORDHAM L. REV. 1, 17 (2004) (acknowledging that "[e]-discovery is new, and the breadth of use of computers is also relatively new, . . . [clients and lawyers] await the decision of a judge in the future, and the judge will be acting in an area with few landmarks").

162. Anita Ramasastry, *The Proposed Federal E-Discovery Rules: While Trying to Add Clarity, the Rules Still Leave Uncertainty*, FINDLAW, Sept. 15, 2004, http://articles.technology.findlaw.com/2004/Sep/15/10103.html ("[T]he rules' proposals as to when sanctions can be imposed for deletion of electronic information . . . leave something to be desired.").

163. *See, e.g., id.*

164. *See, e.g.,* Nelson & Rosenberg, *supra* note 19, at 38 ("While seemingly an important step in the ongoing effort to reflect the impact of electronic discovery upon a litigant's preservation obligations, [the proposed rule] will have little, if any, practical impact upon these obligations.").

165. *See* Ramasastry, *supra* note 162.

166. *See, e.g.,* Hester v. Bayer Corp., 206 F.R.D. 683, 685-86 (M.D. Ala. 2001) (stating that preservation orders and duties to preserve are unique to each case because "like snowflakes, no two litigations are alike"); *see also* Hodgman, *supra* note 63, at 286.

*Hofstra Law Review, Vol. 38, Iss. 2 [2009], Art. 11*

discovery.[167] However, despite its critics, Rule 37(e) was included as part of the 2007 e-discovery amendments to the FRCP.[168]

### B.   *Putting Policy into Practice: Understanding Rule 37(e)*

At its adoption, the legal world looked to Rule 37(e) to provide some much needed relief to e-discovery problems.[169] Much of this relief was expected to come from the "safe harbor" provision in the Rule.[170] This provision precludes a party that destroyed data as a consequence of the routine operation of an electronic information system, rather than as a result of culpable, bad-faith conduct, from being sanctioned under Rule 37(b)(2) for failure to produce the documents relevant to its adversary's request.[171]

Much to the chagrin of its proponents, the most glaring problem with Rule 37(e), since it has been adopted, is that it has not led to any much needed clarity as had been its purpose.[172] One explanation for this ineffectiveness lies within the language of the Rule.[173] The Advisory Committee notes to Rule 37(e) attempt to define the type of lost information protected by the Rule's safe harbor provision; it explicitly states that Rule 37(e) is applicable if and only if the operation of the information system was both routine and in good faith.[174]

This explanation, however, has essentially proved to be circular. Under Rule 37(e), good faith requires that a party adhere to its preservation obligation, whereby it must intervene with any document destruction policy and "modify or suspend certain features of that

---

167.  Hodgman, *supra* note 63, at 286.

168.  Davidovitch, *supra* note 3, at 1131.

169.  *See* David Wilner, *e-Discovery Worries?: Proposed Federal Rules on Electronic Discovery May Have a Broad Impact*, CORP. COUNSELOR, Nov. 2004, *available at* https://www.lexisnexis.com/applieddiscovery/NewsEvents/PDFs/200411_CorpCounselor_eDiscWo rries.pdf (stating that Rule 37(e) will deliver relief to litigants who operate sophisticated electronic information systems in good faith, but are nonetheless held accountable if those information systems' routine deletion functions cause the loss of information that may be relevant to litigation).

170.  FED. R. CIV. P. 37(e) ("[A]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.").

171.  FED. R. CIV. P. 37(e) advisory committee's note ("Many steps essential to computer operation may alter or destroy information, for reasons that have nothing to do with how that information might relate to litigation. As a result, the ordinary operation of computer systems creates a risk that a party may lose potentially discoverable information without culpable conduct on its part. Under Rule 37(e), absent *exceptional circumstances*, sanctions cannot be imposed for loss of electronically stored information resulting from the routine, good-faith operation of an electronic information system."(emphasis added)).

172.  *See supra* Part III.D.

173.  *See* Ramasastry, *supra* note 162.

174.  FED. R. CIV. P. 37(e) & advisory committee's note.

routine operation to prevent the loss" of potentially relevant documentation when litigation is reasonably foreseeable.[175] Additionally, the Advisory Committee notes state that a court should consider a variety of factors in determining whether the destruction of documents was in good faith.[176] This includes "the steps the party took to comply with a court order in the case or party agreement requiring preservation of specific electronically stored information."[177]

The language of Rule 37(e) is problematic because, once put into practice, it offers little constructive guidance as to precisely when a party will be relieved from sanctions due to its failure to produce evidence.[178] Additionally, it provides the opportunity for corporate defendants to utilize the Rule's safe harbor provision as a cushion and allow those who are "inclined to obscure or destroy evidence of any sort . . . to hide behind the shield of good faith and undue burden to protect themselves from sanctions."[179]

Rather than giving rise to disputes over concrete issues relating to the actual documents in question, the wording of Rule 37(e) has led to discovery disputes over what constitutes "'routine, good-faith operation'" in terms of properly adhering to the duty to preserve.[180] As a result, courts must spend a great deal of time making "decisions as to what is reasonable and what is done in good faith," which "undermine[s] the consistency and predictability that discovery rules generally seek to create."[181] In this way, Rule 37(e) runs counter to the purposes of the FRCP.[182]

A great deal of this difficulty stems from the fact that the FRCP do not apply directly to pre-litigation conduct.[183] This creates complications

---

175. *Id.*; *see also* Hebl, *supra* note 126, at 101 ("If . . . a party takes affirmative, though inadequate, steps to preserve relevant data, that party should have the protection of the safe harbor, since taking those affirmative steps is evidence that the party did not spoliate evidence . . . in bad faith.").

176. *See* FED. R. CIV. P. 37(e) advisory committee's note.

177. *Id.*

178. *See* Rachel Hytken, Comment, *Electronic Discovery: To What Extent Do the 2006 Amendments Satisfy Their Purposes?*, 12 LEWIS & CLARK L. REV. 875, 898 (2008).

179. Ryan J. Reaves, *The Dangers of E-Discovery and the New Federal Rules of Civil Procedure*, 3 OKLA. J.L. & TECH. 32, 38-39 (2007).

180. *Id.* at 37.

181. *Id.*

182. *See* FED. R. CIV. P. 1 (stating the FRCP "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

183. *See* ABC Home Health Servs., Inc. v. Int'l Bus. Machs. Corp., 158 F.R.D. 180, 182 (S.D. Ga. 1994) ("Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose sanctions for discovery abuses. . . . In this case, Rule 37 does not directly apply because the alleged destruction of documents took place before the action was filed and before discovery began.").

*Hofstra Law Review, Vol. 38, Iss. 2 [2009], Art. 11*

816          *HOFSTRA LAW REVIEW*          [Vol. 38:793

because the duty to preserve may arise before litigation commences.[184] In contrast, when the duty to preserve is breached after litigation has commenced, the FRCP undoubtedly provide the authority for the court to impose sanctions.[185] However, when a violation of the duty occurs before litigation commences, it is less clear as to whether or not Rule 37(e) may be invoked.[186] Therefore, Rule 37(e) is problematic in that it "addresses only sanctions under the federal rules, which generally do not apply prior to commencement of litigation."[187] This, then, requires that a party predict what will be discoverable before becoming involved in a lawsuit or receiving a discovery request, rather than being provided with guidance from the text of the FRCP.[188]

Despite the hopes of the Advisory Committee, Rule 37(e) has not offered the clear guidance that it was initially proposed to provide.[189] The application of Rule 37(e) has resulted in confusion over its meaning, rather than focusing on concrete disputes relating to the actual documents in question and the imposition of spoliation sanctions.[190] Consequently, the question must arise as to whether or not parties are any better off since the inception of Rule 37(e) than they were prior to it. The absence of guidance for parties that are following document retention policies and for when a party may expect to incur spoliation sanctions leads one to believe parties are, in fact, worse off since Rule 37(e) was enacted.[191]

An unquestionable shortcoming of Rule 37(e) is the limited scope of protection that it provides to parties.[192] Based on the text of Rule 37(e), in order for a party's actions to fall under the umbrella of protection provided by the safe harbor provision,

> a party to litigation must (1) have a routine operating protocol for the storage and destruction of its electronically stored information, (2) not delete files potentially responsive to litigation in any manner

---

184. *See, e.g.*, Wm. T. Thompson Co. v. Gen. Nutrition Corp., 593 F.Supp. 1443, 1446 (C.D. Cal. 1984) (stating that the parties were on notice of the litigation because of pre-litigation correspondence between the parties, and thus the duty to preserve was triggered).

185. FED. R. CIV. P. 37(b)(2) (listing possible sanctions for failure to comply with a discovery order).

186. *See* FED. R. CIV. P. 3 (stating that an action is commenced by the filing of a complaint).

187. Allman, *supra* note 1, at 15.

188. *See id.* at 15-16.

189. Nelson & Rosenberg, *supra* note 19, at 40 (noting that the e-discovery amendments "fail to provide litigants with the necessary guidance concerning the precise extent of electronic discovery preservation obligations").

190. *See* Davidovitch, *supra* note 3, at 1133-41 (discussing the intricate analysis which is required in order to determine whether Rule 37(e) is applicable in a particular case).

191. *See supra* text accompanying notes 172-87.

192. *See* Davidovitch, *supra* note 3, at 1141.

Wright: Federal Rule of Civil Procedure 37(e): Spoiling the Spoliation Do

inconsistent with its protocol, and (3) suspend the destruction protocol with respect to any backup tapes or other storage devices that contain files its knows may be relevant to a dispute likely to result in a litigation.[193]

Thus, Rule 37(e), while it may appear on its surface to provide broad protection to parties who inadvertently destroy ESI, in reality, the class of those that are protected is far more restricted.[194] Instead, it applies only to those who comply with the standards set in the text of the Rule.[195]

## V.    WHERE TO GO FROM HERE?: THE FUTURE OF RULE 37(e)

### A.    *Taking out the Garbage: The Need for a New Rule 37(e) and an Emphasis on the Duty to Preserve*

It is clear that Rule 37(e) has not proved to offer any novel and significant protections to parties in the digital era.[196] Because parties are not given bright-line parameters, or even significant guidance as to when the duty to preserve is triggered, Rule 37(e) has not functioned in a way that coincides with the FRCP goal of "just, speedy, and inexpensive" determination of litigations.[197] The combination of this uncertain scope of preservation obligations and the risk of sanctions if information is not preserved oftentimes results in an over-broad pre-litigation preservation effort, which is extremely costly and time consuming for corporate defendants.[198] In order for Rule 37(e) to function in a way consistent with the purpose of the FRCP, courts must reevaluate the Rule.

Rule 37(e) states that its protection is applied "*absent* exceptional circumstances."[199] In terms of defining what constitutes "exceptional circumstances," the Judicial Conference Committee on Rules of Practice and Procedure notes only that such an exceptional circumstance could "permit[s] sanctions . . . even when information is lost because of a

---

193.   Daniel R. Murray et al., *Discovery in a Digital Age: Electronically Stored Information and the New Amendments to the Federal Rules of Civil Procedure*, 39 U.C.C. L.J. 509, 525-26 (2007).

194.   *Id.* at 526.

195.   *Id.* at 525-26.

196.   *See supra* notes 178-95 and accompanying text.

197.   FED. R. CIV. P. 1.

198.   Hebl, *supra* note 126, at 92.

199.   FED. R. CIV. P. 37(e) (emphasis added).

*Hofstra Law Review, Vol. 38, Iss. 2 [2009], Art. 11*

party's good-faith routine operation of a computer system."[200] Thus, a party loses the protection of Rule 37(e) if "exceptional circumstances" warrant the imposition of sanctions despite satisfaction of requirements under Rule 37(e).[201]

This creates a hurdle for parties that seek the protection of Rule 37(e), as it is unclear what constitutes "exceptional circumstances."[202] Due to the absence of guidelines for applying Rule 37(e), courts are left with "tremendous discretion" in determining proper application of the Rule.[203] As presently interpreted, the "exceptional circumstances" clause results in a bias towards parties requesting documents because of the emphasis on the provision of remedies for innocent parties, and thus the application of Rule 37(e) "distills" the law regarding spoliation sanctions.[204]

Traditionally, spoliation sanctions have been imposed in order to serve prophylactic, punitive, and remedial functions.[205] However, the phrase "exceptional circumstances" allows courts to essentially discount the mental state of the party that destroyed relevant documents.[206] By giving courts the authority to find "exceptional circumstances," Rule 37(e) may allow courts to place undue emphasis on remedying the evidentiary playing field for the party requesting the destroyed documents.[207]

Rule 37(e) leaves unaddressed an especially vexing problem for the courts: the destruction of documents not in bad faith, but as Rule 37(e) states, as a consequence of the "good faith" operation of an electronic information system.[208] The inadvertent destruction of evidence, despite the lack of bad faith, may nevertheless leave the requesting party at a disadvantage.[209]

---

200. SUMMARY OF THE REPORT OF THE JUDICIAL CONFERENCE COMMITTEE ON RULES OF PRACTICE & PROC. 83 (2005), *available at* http://www.uscourts.gov/rules/Reports/ST09-2005.pdf#page=168.

201. *See id.*

202. Hytken, *supra* note 178, at 895 ("[A] judge, upon a finding of 'extraordinary circumstances,' can sanction a party that meets the general requirements of Rule 37. Neither the Committee nor the courts have attempted to define this term; there is no sense of when, if, or how this term will take on meaning.").

203. *Id.* at 899.

204. Davidovitch, *supra* note 3, at 1141.

205. *See supra* text accompanying notes 42-45.

206. Davidovitch, *supra* note 3, at 1141.

207. *See id.* at 1141-42.

208. *See* FED. R. CIV. P. 37(e).

209. *See, e.g.,* Pandora Jewelry, LLC v. Chamilia, LLC, No. CCB-06-3041, 2008 U.S. Dist. LEXIS 79232, at *27-29 (D. Md. Sept. 30, 2008) (noting that despite a party's duty to preserve, and gross negligence, the failure to preserve evidence did not rise to the level of bad faith conduct).

Wright: Federal Rule of Civil Procedure 37(e): Spoiling the Spoliation Do

It is important to keep in mind what constitutes good faith; as a general principle, it is commonly understood to be the absence of bad faith.[210] In the context of spoliation, bad faith may be discerned from the direct destruction of documents by a party in order to hide information adverse to its case.[211] Bad faith in this context may also be characterized by "'willful blindness,'" whereby a party is aware of discoverable evidence, but "nonetheless allows for its destruction."[212]

It is long established that courts have wide discretion in the imposition of sanctions for spoliation.[213] In using this discretion, courts take into account both the intent and state of mind of the party that fails to produce evidence when determining whether or not sanctions are appropriate.[214] Under Rule 37(e), then, "courts will likely assess the intent of a producing party . . . as well as the prejudice to the requesting party resulting from the inability to obtain such data."[215] This is not a novel creation of Rule 37(e).[216] Rather, this is a reiteration of the commonly accepted method for imposing spoliation sanctions.[217]

### B. Shifting the Focus to a New Solution to E-Discovery Problems

In *United Medical Supply Co. v. United States*,[218] the court asserted that "spoliation sanctions spring from two main sources of authority":[219] first, the "inherent power [of the court] to control the judicial process and litigation, a power that is necessary to redress conduct 'which abuses the judicial process'"; and second, the authority given under Rule 37(b)(2) to impose sanctions in appropriate circumstances.[220] Using these powers, the court must craft sanctions that are "just and proportionate in light of the circumstances underlying the failure to

---

210. Gerseta Corp. v. Wessex-Campbell Silk Co., 3 F.2d 236, 238 (2d Cir. 1924) ("Good faith is fidelity and honesty, and bad faith is the opposite; and the definition of one defines its antonym by the addition of a negative.").

211. Durrant, *supra* note 93, at 1819; *see also* Pennar Software Corp. v. Fortune 500 Sys., Ltd., 51 Fed. R. Serv. 3d (West) 279, 286 (N.D. Cal. 2001) (finding that a party acted in bad faith by deleting relevant webpages from a webserver and altering the server's log files).

212. *Id.* at 1819 (citing Danis v. USN Commc'ns, Inc., 53 Fed. R. Serv. 3d (West) 828, 878 (N.D. Ill. 2000)).

213. *See supra* Part II.D.

214. *See supra* Part II.D.

215. Shira A. Scheindlin & Jonathan M. Redgrave, *Special Masters and E-Discovery: The Intersection of Two Recent Revisions to the Federal Rules of Civil Procedure*, 30 CARDOZO L. REV. 347, 368 (2008).

216. *See supra* Part II.D.

217. *See supra* Part II.D.

218. 77 Fed. Cl. 257 (2007).

219. *Id.* at 263.

220. *Id.* at 263-64 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)).

*Hofstra Law Review, Vol. 38, Iss. 2 [2009], Art. 11*

preserve relevant evidence, as well as the punitive, prophylactic, remedial and institutional purposes to be served by such sanctions."[221]

In light of the multitude of factors to be taken into account, Rule 37(e) is ineffective.[222] The considerations that a court must make prior to imposing sanctions on a party already encompass the concern that fueled the implementation of the Rule, rendering it unnecessary.[223] Therefore, Rule 37(e) should be removed from the FRCP.

The language of Rule 37(e) has been interpreted to require a showing of intentional or reckless conduct in order for a court to impose spoliation sanctions.[224] This ensures that a party that engaged in egregious conduct cannot invoke the protection of Rule 37(e)'s safe harbor.[225] For example, in *Arista Records LLC v. Usenet.com, Inc.*,[226] the defendant party was unable to claim the protection of Rule 37(e) because the court found that it had intentionally deleted documents from that company's webpage that were requested in a discovery order.[227] Despite that the party was technically following its corporate document retention policy, that party was not afforded the protection of Rule 37(e) because of its willful disregard of the duty to preserve these potentially relevant documents.[228]

The "good faith" requirement in Rule 37(e) prevents precisely this type of conduct, and, in doing so, prevents parties from using the safe harbor as a shield for outright failure to institute a litigation hold when the duty of preservation has attached.[229] This protection is consistent with the spoliation doctrine as it stood prior to e-discovery, because through the Rule, courts are able to impose sanctions that are consistent with the purposes that underlie the doctrine.[230]

---

221.  *Id.* at 270; *see also supra* text accompanying notes 42-44.

222.  *See* Davidovitch, *supra* note 3, at 1141-42.

223.  *See id.* at 1165.

224.  *See* FED R. CIV. P. 37 advisory committee's note ("The good faith requirement of Rule 37[(e)] means that a party is not permitted to exploit the routine operation of an information system to thwart discovery obligations . . . ."); *see also* Hebl, *supra* note 126, at 98 (stating that case law and committee notes "are entirely consistent with the idea that good faith requires some sort of reckless or intentional conduct for the protection of the safe harbor to be withdrawn").

225.  *See, e.g., In re* Krause, 367 B.R. 740, 768-69 (Bankr. D. Kan. 2007) (finding that defendant was not entitled to safe harbor protection because he did not act in good faith when he failed to disable the running of a file-wiping feature and then re-installed a data-erasing program after the preservation duty had attached).

226.  608 F. Supp. 2d 409 (S.D.N.Y. 2009).

227.  *Id.* at 438-39.

228.  *See id.*

229.  *In re* NTL, Inc. Sec. Litig., 244 F.R.D. 179, 198-99 (S.D.N.Y. 2007) (finding that a party's "utter failure to preserve documents" after receiving plaintiff's complaint warrants spoliation sanctions because the duty to preserve had clearly attached).

230.  *See supra* Part II.D.

Since its adoption, Rule 37(e) has left parties in no better a position than they were prior to the Rule's enactment.[231] The combination of both the inherent power of the court and that of Rule 37(b)(2) provide sufficient authority for courts to sanction parties for spoliation, even in light of the problems created by ESI.[232] Under Rule 37(e), parties have not received any protection that they would not have had absent the Rule.[233] The safe harbor provision erects a bar against parties who engage in purposeful, bad-faith conduct and then look to use Rule 37(e) as a shield for its bad acts; these parties, however, are already precluded from this protection by the language of the Rule.[234]

In the end, the result is no different than imposition of spoliation sanctions prior to the implementation Rule 37(e).[235] Through application of the traditional spoliation doctrine, courts should take a willful mindset into account, balance it against the resultant prejudice to the opposing party, and craft a sanction based on these considerations, as is the case in the invocation of sanctions under the traditional spoliation doctrine.[236]

Therefore, common law development of the spoliation doctrine gives courts ample ability to impose spoliation sanctions in the pre-litigation context, and Rule 37(b)(2) remains sufficient to sanction parties that violate specific discovery orders. This being the case, Rule 37(e) should be removed from the FRCP. The wide discretion already afforded to trial courts in crafting sanctions will allow for the necessary case-by-case consideration of discovery disputes, and appellate level

---

231. *See* Davidovitch, *supra* note 3, at 1165.

232. *See id.*

233. *See, e.g., Arista Records LLC,* 608 F. Supp. 2d at 439. The defendant in *Arista Records* blatantly disregarded a discovery order by willingly allowing documents that had been requested to be deleted. *Id.* at 416-17. Even though this was in accordance with "company policy," the party was not given the protection of Rule 37(e) because of the bad faith nature of the conduct. *Id.* at 439. However, absent Rule 37(e), it is likely that the outcome would have been the same based on the court's analysis of the party's conduct, coupled with the remedial function served by sanctions. *See id.* at 429-30.

234. *See supra* text accompanying notes 224-27.

235. *Compare In re* Krause, 367 B.R. 740, 766-69 (Bankr. D. Kan. 2007) (holding that defendant was not entitled to the protection of Rule 37(e) because he installed software specifically designed to delete information from his electronic storage system after he was on notice of pending litigation), *with* Kucala Enters., Ltd. v. Auto Wax Co., 56 Fed. R. Serv. 3d (West) 487, 496-97 (N.D. Ill. 2003) (sanctioning defendant for spoliation when he purchased and utilized a software program called "Evidence Eliminator" after he received a letter from the plaintiff regarding pending litigation). Just as the willful, bad faith conduct in *Kucala* was sanctioned, so too was the analogous conduct in *Krause,* despite the fact that Rule 37(e) was in place at the time *Krause* was decided. This is because the bad faith nature of a party's actions precludes that party from receiving the protection of the safe harbor.

236. *See supra* Part II.D.

review for abuse of this discretion will ensure protection against abuses of the power to sanction.[237]

Even after the implementation of Rule 37(e), courts continue to use common law as their main source of guidance in terms of how to best determine whether or not the duty to preserve relevant or potentially relevant information has attached in a particular case.[238] In *Goodman v. Praxair Services, Inc.*,[239] the court discusses the attachment of the duty to preserve solely in terms of case law, without specific mention of Rule 37(e), despite the fact that the discovery dispute centers around the deletion of back-up tapes that were requested during discovery.[240]

Instead of the current Rule 37(e), the problems brought about by ESI will be most effectively resolved by creating standards for when the duty to preserve attaches to parties in the time period before a complaint is filed. A clearer understanding of when this duty attaches is essential for parties involved in e-discovery.[241] This clarification is necessary so that parties will be able to predict, with a degree of certainty, when they must put litigation holds in place and modify their corporate document retention policy procedures.[242] Recent case law suggests that such a clarification has yet to come to light, and parties are essentially left in the dark as to when the duty to preserve attaches.[243]

In order to best achieve this clarification, the courts must focus on the principles set forth in *Zubulake*.[244] While the standard created in *Zubulake* creates too onerous a burden on parties, the rationale behind the decision provides an appropriate framework within which clearer guidelines for the duty to preserve may be established, and courts should use this framework to create these guidelines. In *Zubulake*, the court noted that "almost everyone associated with [the plaintiff] recognized

---

237. *See* Hytken, *supra* note 178, at 900 (noting the benefits and risks of the wide discretion afforded to judges in crafting sanctions due to the potential unfamiliarity of judges with the subject matter).

238. *See* Davidovitch, *supra* note 3, at 1165.

239. 632 F. Supp. 2d 494 (D. Md. 2009).

240. *Id.* at 511-16.

241. *See* Hebl, *supra* note 126, at 104 ("Several cases have turned almost exclusively on whether the obligation to preserve had arisen, and thereby have continued to apply an essentially pre-Rule 37(e) analysis, since often, no consideration of state of mind even takes place.").

242. *See id.* at 104-06 (discussing case law with varied outcomes and applications of Rule 37(e) in terms of when the duty to preserve is triggered).

243. *Compare* Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 621 (D. Colo. 2007) (stating that the duty to preserve "should require more than a mere possibility of litigation"), *with Goodman*, 632 F. Supp. 2d at 509 & n.7 (stating that the duty to preserve attaches when litigation is reasonably anticipated). These cases exemplify the notion that, while courts *state* when the duty to preserve relevant documents attaches, there is little predictability as to what this means in terms of application from case to case.

244. Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

the possibility that she might sue."[245] The recognition by those involved in the eventual litigation was the determinative factor as to when the court stated that the duty to preserve relevant evidence had been triggered.[246]

Courts must focus on this prong of analysis in the future. A focus on the individuals involved in the dispute will make understanding of the duty to preserve more manageable for parties. The duty to preserve must be centered around the individuals that are involved in a particular dispute, and the determination as to when the duty attaches must be centered on when these individuals know, or reasonably should know, that litigation is forthcoming.

An ability to predict will allow for e-discovery to comport with the goals of the FRCP, because it will reduce the time courts must spend making inquiries into when the duty to preserve attaches. Additionally, with this understanding, corporate parties will be better able to engage in more efficient self-modification of document retention policies in a conscious effort to reduce the possibilities of invocations of spoliation sanctions. This in turn will better serve the goals of the judicial system as a whole, as it will promote the wide availability of evidence.[247]

## VI.   CONCLUSION

The exponential increase in the use of technology in these modern times has certainly left discovery wrought with confusion. Courts have been, and remain to be, perplexed as to how to reconcile the massive data storage capabilities of contemporary electronic information systems both with the traditional spoliation doctrine and within the parameters of FRCP.[248] The task of imposing sanctions in order to protect the integrity of the American legal system, while simultaneously taking into consideration the onerous burden that a duty to preserve potentially relevant evidence in litigation may impose on a party is no doubt an exceedingly difficult one, especially in light of the changes that technology has bestowed on discovery.

Rule 37(e) was adopted into the FRCP as an attempted solution to this quandary.[249] However, the Rule, as evidenced in its interpretation and application, does no more than reiterate the policies behind the

---

245. *Id.* at 217.

246. *Id.* (noting that the preservation obligation attached because the "relevant people" were aware of the possibility of litigation).

247. *See* Crist, *supra* note 29, at 43 (stating that the American justice system is based on the idea that both sides have the ability of "obtaining and presenting relevant evidence").

248. *See* van Oostenrijk, *supra* note 157, at 1170-71.

249. *Id.* at 1168.

*Hofstra Law Review, Vol. 38, Iss. 2 [2009], Art. 11*

traditional spoliation doctrine.[250] That being the case, Rule 37(e) should be removed from the FRCP, and the traditional spoliation doctrine should instead govern the imposition of these sanctions. In its place, a reconfigured analysis of the aforementioned e-discovery problems must take place. The focus must shift to effectuating a more standardized statement of the point at which the duty of a party to preserve potentially relevant evidence to litigation attaches. Once this is done, the problems created when documents are inadvertently destroyed through the use of electronic information systems will be lessened, and courts will be able to take control of discovery, despite the enormous impact brought on by technology.

*Nicole D. Wright\**

250.   *See* text accompanying notes 213-17.

\*   J.D., 2010. I would like to thank the members of the Hofstra Law Review, especially Sean Doherty, Lisa Fortin, Michael de Matos, Alison Sablick, Danielle Nunziato, David Barndad, Brenda Guiliano, and Rachael Ringer, for your support, assistance, and most importantly, friendship throughout the editorial process. A special thank you also to Justin Levy for your impeccable attention to detail, uncanny ability to notice italicized punctuation marks, and consistent humor during the Note-writing process. Additionally, thank you to Professor Frank Gulino for your ever-careful editorial eye, and for your consistent guidance throughout my tenure at Hofstra University School of Law. Finally, I would like to dedicate this Note to my two brothers and especially to my parents, for your unconditional love and support in all that I do.

# Reference 7 - Statements and Perjury overview of federal criminal law



*Congressional*
*Research Service*
Informing the legislative debate since 1914 ——————————————

# False Statements and Perjury: An Overview of Federal Criminal Law

**Charles Doyle**
Senior Specialist in American Public Law

May 11, 2018

**Congressional Research Service**
7-5700
www.crs.gov
98-808

**CRS REPORT**
Prepared for Members and
Committees of Congress ——————————————

# Summary

Federal courts, Congress, and federal agencies rely upon truthful information in order to make informed decisions. Federal law therefore proscribes providing the federal courts, Congress, or federal agencies with false information. The prohibition takes four forms: false statements; perjury in judicial proceedings; perjury in other contexts; and subornation of perjury.

Section 1001 of Title 18 of the United States Code, the general false statement statute, outlaws material false statements in matters within the jurisdiction of a federal agency or department. It reaches false statements in federal court and grand jury sessions as well as congressional hearings and administrative matters but not the statements of advocates or parties in court proceedings. Under Section 1001, a statement is a crime if it is false, regardless of whether it is made under oath.

In contrast, an oath is the hallmark of the three perjury statutes in Title 18. The oldest, Section 1621, condemns presenting material false statements under oath in federal official proceedings. Section 1623 of the same title prohibits presenting material false statements under oath in federal court proceedings, although it lacks some of Section 1621's traditional procedural features, such as a two-witness requirement. Subornation of perjury, barred in Section 1622, consists of inducing another to commit perjury. All four sections carry a penalty of imprisonment for not more than five years, although Section 1001 is punishable by imprisonment for not more than eight years when the offense involves terrorism or one of the various federal sex offenses. The same five-year maximum penalty attends the separate crime of conspiracy to commit any of the four substantive offenses.

A defendant's false statements in the course of a federal criminal investigation or prosecution may also result in an enhanced sentence under the U.S. Sentencing Guidelines for the offense that was the subject of the investigation or prosecution.

This report is available in abbreviated form—without footnotes, quotations, or citations—as CRS Report 98-807, *False Statements and Perjury: A Sketch of Federal Criminal Law*.

# Contents

Introduction ............................................................................................................................... 1
False Statements (18 U.S.C. § 1001) ........................................................................................ 1
   Elements .................................................................................................................................. 2
      Whoever ............................................................................................................................. 2
      Within the Jurisdiction ...................................................................................................... 3
      Knowingly and Willfully ................................................................................................... 4
      Materiality ......................................................................................................................... 4
      Concealment, False Statements, and False Writings .......................................................... 5
Perjury Generally (18 U.S.C. § 1621) ....................................................................................... 6
   Testimonial Perjury Generally (18 U.S.C. § 1621(1)) ............................................................ 6
      Whoever ............................................................................................................................. 7
      Willfully ............................................................................................................................. 7
      Having Taken An Oath ....................................................................................................... 8
      False .................................................................................................................................. 8
      Materiality ......................................................................................................................... 9
      Defenses .......................................................................................................................... 10
   False Writings as Perjury Generally (18 U.S.C. § 1621(2)) .................................................. 10
Perjury in a Judicial Context (18 U.S.C. § 1623) ..................................................................... 11
      Whoever ........................................................................................................................... 13
      Under Oath or Its Equivalent: Court or Grand Jury ......................................................... 13
      False or Inconsistent ........................................................................................................ 13
      Materiality ....................................................................................................................... 15
      Defenses .......................................................................................................................... 16
Subornation of Perjury (18 U.S.C. § 1622) ............................................................................. 17
Conspiracy (18 U.S.C. § 371) ................................................................................................. 18
Perjury as a Sentencing Factor (U.S.S.G. § 3C1.1) ................................................................. 18

# Contacts

Author Contact Information ...................................................................................................... 21

# Introduction

Lying, or making a false statement, is a federal crime under a number of circumstances. It is a federal crime to make a material false statement in a matter within the jurisdiction of a federal agency or department.[1] Perjury is also a federal crime. Perjury is a false statement made under oath before a federal tribunal or official.[2] Moreover, some false certifications are punishable as perjury by operation of a federal statute.[3] Subornation of perjury is inducing someone else to commit perjury. It, too, is a federal crime if the perjury induced is a federal crime.[4] Finally, conspiracy to commit any these underlying crimes is also a separate federal crime.[5] Moreover, a defendant under investigation or on trial for some other federal offense may find upon conviction his sentence for the underlying offense enhanced as a consequence of a false statement he made during the course of the investigation or trial. This is an overview of federal law relating to the principal false statement and to the three primary perjury statutes.

# False Statements (18 U.S.C. § 1001)

The principal federal false statement statute, 18 U.S.C. § 1001, proscribes false statements, concealment, or false documentation in any matter within the jurisdiction of any of the three branches of the federal government.[6] It applies generally within the executive branch.[7] Within the judicial branch, it applies to all but presentations to the court by parties or their attorneys in judicial proceedings.[8] Within the legislative branch, it applies to administrative matters such as

---

[1] 18 U.S.C. § 1001.

[2] 18 U.S.C. §§1621, 1623.

[3] 18 U.S.C. §§1621, 1623.

[4] 18 U.S.C. § 1622.

[5] 18 U.S.C. § 371.

[6] There are scores of more limited false statement statutes that relate to particular agencies or activities and include 8 U.S.C. § 1160(b)(7)(A) (applications for immigration status); 15 U.S.C. § 158 (China Trade Act corporate personnel); 15 U.S.C. § 645 (Small Business Administration); 15 U.S.C. § 714m (Commodity Credit Corporation); 16 U.S.C. § 831t (TVA); 18 U.S.C. § 152 (bankruptcy); 18 U.S.C. § 287 (false or fraudulent claims against the United States); 18 U.S.C. § 288 (postal losses); 18 U.S.C. § 289 (pensions); 18 U.S.C. § 541 (entry of goods falsely classified); 18 U.S.C. § 542 (entry of goods by means of false statements); 18 U.S.C. § 550 (refund of duties); 18 U.S.C. § 1003 (fraudulent claims against the United States); 18 U.S.C. § 1011 (federal land bank mortgage transactions); 18 U.S.C. § 1014 (loan or credit applications in which the United States has an interest); 18 U.S.C. § 1015 (naturalization, citizenship or alien registry); 18 U.S.C. § 1019 (false certification by consular officer); 18 U.S.C. § 1020 (highway projects); 18 U.S.C. § 1022 (false certification concerning material for the military); 18 U.S.C. § 1027 (ERISA); 18 U.S.C. § 1542 (passport applications); 18 U.S.C. § 1546 (fraud in connection with visas, permits and other documents); 22 U.S.C. § 1980 (compensation for loss of commercial fishing vessel or gear); 22 U.S.C. § 4221 (American diplomatic personnel); 22 U.S.C. § 4222 (presentation of forged documents to United States foreign service personnel); 42 U.S.C. § 408 (old age claims); 42 U.S.C. § 1320a-7b (Medicare).

[7] 18 U.S.C. § 1001(a) ("Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully - (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years ...").

[8] 18 U.S.C. § 1001(b) ("Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.").

---

procurement,[9] as well as to "any investigations and reviews, conducted pursuant to the authority of any committee, subcommittee, commission, or office of the Congress consistent with applicable rules of the House or Senate."[10]

In outline form, Section 1001(a) states:

> I. Except as otherwise provided in this section,
>
> II. whoever,
>
> III. in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States,
>
> IV. knowingly and willfully—
>
> V. a. falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> b. makes any materially false, fictitious, or fraudulent statement or representation; or
> c. makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A [sexual abuse], 109B [sex offender registration], 110 [sexual exploitation], or 117 [transportation for illicit sexual purposes], or section 1591 [sex trafficking], then the term of imprisonment imposed under this section shall be not more than 8 years.[11]

## Elements

### Whoever

The Dictionary Act provides that "in determining the meaning of any Act of Congress, unless the context indicates otherwise ... the word[] ... 'whoever' *include[s]* corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals ... ."[12] "Includes" is usually a "but-not-limited-to" word. As a general rule, use of the word "includes" means that the list that it introduces is illustrative rather than exclusive.[13] The government has convicted corporations under Section 1001 which confirms that the section's prohibitions are not confined to individuals, that is, the section is not one where "the context indicates otherwise."[14]

---

[9] 18 U.S.C. § 1001(c)(1) ("With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to - (1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch.").

[10] 18 U.S.C. § 1001(c)(2) ("With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to ... (2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.").

[11] 18 U.S.C. § 1001(a).

[12] 1 U.S.C. § 1 (emphasis added).

[13] Samantar v. Yousuf, 560 U.S. 305, 317 (2010); United States v. Lange, 862 F.3d 1290, 1295 (11th Cir. 2017); United States v. Vargas-Garnica, 332 F.3d 471, 474 (7th Cir. 2003).

[14] United States v. Automated Medical Laboratories, Inc., 770 F.2d 399, 406-408 (4th Cir. 1985); United States v. (continued...)

## Within the Jurisdiction

A matter is within the jurisdiction of a federal entity when it involves a matter "confided to the authority of a federal agency or department ... A department or agency has jurisdiction, in this sense, when it has power to exercise authority in a particular situation. Understood in this way, the phrase 'within the jurisdiction' merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body." [15] Several courts have held that the phrase contemplates coverage of false statements made to state, local, or private entities relating to matters that involve federal funds or regulations.[16]

Section 1001(b) creates an exception, a safe harbor for statements, omissions, or documentation presented to the court by a party in judicial proceedings. The exception covers false statements made to the court even if they result in the expenditure of executive branch efforts.[17] The exception also includes false statements of indigency filed by a defendant seeking the appoint of counsel,[18] and perhaps a defendant's false statement in a probation officer's presentence report,[19] but not false statements made by one on supervised release to a probation officer.[20]

Section 1001's application to matters within the jurisdiction of the legislative branch is confined to two categories of false statements. One proscribes false statements in matters of legislative

---

(...continued)

Richmond, 700 F.2d 1183, 1195 n.7 (8th Cir. 1983); United States v. Ionia Management S.A., 526 F. Supp. 2d 319, 327 (D. Conn. 2007).

[15] United States v. Rodgers, 466 U.S. 475, 479 (1984); United States v. Pinson, 860 F.3d 152, 170-71 (4th Cir. 2017); United States v. Rahman, 805 F.3d 822, 836-37 (6th Cir. 2015); United States v. Clark, 787 F.3d 451, 459 (7th Cir. 2015).

[16] *Pinson*, 860 F.3d at 170-71 (submission of false pay applications to a local housing agency that dispensed funds under a House and Urban Development grant); *Rahman*, at 836-37 (false statements to a state deputy fire marshal in the course a joint state-federal fire investigation); *Clark*, 787 F.3d at 459 (false payroll reports submitted to state transportation agency in connection with a federally-funded highway project); United States v. Ford, 639 F.3d 718, 720 (6th Cir. 2011) ("Jurisdiction may exist when false statements were made to state or local government agencies receiving federal support or subject to federal regulation."); United States v. Starnes, 583 F.3d 196, 208 (3d Cir. 2009) ("Indeed, it is enough that the statement or representation pertain to a matter in which the executive branch has the power to exercise authority ... HUD, an agency within the executive branch, provided the funding for the Donoe project to VIHA and had the power to exercise authority over the project, had it chosen to do so."); United States v. Taylor, 582 F.3d 558, 563 (5th Cir. 2009) ("The term 'jurisdiction' merely incorporates Congress'[s] intent that the statute apply whenever false statements would result in the perversion of the authorized functions of a federal department or agency."); United States v. White, 270 F.3d 356, 363 (6th Cir. 2001) ("We have in the past looked to whether the entity to which the statements were made received federal support and/or was subject to federal regulation."); United States v. Davis, 8 F.3d 923, 929 (2d Cir. 1993) ("In situations in which a federal agency is overseeing a state agency, it is the mere existence of the federal agency's supervisory authority that is important to determining jurisdiction."); *but see* United States v. Blankenship, 382 F.3d 1110, 1139, 1141 (11th Cir. 2004) (emphasis in the original) ("The clear, indisputable holding of *Lowe* is that a misrepresentation made to a private company concerning a project that is the subject of a contract between that company and the federal government does *not* constitute a misrepresentation about a matter within the jurisdiction of the federal government ... Because neither *Lowe* not its central holding has ever been overruled ... it remains good law.").

[17] United States v. Bankston, 820 F.3d 215, 222, 229-31 (6th Cir. 2016).

[18] United States v. McNeil, 362 F.3d 570. 573 (9th Cir. 2004) (but observing that "[s]ubmitting a false CJA-23 form may subject a defendant to criminal liability under other statutes, for example, under 18 U.S.C. § 1621, the general statute on perjury, or 18 U.S.C. § 1623, which punishes the making of a false material declaration in any proceeding, before, or ancillary to, any court").

[19] United States v. Horvath, 492 F.3d 1075, 1078-1081 (9th Cir. 2007), *but see* United States v. Manning, 526 F.3d 611, 619-21 (10th Cir. 2008).

[20] United States v. Vreeland, 684 F.3d 653, 664-65 (6th Cir. 2012).

---

branch administration and reaches false statements made in financial disclosure statements.[21] The other proscribes false statements in the course of congressional investigations and reviews, but does not reach false statements made concurrent to such investigations or reviews.[22]

## Knowingly and Willfully

Section 1001 requires the government to prove that the defendant acted "knowingly and willfully." It requires the government to show the defendant knew or elected not to know that the statement, omission, or documentation was false and that the defendant presented it with the intent to deceive.[23] The phrase "knowingly and willfully" refers to the circumstances under which the defendant made his statement, omitted a fact he was obliged to disclose, or included within his documentation, that is, "that the defendant knew that his statement was false when he made it or – which amounts in law to the same thing – consciously disregarded or averted his eyes from the likely falsity."[24] Although the offense can only be committed "knowingly and willfully," that is, with the knowledge that it was unlawful,[25] the prosecution need not prove that the defendant knew that his conduct involved a "matter within the jurisdiction" of a federal entity,[26] nor that he intended to defraud a federal entity.[27]

## Materiality

Prosecution for a violation of Section 1001 requires proof of materiality, as does conviction for perjury, and the standard is the same: the statement must have a "natural tendency to influence, or be capable of influencing the decisionmaking body to which it is addressed."[28] There is no need to show that the decision maker was in fact diverted or influenced.[29]

---

[21] 18 U.S.C. § 1001(c)(1); United States v. Menendez, 137 F. Supp. 3d 688, 693 (D.N.J. 2015).

[22] 18 U.S.C. § 1001(c)(2); United States v. Pickett, 353 F.3d 62, 69 (D.C. Cir. 2004).

[23] United States v. Boffil-Rivera, 607 F.3d 736, 741 (11th Cir. 2010) ("For purposes of the statute, the word 'false' requires an intent to deceive or mislead."); United States v. Starnes, 583 F.3d 196, 210 (3d Cir. 2009) ("In general, 'knowingly' requires the government to prove that a criminal defendant had knowledge of the facts that constitute the offense ... willfully ... usually requires the government to prove that the defendant acted not merely voluntarily, but with a bad purpose, that is, with knowledge that his conduct was, in some general sense, unlawful.").

[24] United States v. Zhen Zhou Wu, 711 F.3d 1, 28 (1st Cir. 2013); *see also* United States v. Hsia, 176 F.3d 716, 721-22 (D.C. Cir. 1999); United States v. Hoover, 175 F.3d 564, 571 (7th Cir. 1999).

[25] United States v. Phillipos, 849 F.3d 464, 476 (1st Cir. 2017) (quoting Bryan v. United States, 524 U.S. 184, 191-92 (1998) ("The Supreme Court has made it clear that 'in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.").

[26] United States v. Yermian, 468 U.S. 63, 75 (1984); United States v. Gonzales, 435 F.3d 64, 72 (1st Cir. 2006).

[27] *Id.* at 72; *Starnes*, 583 F.3d at 212 n. 8.

[28] United States v. Gaudin, 515 U.S. 506, 509 (1995); United States v. Wilson, 879 F.3d 795, 807 (7th Cir. 2018); Williams v. United States, 758 F.3d 708, 718 (1st Cir. 2017); United States v. Clay, 832 F.3d 1259, 1309 (11th Cir. 2016); United States v. Robinson, 809 F.3d 991, 999 (8th Cir. 2016); United States v. Litvak, 808 F.3d 160, 170 (2d Cir. 2015).

[29] *Clay*, 832 F.3d at 1309 ("A false statement can be material even if the decision maker actually knew or should have known that the statement was false or even if the decision maker did not actually rely on the statement."); *Robinson*, 809 F.3d at 999; United States v. Mehanna, 735 F.3d 32, 54 (1st Cir. 2013) ("Where a defendant's statements are intended to misdirect government investigators, they may satisfy the materiality requirement of [§]1001 even if they stand no chance of accomplishing their objective. This principle makes eminently good sense: it would stand reason on its head to excuse a defendant's deliberate prevarication merely because his interrogators were a step ahead of him."); United States v. King, 735 F.3d 1098, 1108 (9th Cir. 2013).

## Concealment, False Statements, and False Writings

Section 1001's false statement element is in fact three alternative elements that encompass concealment, false statements and false writings.

Subsection 1001(a)(1)(concealment) applies to anyone who "falsifies, conceals, or covers up by any trick, scheme, or device a material fact." Although the requirement does not appear on the face of the statute, prosecutions under Subsection 1001(a)(1) for concealment must also prove the existence of a duty or legal obligation not to conceal.[30] A federal employee's general ethical obligation to "disclose waste, fraud, abuse, and corruption to appropriate authorities," however, will "not support a conviction under § 1001(a)(1)."[31]

Subsection 1001(a)(2)(false statements) applies to anyone who "makes any material false, fictitious, or fraudulent statement or representation." Conviction requires that the defendant knew that his statement or documentation was false, that is, it was not true.[32] It follows that a defendant's response to a question that is so fundamentally ambiguous cannot provide the basis for a conviction under Subsection 1001(a)(2).[33]

Section 1001(a)(2) recognizes few defenses other than the government's failure to prove one or more of its elements. For instance, "there is no safe harbor for recantation or correction of a prior false statement that violates [Section] 1001."[34] Under an earlier version of Section 1001, several lower federal courts recognized an "exculpatory no" doctrine under which Section 1001 did not reach a defendant's simple false denial to a law enforcement officer's incriminating question.[35] The Supreme Court repudiated the doctrine "[b]ecause the plain language of [then] § 1001 admits of no exception for an 'exculpatory no … .'" Defendants have been largely unable to bring about recognition of an exculpatory no doctrine under Section 1001's current language, although the section's breadth occasionally seems to cause judicial discomfort.[36]

---

[30] United States v. White Eagle, 721 F.3d 1108, 1116-18 (9th Cir. 2013) ("[A] conviction under § 1001(a)(1) is proper where a statute or government regulation requires the defendant to disclose specific information to a particular person or entity"); United States v. Safavian, 528 F.3d 957, 964 (D.C. Cir. 2008) ("As Safavian argues and as the government agrees, there must be a legal duty in order for there to be a concealment offense in violation of §1001(a)(1)"); United States v. Stewart, 433 F.3d 273, 318-19 (2d Cir. 2006); United States v. Moore, 446 F.3d 671, 678-79 (7th Cir. 2006); United States v. Gibson, 409 F.3d 325, 333 (6th Cir. 2005).

[31] *White Eagle*, 721 F.3d at 1116-18 (quoting 5 C.F.R. § 2635.101(b)(11)) and citing *Safavian*, 529 F.3d at 964.

[32] United States v. Stacks, 821 F.3d 1038, 1044 (8th Cir. 2016) ("To establish a violation of 18 U.S.C. § 1001[(a)(2)], the government must prove that "(1) the defendant made a statement; (2) the statement was false, fictitious, or fraudulent … A statement is 'false' if it contains 'factual misrepresentations.'"); United States v. Rahman, 805 F.3d 822, 836 (7th Cir. 2015); United States v. Castro, 704 F.3d 125, 139 (3d Cir. 2013).United States v. Good, 326 F.3d 589, 592 (4th Cir. 2003) ("The principle articulated in *Bronston* holds true for convictions under Section 1001 … We cannot uphold a conviction … where the alleged statement forming the basis of a violation of Section 1001 is true on its face.").

[33] United States v. Schulte, 741 F.3d 1141, 1150 (10th Cir. 2014) ("[A] fundamental ambiguity cannot be the basis for a false statement conviction because a person cannot knowingly give a false reply to a question that defies interpretation despite its context."); United States v. Hatch, 434 F.3d 1, 4-5 (1st Cir. 2006); United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir. 2003); United States v. Good, 326 F.3d 589, 592 (4th Cir. 2003).

[34] United States v. Dooley, 578 F.3d 582, 592 (7th Cir. 2009); United States v. Stewart, 433 F.3d 273, 318 (2d Cir. 2006) (citing United States v. Sebaggala, 256 F.3d 59, 64 (1st Cir. 2001); United States v. Meuli, 8 F.3d 1481, 1486-487 (10th Cir. 1993); and United States v. Fern, 696 F.2d 1269, 1275 (11th Cir. 1983)).

[35] Brogan v. United States, 522 U.S. 398, 401 (1998) (listed examples).

[36] United States v. Phillipos, 849 F.3d 464, 475 & n. 2 (1st Cir. 2017) (footnote 2 of the court's opinion in brackets; underlining in the original) ("Phillipos develops no argument as to how some version of the 'exculpatory no' lives on in the current version of section 1001. [We note that the 'exculpatory no' doctrine was, in many circuits, based on an (continued...)

---

Section 1001(a)(3)(written false statements) covers written false statements and applies to anyone who "makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." In order to establish a violation of Subsection 1001(a)(3), the government must prove the defendant "rendered a statement that: (1) is false, (2) is material, (3) is knowingly and willfully made, and (4) concerns a matter within the jurisdiction of a federal" entity.[37]

# Perjury Generally (18 U.S.C. § 1621)

## Testimonial Perjury Generally (18 U.S.C. § 1621(1))

As noted earlier, there are three primary perjury statutes. Each involves a statement or writing offered under oath or its equivalent. One proscribes two forms of perjury generally.[38] A second proscribes perjury before a court or grand jury.[39] A third proscribes subornation of perjury that consists of arranging for someone else to commit perjury.[40]

Section 1621 is the first of these and consists of two offenses, one for testimony and the other written statements. The testimonial proscription provides:

    I. Whoever having taken an oath

    II. before a competent tribunal, officer, or person,

    III. in any case in which a law of the United States authorizes an oath to be administered,

    IV. a. that he will
          i. testify,
          ii. declare,
          iii. depose, or
          iv, certify truly, or
       b. that any written

---

(...continued)

implied material requirement that we … read into the earlier version of section 1001. *Brogan* did away with the doctrine due to the absence of a textual basis for it in an earlier version of section 1001 … In 1996, however, Congress added the statute's current materiality requirement for the express purpose of resolving the 'conflict among circuit as to whether material is an element of the false statements prohibition … Several of our sister circuits have since held, albeit with little analysis, that *Brogan* precludes application of the 'exculpatory no' doctrine under the amended statute, notwithstanding that it contains an express materiality requirement. *See e.g.,* United States v. Watkins, 691 F.3d 841, 852 (6th Cir. 2012); United States v. Ali, 508 F.3d 136, 153 (3d Cir. 2007).]"); *see also* United States v. Binette, 945 F. Supp. 2d 223, 230 (D. Mass. 2013) ("The implications of the government's argument here chills the blood. Someone receives a call, with no prior warning, in the middle of the work day. During this unrecorded call, individuals who purport to be government officials pepper him with questions. The recipient of the call, unsure who these questioners really are, dodges and prevaricates. Without even the opportunity to argue that he did not trust the identity of his interrogators and therefore chose not be truthful, the recipient of the call faces a potential five-year prison sentence for making false statements. A conviction in these circumstances would disregard the requirement of 18 U.S.C. § 1001 that a defendant's conduct be knowing and willful. More fundamentally, it would ignore the bedrock proposition that an individual should not be punished when he has done nothing wrong.").

[37] United States v. Clark, 787 F.3d 451, 459 (7th Cir. 2015); United States v. Blankenship, 382 F.3d 1110, 1131-132 (11th Cir. 2004); United States v. McGauley, 279 F.3d 62, 69 (1st Cir. 2002).

[38] 18 U.S.C. § 1621.

[39] 18 U.S.C. § 1623.

[40] 18 U.S.C. § 1622.

> i. testimony,
> ii. declaration,
> iii. deposition, or
> iv. certificate
> by him subscribed, is true,
>
> V. willfully and contrary to such oath
>
> VI. a. states or
>   b. subscribes
> any material matter which he does not believe to be true; or
>
> is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.[41]

The courts generally favor an abbreviated encapsulation such as the one the Supreme Court provided in *United States v. Dunnigan*: "A witness testifying under oath or affirmation violates this section if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."[42]

## Whoever

The term "whoever" ordinarily encompasses individuals as well as entities, such as corporations, unless the context of the statute in which the term is used suggests a contrary congressional intent.[43] As a general rule, a corporation is liable for the crimes of its employees, officers, or agents committed within the scope of their authority and at least in part for the benefit of the corporation.[44] Corporations have been convicted for false statements under Section 1001,[45] as noted earlier, but rarely if ever under Section 1621(1).

## Willfully

Conviction under Section 1621(1) requires not only that the defendant knew his statement was false ("which he does not believe to be true"), but that his false statement is "willfully" presented. There is but scant authority on precisely what "willful" means in this context. The Supreme Court in dicta has indicated that willful perjury consists of "*deliberate* material falsification under oath."[46] Other courts have referred to willful perjury as acting with an "intent to deceive"[47] or as

---

[41] 18 U.S.C. § 1621.

[42] United States v. Dunnigan, 507 U.S. 87, 94 (1993); United States v. Thompson, 808 F.3d 190, 194 (2d Cir. 2015); United States v. Petrovic, 701 F.3d 849, 859 (8th Cir. 2012); United States v. McKenna, 327 F.3d 830, 838 (9th Cir. 2003); United States v. Singh, 291 F.3d 756, 763 n.4 (11th Cir. 2002); *see also* United States v. Dumeisi, 424 F.3d 566, 582 (7th Cir. 2005) ("the elements of perjury are (1) testimony under oath before a competent tribunal, (2) in a case in which United States law authorizes the administration of an oath, (3) false testimony, (4) concerning a material matter, (5) with the willful intent to provide false testimony.").

[43] 1 U.S.C. § 1.

[44] United States v. Agosto-Vega, 617 F.3d 541, 552-53 (1st Cir. 2010); United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1118-19 (D.C. Cir. 2009); United States v. Singh, 518 F.3d 236, 249 (4th Cir. 2008).

[45] United States v. Automated Medical Laboratories, Inc., 770 F.2d 399, 406-408 (4th Cir. 1985); United States v. Richmond, 700 F.2d 1183, 1195 n.7 (8th Cir. 1983); United States v. Ionia Management S.A., 526 F. Supp. 2d 319, 327 (D. Conn. 2007).

[46] United States v. Norris, 300 U.S. 564, 574 (1937) (emphasis added).

[47] United States v. Rose, 215 F.2d 617, 622-23 (3d Cir. 1954).

acting "intentionally."[48] In the case of a violation of Section 1001, one court has pointed to the general statement from the Supreme Court that "willfully" means the defendant acted with the knowledge his conduct was unlawful.[49] Be that as it may, the prosecution must show that the defendant believed that his statement was not true in order to convict him of Section 1621(1) perjury.[50]

## Having Taken An Oath

Section 1621(1), in so many words ("whoever having taken an oath"), reaches sworn written or oral testimony presented to a federal tribunal, officer, or person.[51]

## False

### Truth and Ambiguity

Perjury under Section 1621(1) condemns testimony that is false. The Supreme Court in *Bronston v. United States* explained that testimony that is literally true, even if deceptively so, cannot be considered perjury for purposes of a prosecution under Section 1621(1).[52] Bronston testified at a bankruptcy hearing at which he was asked if he had a Swiss bank account.[53] He truthfully answered that he did not.[54] Then, he was asked if he had ever had a Swiss bank account, which he had.[55] He answered, however, that his company had had such an account at one time, which was true but not responsive to the question of had he ever had an account.[56] Yet, he was convicted for violating Section 1621(1) on the basis of that answer.[57] The Supreme Court's final comment in the decision that threw out the conviction observed, "It may well be that [Bronston's] answers were not guileless but were shrewdly calculated to evade. Nevertheless, … any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution."

The Court's comment suggests that Section 1621(1) perjury may not be grounded on an ambiguous question. The lower federal appellate courts have not always been willing to go that far. True, "when a line of questioning 'is so vague as to be fundamentally ambiguous, the answers associated with the questions posed may be insufficient as a matter of law to support a perjury

---

[48] United States v. Friedman, 854 F.2d 535, 560 (2d Cir. 1988); United States v. Mounts, 35 F.3d 1208, 1219 (7th Cir. 1994).

[49] United States v. Phillipos, 849 F.3d 464, 476 (1st Cir. 2017) (citing Bryan v. United States, 524 U.S. 184, 191-92 (1998) and Ratzlaf v. United States, 510 U.S. 135, 137 (1994)).

[50] 18 U.S.C. § 1621(1) (… which he does not believe to be true."); United States v. Culliton, 328 F.3d 1074, 1080 (9th Cir. 2003) (quoting United States v. Lighte, 782 F.2d 367, 372 (2d Cir. 1986)) ("Perjury requires that a witness believe that the testimony he gives is false.").

[51] 18 U.S.C. § 1621(1); *Dunnigan*, 507 U.S. at 94 ("A witness testifying under oath or affirmation violates this section if …"); *Thompson*, 808 F.3d at 194; United States v. Burge, 711 F.3d 803, 812 (7th Cir. 2013); *Petrovic*, 701 F.3d at 859.

[52] Bronston v. United States, 409 U.S. 352, 362 (1972); United States v. McKenna, 327 F.3d 830, 841 (9th Cir. 2003); United States v. Shotts, 145 F.3d 1289, 1297 11th Cir. 1998) (listing cases from other circuits that have reversed convictions for perjury based on truthful answers); United States v. Dean, 55 F.3d 640, 662 (D.C. Cir. 1995).

[53] *Bronston*, 409 at 353-54.

[54] *Id.* at 354.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 356.

conviction.'"[58] Yet, as one court stated, "our Court has 'eschewed a broad reading of *Bronston*,' noting instead that, 'as a general rule, the fact that there is some ambiguity in a falsely answered question will not shield the respondent from a perjury … prosecution."[59] Moreover, the line between permissible ambiguity and impermissible fundamental ambiguity is not easily drawn. Some courts have concluded that "to precisely define the point at which a question becomes fundamentally ambiguous … is impossible."[60]

## Two-Witness Rule

Section 1621(1) requires compliance with the common law "two-witness rule" to establish that a statement is false. Under the rule, "the uncorroborated oath of one witness is not sufficient to establish the falsity of the testimony of the accused as set forth in the indictment as perjury."[61] Thus, conviction under Section 1621(1) compels the government to "establish the falsity of the statement alleged to have been made by the defendant under oath, by the testimony of two independent witnesses or one witness and corroborating circumstances."[62] If the rule is to be satisfied with corroborative evidence, the evidence must be trustworthy and support the account of the single witness upon which the perjury prosecution is based.[63]

## Materiality

"To be guilty of perjury under 18 U.S.C. § 1621(1), a defendant's false statement must be material."[64] A false statement is "material in a criminal prosecution for perjury under § 1621(a) if it is material to any proper matter of the decisionmaker's inquiry," that is, "if it is capable of influencing the tribunal on the issue before it."[65] A false statement is no less material because the decisionmaker was not taken in by the statement.[66]

---

[58] United States v. Brown, 843 F.3d 738, 743 (2d Cir. 2016); *see also* United States v. Strohm, 671 F.3d 1173, 1179 (10th Cir. 2011) (quoting United States v. Richardson, 421 F.3d 17, 33 (1st Cir. 2005) ("A question that is truly ambiguous or which affirmatively misleads the testifier can never provide a basis for a finding of perjury, as it could never be said that one intended to answer such a question untruthfully."); *cf.* United States v. Miller, 527 F.3d 54, 77 (3d Cir. 2008) ("[A] perjury conviction under 18 U.S.C. § 1623 cannot be predicated on a response to a 'fundamentally ambiguous' question.'").

[59] United States v. McGee, 763 F.3d 304, 320 (3d Cir. 2014) (quoting United States v. Reilly, 33 F.3d 1396, 1416 (3d Cir. 1994)); *see also* United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir. 2003).

[60] *Strohm*, 671 F.3d 1173, 1179-80 10th Cir. 2011) (quoting United States v. Farmer, 137 F.3d 1265, 1269 (3d Cir. 1998)); *see also* United States v. Lighte, 782 F.2d 367, 372 (2d Cir. 1986) ("The phrase 'fundamental ambiguity' has itself proven to be fundamentally ambiguous.").

[61] Hammer v. United States, 271 U.S. 620, 626 (1926).

[62] Weiler v. United States, 323 U.S. 606, 607 (1945); United States v. McGee, 763 F.3d 304, 318 (3d Cir. 2014); United States v. Stewart, 433 F.3d 273, 315 (2d Cir. 2006); United States v. Chaplin, 25 F.3d 1373, 1377 (7th Cir. 1994).

[63] *Weiler*, 323 U.S. at 610; *McGee*, 763 F.3d at 318; *Stewart*, 433 F.3d at 315 ("The rule is satisfied by the direct testimony of a second witness or by other evidence of independent probative value, circumstantial or direct, which is of a quality to assure that a guilty verdict is solidly founded. The independent evidence must, by itself, be inconsistent with the innocence of the defendant. However, the corroborative evidence need not, in itself, be sufficient, if believed to support a conviction.").

[64] United States v. Burge, 711 F.3d 803, 812 (7th Cir. 2013) (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993), "'A witness testifying under oath or affirmation violations [§ 1621(1)] if she gives false testimony concerning a material matter with the willful intent to provide false testimony…'"); *see also* United States v. McKenna, 327 F.3d 830, 838 (9th Cir. 2003).

[65] United States v. Kantengwa, 781 F.3d 545, 553-54 (1st Cir. 2015); *Burge*, 711 at 812 (quoting Neder v. United States, 527 U.S. 1, 16 (1999) ("A false statement is material if it has 'a natural tendency to influence, or [is] capable of (continued...)

---

## Defenses

Although a contemporaneous correction of a false statement may demonstrate the absence of the necessary willful intent to commit perjury, the crime is completed when the false statement is presented to the tribunal. Without a statute such as that found in Section 1623, recantation is no defense nor does it bar prosecution under Section 1621(1).[67]

# False Writings as Perjury Generally (18 U.S.C. § 1621(2))

Congress added Section 1621(2) to the general perjury statute in 1976 in order to dispense with the necessity of an oath for various certifications and declarations.[68]

Section 1621(2) states:

  I. Whoever
  II. in any
      a. declaration,
      b. certificate,
      c. verification, or
      d. statement
  under penalty of perjury as permitted under [Section] 1746 of title 28, United States Code,

  III. willfully subscribes as true

  IV. any material matter

  V. which he does not believe to be true

  is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.[69]

---

(...continued)

influencing, the decision of the decisionmaking body to which it was addressed.'"); *McKenna*, 327 F.3d at 839.

[66] *Kantengwa*, 781 F.3d at 555-54; *Burge*, 711 at 812 ("Materiality does not depend on the ultimate decision reached by the body to which the false statement is addressed."); United States v. DeZarn, 157 F.3d 1042, 1051 (6th Cir. 1998).

[67] United States v. Norris, 300 U.S. 564, 574 (1934); United States v. McAfee, 8 F.3d 1010, 1017 (5th Cir. 1993).

[68] H.R. REP. NO. 1616, at 1 (1976); P.L. 94-550, 90 STAT. 2534 (1976).

[69] 28 U.S.C. § 1746 provides: Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(continued...)

---

As in the case of violations under Section 1621(1), Section 1621(2) proscriptions apply in theory with equal force to corporations and other entities as well as to individuals, but in practice prosecutions appear to be confined to individuals.

Section 1621(2) operates as an enforcement mechanism for Section 1746, which affords an under-penalty-of-perjury option wherever a federal statute or regulation requires a written statement under oath.[70] Section 1746 is available regardless of whether the triggering statute or regulation seeks to ensure the validity of a written statement or the identity of its author.[71]

Section 1621(2) only proscribes *material* false statements in unsworn writings, i.e., a statement "capable of influencing or misleading a tribunal on any proper matter of inquiry."[72]

# Perjury in a Judicial Context (18 U.S.C. § 1623)

Congress enacted Section 1623 to avoid some of the common law technicalities embodied in the more comprehensive perjury provisions found in Section 1621 and thus "to facilitate perjury prosecutions and thereby enhance the reliability of testimony before federal courts and grand juries."[73] Unlike Section 1621, Section 1623 permits a conviction in the case of two mutually inconsistent declarations without requiring proof that one of them is false.[74] It recognizes a limited recantation defense.[75] It dispenses with the so-called two-witness rule.[76] And, it employs a "knowing" mens rea standard rather than the more demanding "willfully" standard used in Section 1621.[77]

Parsed into elements, Section 1623 declares that:

    I. Whoever

    II. a. under oath or
       b. in any
           i. declaration,
           ii. certificate,
           iii. verification, or
           iv. statement

---

(...continued)

(Signature)".

[70] 18 U.S.C. § 1621(2); 28 U.S.C. § 1746. *See e.g.*, United States v. Roberts, 308 F.3d 1147, 1150 (11th Cir. 2002) (prisoner's unsworn petition for federal habeas corpus relief); United States v. Holland, 22 F.3d 1040. 1043 (11th Cir. 1994) (petition to waive fees *in forma pauperis*).

[71] Summers v. U.S. Dept. of Justice, 999 F.2d 570, 572 (D.C. Cir. 1993).

[72] United States v. Roberts, 308 F.3d 1147, 1155 (11th Cir. 2002) (statement in a prisoner's habeas petition, that the petition was not a second and subsequent petition, was material because it "fooled the clerk of the court into accepting the 'writ' for filing, and led the magistrate judge to consider its merits until she discovered that the 'writ' was a successive § 2255 motion in disguise.").

[73] Dunn v. United States, 442 U.S. 100, 107 (1979), (citing S. REP. NO. 91-617, at 58-9 (1969) (internal citations omitted)).

[74] 18 U.S.C. § 1623(c).

[75] 18 U.S.C. § 1623(d).

[76] 18 U.S.C. § 1623(e).

[77] 18 U.S.C. § 1623(a).

under penalty of perjury as permitted under [Section] 1746 of title 28, United States Code[78]

III. in any proceeding before or ancillary to
   a. any court or
   b. grand jury of the United States

IV. knowingly

V. a. makes any false material declaration or
   b. makes or uses any other information, including any
      i. book,
      ii. paper,
      iii. document,
      iv. record,
      v. recording, or
      vi. other material,

VI. knowing the same to contain any false material declaration,

shall be fined under this title or imprisoned not more than five years, or both.[79]

In most cases, the courts abbreviate their description of the elements and state in one form or another that to prove perjury the government must establish that "the defendant (1) knowingly made a (2) false (3) material declaration (4) under oath (5) in a proceeding before or ancillary to any court or grand jury of the United States."[80]

---

[78] "Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

"(1) If executed without the United States: 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)'.

"(2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)'."

[79] 18 U.S.C. § 1623(a).

[80] United States v. Brugnara, 856 F.3d 1198, 1209 (9th Cir. 2017); *see also* United States v. Dudley, 804 F.3d 506, 520 (1st Cir. 2015) ("A statement under oath constitutes perjury if is [1] false, [2] known to be so and [3] material to the proceeding."); United States v. Zhen Zhou Wu, 716 F.3d 159, 173 (5th Cir. 2013) ("To obtain a perjury conviction, the Government must prove (1) that the defendant's statements were material; (2) false; and (3) at the time the statements were made the defendant did not believe them to be true."); United States v. Strohm, 671 F.3d 1173, 1177 (10th Cir. 2011) (brackets in the original) ("To prove perjury under §1623(a), the government must demonstrate (1) the defendant made a declaration under oath before a [court]; (2) such declaration was false; (3) the defendant knew the declaration was false and (4) the false declaration was material to the [court's] inquiry."); United States v. Ramirez, 635 F.3d 249, 260 (6th Cir. 2011) ("A conviction under §1623(a) requires proof that the defendant (1) knowingly made, (2) a materially false declaration (3) under oath (4) before a federal grand jury."); United States v. Gorman, 613 F.3d 711, 715-16 (7th Cir. 2010) ("To support a conviction for perjury beyond a reasonable doubt, the government had the burden of proving that (1) the defendant, while under oath, testified falsely before the grand jury; (2) his testimony related to some material matter; and (3) he knew that testimony was false.").

## Whoever

Again, the Dictionary Act defines the term "whoever" to encompass individuals as well as entities, such as corporations, unless the context of the statute in which the term is used suggests a contrary congressional intent.[81] A corporation, as a general matter, is liable for the crimes of its employees, officers, or agents committed within the scope of their authority and at least in part for the benefit of the corporation.[82] Corporations have been convicted for false statements under Section 1001, as mentioned earlier,[83] but rarely if ever under Section 1623.

## Under Oath or Its Equivalent: Court or Grand Jury

Section 1623 reaches both false statements under oath and those offered "under penalty of perjury" by operation of 28 U.S.C. § 1746.[84] The allegedly perjurious statement must be presented in a "proceeding before or ancillary to any court or grand jury of the United States."[85] An interview in an attorney's office in preparation for a judicial hearing cannot be considered such an ancillary proceeding,[86] but the phrase "proceedings ancillary to" court or grand jury proceedings does cover proceedings to take depositions in connection with civil litigation,[87] as well as a variety of proceedings in criminal cases,[88] including habeas proceedings,[89] bail hearings,[90] venue hearings,[91] supervised release revocation hearings,[92] and suppression hearings.[93]

## False or Inconsistent

The Supreme Court's observation that a statement that is misleading but literally true cannot support a conviction under Section 1621 because it is not false[94] applies with equal force to perjury under Section 1623.[95] Similarly, perjury cannot be the product of confusion, mistake, or

---

[81] 1 U.S.C. § 1.

[82] United States v. Agosto-Vega, 617 F.3d 541, 552-53 (1st Cir. 2010); United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1118-19 (D.C. Cir. 2009); United States v. Singh, 518 F.3d 236, 249 (4th Cir. 2008).

[83] United States v. Automated Medical Laboratories, Inc., 770 F.2d 399, 406-408 (4th Cir. 1985); United States v. Richmond, 700 F.2d 1183, 1195 n.7 (8th Cir. 1983); United States v. Ionia Management S.A., 526 F. Supp. 2d 319, 327 (D. Conn. 2007).

[84] 18 U.S.C. § 1623(a).

[85] 18 U.S.C. § 1623(a).

[86] Dunn v. United States, 442 U.S. 100, 111-12 (1979).

[87] *Id.*; United States v. Zhen Zhou Wu, 716 F.3d 159, 173 (5th Cir. 2013); United States v. Wilkinson, 137 F.3d 214, 225 (4th Cir. 1998); United States v. Holland, 22 F.3d 1040, 1047-48 (11th Cir. 1994); United States v. McAfee, 8 F.3d 1010, 1013-14 (5th Cir. 1993).

[88] United States v. Farmer, 137 F.3d 1265 (11th Cir. 1998).

[89] United States v. Johnson, 325 F.3d 205, 209 (4th Cir. 2003).

[90] United States v. Greene, 591 F.2d 471 (8th Cir. 1979).

[91] United States v. Durham, 139 F.3d 1325 (10th Cir. 1998).

[92] United States v. Brugnara, 856 F.3d 1198, 1209 (9th Cir. 2017).

[93] United States v. Dudley, 804 F.3d 506, 520 (1st Cir. 2015*)*; United States v. Renteria, 138 F.3d 1328 (10th Cir. 1998).

[94] Bronston v. United States, 409 U.S. 352, 358-59 (1973).

[95] United States v. Gorman, 613 F.3d 711, 716 (7th Cir. 2010); United States v. Thomas, 612 F.3d 1107, 1114-115 (9th Cir. 2010); United States v. Richardson, 421 F.3d 17, 32-3 (1st Cir. 2005); United States v. Shotts, 145 F.3d 1289, 1297 (11th Cir. 1998); United States v. Hairston, 46 F.3d 361, 375 (4th Cir. 1996).

---

faulty memory, but must be a statement that the defendant knows is false,[96] although this requirement may be satisfied with evidence that the defendant was deliberately ignorant or willfully blind to the fact that the statement was false.[97] On the other hand, "[a] question that is truly ambiguous or which affirmatively misleads the testifier can never provide a basis for a finding of perjury, as it could never be said that one intended to answer such a question untruthfully."[98] Yet ambiguity will be of no avail if the defendant understands the question and answers falsely nevertheless.[99]

Subsection 1623(c) permits a perjury conviction simply on the basis of two necessarily inconsistent material declarations rather than a showing that one of the two statements is false.[100] Conviction does require a showing, however, that the two statements were made under oath; it is not enough to show that one was made under oath and the other was made in the form of an affidavit signed under penalty of perjury.[101] Moreover, the statements must be so inherently contradictory that one of them of necessity must be false.[102]

---

[96] United States v. Fawley, 137 F.3d 458, 466 (7th Cir. 1998); United States v. Reveron Martinez, 836 F.2d 684, 689 (1st Cir. 1988); *cf.* United States v. Dunnigan, 507 U.S. 87, 94 (1993).

[97] *Fawley*, 137 F.3d at 466-67.

[98] United States v. Richardson, 421 F.3d 17, 33 (1st Cir. 2005); *see also* United States v. Strohm, 671 F.3d 1173, 1179-1181 (10th Cir. 2011) ("An answer is not a knowing false statement if the witness responds to an ambiguous question with what he or she believes to be a truthful answer.... The case law has divided linguistic ambiguity into one of two flavors—fundamental or arguable.... A question is fundamentally ambiguous in narrow circumstances. To qualify, ... the question itself is excessively vague, making it impossible to know – without guessing – the meaning of the question and whether a witness intended to make a false response ... But fundamental ambiguity is the exception, not the rule.... A question is arguably ambiguous where more than one reasonable interpretation of a question exists."); United States v. DeZarn, 157 F.3d 1042, 1049 (6th Cir. 1998); *see also* United States v. Turner, 500 F.3d 685, 689 (8th Cir. 2007) ("If, however, a question is fundamentally vague or ambiguous, then an answer to that question cannot sustain a perjury conviction.").

[99] United States v. Strohm, 671 F.3d 1173, 1178 (10th Cir. 2011) ("Simply plumbing a question for post hoc ambiguity will not defeat a perjury conviction where the evidence demonstrates the defendant understood the question in context and gave a knowingly false answer."); United States v. McKenna, 327 F.3d 830, 841 (9th Cir. 2003) ("A question leading to a statement supporting a perjury conviction is not fundamentally ambiguous where the jury could conclude beyond a reasonable doubt that the defendant understood the question as did the government and that so understood, the defendant's answer was false."); United States v. Brown, 459 F.3d 509, 529 (5th Cir. 2006); United States v. Turner, 500 F.3d 685, 690 (8th Cir. 2007); United States v. Gorman, 613 F.3d 711, 716 (7th Cir. 2010).

[100] 18 U.S.C. § 1623(c) ("An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if – (1) each declaration was material to the point in question, and (2) each declaration was made within the period of the statute of limitations for the offense charged under this section. In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true."); United States v. Dunn, 442 U.S. 100, 108 (1979) ("By relieving the government of the burden of proving which of two or more inconsistent declarations was false, see §1623(c), Congress sought to afford greater assurance that testimony obtained in grand jury and court proceedings will aid the cause of truth.").

[101] United States v. Jaramillo, 69 F.3d 388, 390 (9th Cir. 1995).

[102] United States v. McAfee, 8 F.3d 1010, 1014-15 (5th Cir. 1993) ("The Government must show that the statements are so irreconcilable that one of the statements is 'necessarily false.' We find the Fourth Circuit's explanation of § 1623(c) instructive and adopt the standard set forth in United States v. Flowers, 813 F.2d 1320 (4th Cir. 1987). In *Flowers*, the court concluded that subsection 1623(c) 'requires a variance in testimony that extends beyond mere vagueness, uncertainty, or equivocality. Even though two declarations may differ from one another, the §1623(c) standard is not met unless taking them into context, they are so different that if one is true there is no way the other can (continued...)

---

Some years ago, the Supreme Court declined to reverse an earlier ruling that "[t]he general rule in prosecutions for perjury is that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment."[103] Because the two-witness rule rests on the common law rather than on a constitutional foundation, it may be abrogated by statute without offending constitutional principles.[104] Subsection 1623(e) permits a perjury conviction without compliance with this traditional two-witness rule.[105]

## Materiality

Materiality is perhaps the most nettlesome of perjury's elements. It is usually said that a statement is material "if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to whom it is addressed."[106] This definition is not easily applied when the precise nature of the underlying inquiry remains somewhat undefined such as in grand jury proceedings or in depositions at the discovery stage of a civil suit. On the civil side, the lower federal courts appear divided between the view (1) that a statement in a deposition is material if a "truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at the trial of the underlying suit" and (2) that a statement is material "if the topic of the statement is discoverable and the false statement itself had a tendency to affect the outcome of the underlying civil suit for which the deposition was taken."[107]

In the case of perjury before the grand jury, rather than articulate a single standard, the courts have described several circumstances under which false testimony may be considered material.[108]

---

also be true.' *Id.* at 1324."); *see also* United States v. Porter, 994 F.2d 470 (8th Cir. 1993)).

[103] Weiler v. United States, 323 U.S. 606, 607 (1945).

[104] United States v. Ruggiero, 472 F.2d 599, 606 (2d Cir. 1973); United States v. Diggs, 560 F.2d 266, 269 (7th Cir. 1977) (citing cases in accord).

[105] 18 U.S.C. § 1623(e) ("Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence"). *See also* United States v. Kemp, 500 F.3d 257, 294 (3d Cir. 2007); United States v. Hasan, 609 F.3d 1121, 1139 (10th Cir. 2010).

[106] United States. v. Brugnara, 856 F.3d 1198, 1209 (9th Cir. 2017); United States v. Macedo-Flores, 788 F.3d 181, 189 (5th Cir. 2015); United States v. Strohm, 671 F.3d 1173, 1186 (10th Cir. 2011); United States v. Benkahla, 530 F.3d 300, 310 (4th Cir. 2008); United States v. McKenna, 327 F.3d 830, 839 (9th Cir. 2003); United States v. Lee, 359 F.3d 412, 417 (6th Cir. 2003); United States v. Durham, 139 F.3d 1325, 1329 (10th Cir. 1998).

[107] United States v. Wilkinson, 137 F.3d 214, 225 (4th Cir. 1998), comparing, United States v. Kross, 14 F.3d 751, 754 (2d Cir. 1994), and United States v. Holley, 942 F.2d 916, 924 (5th Cir. 1991), with, United States v. Adams, 870 F.2d 1140, 1146-148 (6th Cir. 1989) and United States v. Clark, 918 F.2d 843, 846 (9th Cir.1990), overruled on other grounds, United States v. Keys, 133 F.3d 1282, 1286 (9th Cir,. 1998); *see also* United States v. McKenna, 327 F.3d 830, 839-40 (9th Cir. 2003)(acknowledging the division and continuing to adhere to the view expressed in *Clark*).

[108] *E.g.,* United States v. Macedo-Flores, 788 F.3d 181, 189 (5th Cir. 2015) ("[T]he statement need not be material to any particular issue but may be material to any proper matter of inquiry."); United States v. Silveira, 426 F.3d 514, 518 (1st Cir. 2005) ("A statement of witness to a grand jury is material if the statement is capable of influencing the grand jury as to any proper matter pertaining to its inquiry or which might have influenced the grand jury or impeded its inquiry. To be material, the statement need not directly concern an element of the crime being investigated, nor need it actually influence the jury."); United States v. Burke, 425 F.3d 400, 414 (7th Cir. 2005) ("Even potential interference with a line of inquiry can establish materiality"); United States v. Plumley, 207 F.3d 1086, 1095-96 (8th Cir. 2000) ("Although it is true that this particular question did not address the ultimate issue ... at the time ... it is not thereby rendered immaterial" (citing cases in which a statement before the grand jury was found to be material when a "truthful answer would have raised questions about the role of others ... when [the] witness obscures [his] whereabouts or involvement in the offense ... [and] about peripheral matters [that] can become material when considered in context.").

In any event, a statement is no less material because it did not or could not divert the decisionmaker.[109]

The courts seem to have had less difficulty dealing with a materiality issue characterized as the "perjury trap" doctrine. The doctrine arises where a witness is called for the sole purpose of eliciting perjurious testimony from him.[110] Under such circumstances it is said the tribunal has no valid purpose to which a perjurious statement could be considered material. The doctrine poses no bar to prosecution in most cases, however, because the government is usually able to identify some valid reason for the grand jury's inquiries.[111]

# Defenses

Most of the other subsections of Section 1623 are designed to overcome obstacles that the common law placed in the path of a successful perjury prosecution. Subsection 1623(d), in contrast, offers a defense unrecognized at common law. The defense is stated in fairly straightforward terms, "[w]here in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."[112] Although phrased in different terms, the courts seem to agree that repudiation of the false testimony must be specific and thorough.[113] There is some disagreement whether a recanting defendant must be denied the defense if both the substantial impact and imminent exposure conditions have been met or if the defense must be denied if either condition exists. Most courts have concluded that the presence of either condition dooms the defense.[114]

---

[109] *Macedo-Flores*, 788 F.3d at 189; United States v. Strohm, 671 F.3d 1173, 1186 (10th Cir. 2011); *Silveira*, 426 F.3d at 518; United States v. Lee, 359 F.3d 412, 416 (6th Cir. 2004); *McKenna*, 327 F.3d at 839.

[110] Brown v. United States, 245 F.2d 549, 555 (8th Cir. 1957), quoting, United States v. Icardi, 140 F.Supp. 383, 384-88 (D.D.C. 1956); *but see* United States v. Burke, 425 F.3d 400, 408 (7th Cir. 2005) ("We have not embraced this doctrine, however, and do not see any reason to adopt it now.") (internal citations omitted).

[111] United States v. McKenna, 327 F.3d 830, 837 (9th Cir. 2003) ("Here, the government did not use its investigatory powers to question McKenna before a grand jury. Rather, it merely questioned McKenna in its role as a defendant during the pendency of a civil action in which she was the plaintiff. The perjury trap doctrine is inapplicable to McKenna's case for this reason."); United States v. Regan, 103 F.3d 1073, 1079 (2d Cir. 1997)("[W]e have noted that the existence of a legitimate basis for an investigation and for particular questions answered falsely precludes any application of the perjury trap doctrine.); United States v. Chen, 933 F.2d 793, 797 (9th Cir. 1991)("[W]hen testimony is elicited before a grand jury that is attempting to obtain useful information in furtherance of its investigation or conducting a legitimate investigation into crimes which had in fact taken place within its jurisdiction, the perjury trap doctrine is, by definition, inapplicable."), quoting, United States v. Devitt, 499 F.2d 135, 140 (7th Cir. 1974) and United States v. Chevoor, 526 F.2d 178, 185 (1st Cir. 1975).

[112] 18 U.S.C. § 1623(d); *cf.*, United States v. DeLeon, 603 F.3d 397, 404-405 (7th Cir. 2010).

[113] United States v. Wiggan, 700 F.3d 1204, 1216 (9th Cir. 2012) (internal citations and quotation marks omitted) ("Recantation requires a defendant to renounce and withdraw the prior statement. And the defendant must unequivocally repudiate his prior testimony to satisfy §1623(d). It is not enough if the defendant merely attempted to explain his inconsistent statements, but never really admitted to the facts in question."); United States v. Tobias, 863 F.2d 685, 689 (9th Cir. 1988) (unequivocal repudiation); United States v. Scivola, 766 F.2d 37, 45 (1st Cir. 1985) (implicit recantation is insufficient); United States v. Goguen, 723 F.2d 1012, 1017 (1st Cir. 1983) (outright retraction and repudiation).

[114] United States v. Sherman, 150 F.3d 306, 313-18 (3d Cir. 1998); United States v. Fornaro, 894 F.2d 508, 510-11 (2d Cir. 1990); United States v. Scivola, 766 F.2d 37, 45 (1st Cir. 1985); United States v. Denison, 663 F.2d 611, 615 (5th Cir. 1981); United States v. Moore, 613 F.2d 1029, 1043 (D.C. Cir. 1979); *contra*, United States v. Smith, 35 F.3d 344, 345-47 (8th Cir. 1994).

Early construction required that a defendant establish both that his false statement had not substantially affected the proceeding before his recantation *and* that it had not become manifest that his false statement would be exposed.[115] One more recent appellate decision, however, concluded that the defense should be available to a witness who could show a want of *either* an intervening adverse impact *or* of likely exposure of his false statement.[116] Even without the operation of subsection 1623(d), relatively contemporaneous corrections of earlier statements may negate any inference that the witness is knowingly presenting false testimony and thus preclude conviction for perjury.[117]

# Subornation of Perjury (18 U.S.C. § 1622)

Section 1622 outlaws procuring or inducing another to commit perjury: "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned for not more than five years, or both." [118] The crime consists of two elements – (1) an act of perjury committed by another (2) induced or procured by the defendant.[119] Perjury under either Section 1621 or Section 1623 will support a conviction for subornation under Section 1622,[120] but proof of the commission of an act of perjury is a necessary element of subornation.[121] Although the authorities are exceptionally sparse, it appears that to suborn one must know that the induced statement is false and that at least to suborn under Section 1621 one must also knowingly and willfully induce.[122] Subornation is only infrequently prosecuted as such perhaps because of the ease with which it can now be prosecuted as an obstruction of justice under either 18 U.S.C. §§ 1503 or 1512[123] which, unlike Section 1622, do not insist upon suborner success as a prerequisite to prosecution.[124]

---

[115] United States v. Moore, 613 F.2d 1029, 1043-44 (D.C. Cir. 1979); United States v. Srimgeour, 636 F.2d 1019, 1021 (5th Cir. 1980); United States v. Scivola, 766 F.2d 37, 45 (1st Cir. 1985); United States v. Fornaro, 894 F.2d 508, 510-11 (2d Cir. 1990).

[116] United States v. Smith, 35 F.3d 344, 345 (8th Cir. 1994).

[117] United States v. McAfee, 8 F.3d 1010, 1014 (5th Cir. 1993).

[118] 18 U.S.C. § 1622.

[119] United States v. Pabey, 664 F.3d 1084, 1095 (7th Cir. 2011).

[120] United States v. Endo, 635 F.2d 321, 322 (4th Cir. 1980).

[121] United States v. Hairston, 46 F.3d 361, 376 (4th Cir. 1995) (if the underlying perjury conviction is reversed for insufficient evidence, the subornation conviction must likewise be reversed); *see also* United States v. LeMoure, 474 F.3d 37, 44 (Section 1622 requires proof of actual perjury …"); United States v. Silverman, 745 F.2d 1386, 1394 (11th Cir. 1984).

[122] Rosen v. N.L.R.B., 735 F.2d 564, 575 n.19 (4th Cir. 1980) ("[I]t is true that a necessary predicate of the charge of subornation of perjury is the suborner's belief that the testimony sought is in fact false"); Petite v. United States, 262 F.2d 788, 794 (4th Cir. 1959) ("It is essential to subornation of perjury that the suborner should have known or believed or have had good reason to believe that the testimony given would be false, that he should have known or believed that the witness would testify willfully and corruptly, and with knowledge of the falsity; and that he should have knowingly and willfully induced or procured the witness to give such false testimony") (*Petite* only refers to Section 1621 since it was decided prior to the enactment of Section 1623).

[123] United States v. Miller, 161 F.3d 977, 982-84 (6th Cir. 1998).

[124] 18U.S.C. § 1503 (emphasis added) ("Whoever ... *endeavors* to influence, obstruct, or impede the due administration of justice ... "); § 1512 (b) (emphasis added) ("Whoever ... corruptly persuades another person, or attempts to do so ... with intent to influence ... the testimony of any person in an official proceeding ... ").

# Conspiracy (18 U.S.C. § 371)

Section 371 outlaws conspiring to commit another federal offense, including making a false statement in violation of Section 1001, perjury under Sections 1621 and 1623, and subornation of perjury under Section 1622.[125] As a general matter, conspiracy requires the agreement of two or more people to commit a federal crime and for one of the parties to commit some affirmative act in furtherance of the scheme.[126] Conspiracy under Section 371 is punishable by imprisonment for not more than five years.[127] Conspiracy is a separate crime, and offenders may be punished for conspiracy, as well as for the commission of the crime that is the object of the offense, and for any crime committed in the foreseeable furtherance of the crime.[128]

# Perjury as a Sentencing Factor (U.S.S.G. § 3C1.1)

Perjury, subornation of perjury, and false statements are each punishable by imprisonment for not more than five years.[129] They are also punishable by a fine of not more than $250,000 (not more than $500,000 if the defendant is an organization). When the defendant is convicted of a crime other than perjury or false statements, however, perjury or false statements during the investigation, prosecution, or sentencing of the defendant for the underlying offense will often be treated as the basis for enhancing his sentence by operation of the obstruction of justice guideline of the U.S. Sentencing Guidelines (U.S.S.G. §3C1.1).

Federal sentencing begins with, and is greatly influenced by, the calculation of the applicable sentencing range under the Sentencing Guidelines.[130] The Guidelines assign federal felony

---

[125] *E.g.*, United States v. Fidse, 862 F.3d 516, 519 (5th Cir. 2017); United States v. Weaver, 860 F.3d 90, 93 n.4 (2d Cir. 2017); United States v. Mehanna, 735 F.3d 32, 41 (1st Cir. 2013); United States v. Stewart, 433 F.3d 273, 280 (2d Cir. 2006); United States v. Ruhbayan, 406 F.3d 292, 296 (4th Cir. 2005).

[126] 18 U.S.C. § 371; United States v. Wells, 873 F.3d 1241, 1257 (10th Cir. 2017); United States v. Berroa, 856 F.3d 141, 154 (1st Cir. 2017); Untied States v. Collins, 854 F.3d 1324,13428 (11th Cir. 2017).

[127] 18 U.S.C. § 371.

[128] Pinkerton v. United States, 328 U.S. 640, 647 (1946); United States v. Myers, 854 F.3d 341, 355 (6th Cir.2017); United States v. Morrison, 833 F.3d 491, 502 n.2 (5th Cir. 2016); United States v. Christensen, 828 F.3d 763, 795 (9th Cir. 2015); United States v. Ballestas, 795 F.3d 138, 147 (D.C. Cir. 2015).

[129] 18 U.S.C. §§ 1621, 1622, 1623, 1001. Section 1001, the principal false statement statute, sets a maximum term of eight years if the offense also involves a federal crime of terrorism or one of the designated federal sex offenses.

[130] Gall v. United States, 552 U.S. 38, 49-51 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range ... [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C] §3553(a) factors to determine whether they support the sentence requested by a party ... If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing....
Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.
Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. But if the sentence is outside the Guidelines range, the court may not apply a (continued...)

offenses a base offense level to which they add levels for various aggravating factors. Obstruction of justice is one of those factors. Each of the final 43 offense levels is assigned to one of six sentencing ranges, depending on the extent of the defendant's past crime history. For example, a final offense level of 15 means a sentencing range of from 18 to 24 months in prison for a first time offender (criminal history category I) and from 41 to 51 months for a defendant with a very extensive criminal record (criminal history category VI).[131] Two levels higher, at a final offense level of 17, the range for first time offenders is 24 to 30 months; and 51 to 63 months for the defendant with a very extensive prior record.[132] Depending on the final offense level otherwise applicable to a particular crime, the impact of a 2-level increase spans from no impact at the lowest final offense levels to a difference of an additional 68 months at the highest levels.[133]

Section 3C1.1 instructs sentencing courts to add 2 offense levels in the case of an obstruction of justice:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.[134]

The accompanying commentary explains that the section "is not intended to punish a defendant for the exercise of a constitutional right."[135] More specifically, a "defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision."[136] Early on, the Supreme Court made it clear that an individual's sentence might be enhanced under Section 3C1.1, if he committed perjury during the course of his trial.[137] Moreover, the examples provided elsewhere in the section's commentary and the cases applying the section confirm that it reaches perjurious statements in a number of judicial contexts and to false statements in a number of others. The examples in the section's commentary cover conduct:

> (B) committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction;

> (F) providing materially false information to a judge or magistrate;

> (G) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;

> (H) providing materially false information to a probation officer in respect to a presentence or other investigation for the court; [and]

---

(...continued)

presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the §3553(a) factors, on a whole, justify the extent of the variance").

[131] U.S.S.G. ch. 5 Sentencing Table.

[132] *Id.*

[133] *Id.*

[134] U.S.S.G. §3C1.1.

[135] *Id.*, cmt., app. n. 2.

[136] *Id.*

[137] United States v. Dunnigan, 507 U.S. 87, 98 (1993).

(I) other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (*e.g.*, 18 U.S.C. §§1510, 1511).[138]

The courts have concluded that a sentencing enhancement under the section is appropriate, for instance, when a defendant has (1) given perjurious testimony at his suppression hearing;[139] (2) made false statements to the probation officer for the presentence report;[140] (3) given perjurious, exculpatory testimony at the separate trial of his girl-friend;[141] (4) made false statements in connection with a probation officer's bail report;[142] (5) made false statements to the court in an attempt to change his guilty plea;[143] (6) made false statements to federal investigators;[144] (7) encouraged a witness to lie to the police or on the stand;[145] (8) made false statements to state investigators relating to conduct for which the defendant was ultimately convicted;[146] or (9) given preposterous, perjurious testimony during his own trial.[147] The lower federal appellate courts are divided over the question of whether an obstruction of justice enhancement may be based on a defendant's false statement of indigence in order to secure appointment of counsel.[148]

When perjury provides the basis for a sentencing enhancement under the section, the court must find that the defendant willfully testified falsely with respect to a material matter.[149] Thus, the

---

[138] U.S.S.G. §3C1.1, cmt., app. n. 4(a).

[139] United States v. Jones, 872 F.3d 483, 493 (7th Cir. 2017).

[140] United States v. Young, 811 F.2d 592, 604 (2d Cir. 2016); United States v. Smith, 804 F.3d 724, (5th Cir. 2015).

[141] United States v. Quintero, 618 F.3d 746, 752-53 (7th Cir. 2010).

[142] United States v. Lasseque, 806 F.3d 618, (1st Cir. 2015); United States v. Bedolla-Zavala, 611 F.3d 392, 395 (7th Cir. 2010).

[143] United States v. Alvarado, 615 F.3d 916, 922-23 (8th Cir. 2010).

[144] United States v. Montanari, 863 F.3d 775, 780 (8th Cir. 2017); United States v. Quirion, 714 F.3d 77, 79 (1st Cir. 2013) ("Making false statements, not under oath, to law enforcement officers, without more, will not trigger the enhancement. The enhancement is triggered, however, if a defendant provided a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense.").

[145] United States v. Thomas, 833 F.3d 785, 793-94 (7th Cir. 2016); United States v. Batchu, 724 F.3d 1, 12 (1st Cir. 2013).

[146] United States v. Alexander, 602 F.3d 639, 642-43 & n.4 (5th Cir. 2010)("The First, Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have all held that obstruction of a state investigation based on the same facts as the eventual federal conviction qualifies for enhancement under U.S.S.G. §3C1.1.... Only the Seventh Circuit has held the obstruction of a state proceeding does not qualify ... ").

[147] United States v. Johnson, 880 F.3d 226, 233 (5th Cir. 2018); United States v. Jackson, 865 F.3d 946, 955 (7th Cir. 2017); United States v. King, 854 F.3d 433, 446-47 (8th Cir. 2017); United States v. Barson, 845 F.3d 159, 167-68 (5th Cir. 2016); United States v. Johnson, 812 F.3d 757, 761-62 (9th Cir. 2016); United States v. Sanchez, 725 F.3d 1243, 1252 (10th Cir. 2013) ("An automatic finding of untruthfulness, based on the [jury's] verdict alone, would impinge upon the constitutional right to testify on one's own behalf. The district court must make a specific finding that independent of the jury verdict, defendant committed perjury."); United States v. Kennedy, 714 F.3d 951, 961-62(6th Cir. 2013) ("The court must 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury.").

[148] United States v. Iverson, 874 F.3d 855, 858-59 (5th Cir. 2017) ("*See* United States v. Hernandez-Ramirez, 254 F.3d 841, 842-43 (9th Cir. 2001); United States v. Ruff, 79 F.3d 123, 125-26 (11th Cir. 1996).") (citing to the contrary United States v. Khimchiachvili, 372 F.3d 75, 80, 82-3 (2d Cir. 2004)).

[149] United States v. Johnson, 880 F.3d 233 (5th Cir. 2018); United States. v. Jones, 872 F.3d 483, 493 (7th Cir. 2017) ("In applying this enhancement based on perjury, the district court should indicate it has found the elements of perjury: falsity, materiality, and willfulness."); United States v. Brown, 857 F.3d 334, 342 (6th Cir. 2017) ("Brown's statements do not establish obstruction of justice for two reasons. The first is that Brown did not lie. ... The second reason is that the email did not hurt or retard the investigation."); United States v. Thomas, 832 F.3d 1166, 1174 (9th Cir. 2016).

---



# Express



SHIP DATE: 1
ACTWGT: 2.0
CAD: 114512?

BILL SENDER

ORIGIN ID:BUCA    (650) 871-6251
RICK FERGUSON
1212H EL CAMINO REAL

SAN BRUNO, CA 94066
UNITED STATES US

TO US DISTRICT COURT SOUTHERN DIS
PRO SE INTAKE UNIT
500 PEARL ST
STE 200
NEW YORK NY 10007
(919) 080-2074           REF#: RICK FERGUSON
INV:
PO#: PKG ID: 1426EB                    DEP1:

TRK#
0201    7790 3612 9996                    THU - 19
                                          K2 PCTA    NY-

RECEIVED
DEC 12 2019
PRO SE OFFICE

SEE NOTICE ON REVERSE regarding UPS Terms and Conditions of Carriage...