```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MARSH & MCLENNAN AGENCY LLC,                                :
                                                            :
                                                            :
                              Plaintiff,                    :
                                                            :                19-CV-3837 (VSB)
                - against -                                 :
                                                            :                **OPINION & ORDER**
                                                            :
ELMER "RICK" FERGUSON,                                      :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

Appearances:

A. Michael Weber
Daniella Adler
Kevin K. Yam
Littler Mendelson, P.C.
New York, NY
*Counsel for Plaintiff*

Elmer "Rick" Ferguson
San Bruno, CA
*Pro se Defendant*

VERNON S. BRODERICK, United States District Judge:

      On July 2, 2021, I issued an Opinion & Order which, among other things, granted the motion of Defendant Elmer "Rick" Ferguson ("Defendant" or "Ferguson") to compel arbitration of Plaintiff Marsh & McLellan Agency LLC's claims that Ferguson poached its clients following the termination of his employment ("July 2021 Opinion" or "July 2021 Op."). The arbitration resulted in an award in Plaintiff's favor. Now before me are: (1) Plaintiff's motion to enforce the arbitration award; (2) Defendant's motion, filed pro se, to dismiss Plaintiff's claims, reverse my prior orders, and vacate the arbitration award. I construe Defendant's motion as a motion for

reconsideration of my July 2021 Opinion, to vacate or modify the arbitration award, and as an opposition to the motion to enforce the arbitration award. Because I find that Defendant has failed to meet the requirements for reconsideration, and that there is no basis to vacate or modify the arbitration award, Defendant's motion for reconsideration is DENIED, Defendant's motion to vacate or modify the arbitration award is DENIED, Plaintiff's motion to enforce the arbitration award is GRANTED, and the award is CONFIRMED.

### I. Factual Background[1]

As relevant here, Ferguson worked in various capacities as a retirement investment plan advisor for Plaintiff Marsh & McLellan Agency LLC ("MMA"), its pre-merger predecessor Barney & Barney ("B&B"),[2] a regional insurance brokerage company, and affiliates of these companies. (July 2021 Op. at 5.) "MMA is a national firm serving corporate clients that has three divisions: (1) Employee Health and Benefits, (2) Business Insurance, and (3) Retirement Services." (*Id*. at 10.)

"[F]ederal rules and regulations" require entities providing "investment advice with respect to corporate retirement plans" to register as broker-dealers with the Financial Industry Regulatory Authority ("FINRA").[3] (*Id*. at 10–11.) These regulations also require advisors at broker-dealers to register as such with FINRA. (*Id*.)

---

[1] The brief overview of the relevant facts in this section are drawn from my July 2021 Opinion. (*See* July 2021 Op. 5–20.) The July 2021 Opinion contains a more detailed recitation of the factual background. (*See id*.)

[2] Ferguson worked for Barney & Barney between February 2007 and February 2014. (July 2021 Op. 5.) "MMA acquired and merged with Barney & Barney" in February 2014, at which time Ferguson became an MMA employee. (*Id*. 7.)

[3] *See* Order Approving FINRA Proposed Rule Changes Regarding Payments to Unregistered Persons, 80 Fed. Reg. 553, 555 (Dec. 30, 2014) (explaining that under FINRA Rule 2040(a), registered broker-dealers generally may not, "directly or indirectly," pay "any compensation, fees, concessions, discounts, commissions or other allowances" to unregistered entities); *but see, e.g.*, Securities Industry and Financial Markets Association, SEC Staff No-Action Letter, 2013 WL 1771299, at *1 (Apr. 23, 2013) ("Over the last several decades, the Staff has issued a number of no-action letters that permit insurance agencies to enter into insurance networking arrangements with registered broker-dealers for the offer and sale of variable products—which are both insurance products under state law and

As a result of these rules and regulations, Ferguson did not provide any investment advice directly through MMA, but instead through various broker-dealer subsidiaries, which then remitted a portion of their investment-advice revenues to MMA. (*Id.*) In 2015 and 2018, Ferguson completed investment-advisor registration forms—the Uniform Application for Securities Industry Registration or Transfer form ("Form U4")—in connection with his work for MMA and two of its registered broker-dealer affiliates, SagePoint Financial, Inc. ("SagePoint") and MMA Securities LLC ("MMAS").[4] (*Id.*) On these forms, Ferguson agreed to arbitrate any dispute or controversy that might arise between himself and MMAS. (*Id.*)

Over the years, Ferguson rose through the ranks at B&B and MMA, beginning in February 2007 in an "analyst" role, transitioning in 2012 to a "sales" role, then transitioning in early 2015 to a "'hybrid' service/sales role." (*Id.* at 5–6, 9.) However, in August 2018, Ferguson became upset with MMA, since he felt the company was unfairly reassigning some of the clients he serviced to a newly hired salesman. (*Id.* at 12–13.) Ferguson sent accusatory emails in September and December 2018 regarding this change. (*Id.*) In contentious back-to-back December 2018 meetings, various MMA employees reinforced to Ferguson that the accounts would be reassigned, and told Ferguson that his employment could be terminated if he continued to engage in inappropriate behavior such as the accusatory emails. (*Id.* at 13–17.) Shortly thereafter, Ferguson "began laying the groundwork to take up a new position at another firm, called Teros Advisors," ("Teros"). (*Id.* at 17.) Ferguson officially separated from MMA and joined Teros in February 2019. (*Id.* at 19–20.) That month, "Ferguson (1) e-mailed himself a

---

securities under the federal securities laws—without the insurance agencies registering as broker-dealers under Section 15(b) of the Exchange Act.").

[4] SagePoint was Barney & Barney's broker-dealer at the time of MMA's acquisition of the firm; Ferguson registered with both SagePoint and MMAS in 2015, and MMA switched exclusively to MMAS as its broker-dealer in July 2018. (July 2021 Op. 11.)

significant amount of client information, (2) reconstructed a spreadsheet of client information on his personal computer, and (3) used the client information in his possession to solicit multiple former clients to follow him to [Teros], many of which did follow him and left MMA." (*Id*. at 5; *see also id*. at 17–20.)

## II.   Procedural History

MMA filed the instant action on April 30, 2019. (*See* Doc. 1; Doc. 57 ("Compl").)[5] Its complaint asserted ten causes of action against Ferguson: (1) breach of contract, (Compl. ¶¶ 95–104); (2) breach of the duty of loyalty, (*id*. ¶¶ 105–10); (3) tortious interference with existing and prospective business relations, (*id*. ¶¶ 111–20); (4) unfair competition, (*id*. ¶¶ 121–28); (5) statutory unfair competition and unfair business practices in violation of California law, (*id*. ¶¶ 129–34); (6) misappropriation of confidential information, (*id*. ¶¶ 135–42); (7) violation of the California Labor Code, (*id*. ¶¶ 143–48); (8) violation of Section 502 of the California Penal Code, (*id*. ¶¶ 149–54); (9) defamation, (*id*. ¶¶ 155–62); and (10) violation of the California Uniform Trade Secrets Act, (*id*. ¶¶ 163–74). Simultaneously, MMA submitted to my chambers a hard copy of a proposed Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction and supporting papers. (July 2021 Op. at 2.)

On May 9, 2019, I granted a temporary restraining order preventing Ferguson from using MMA's confidential or proprietary information. (Doc. 10.) The subsequent procedural history is detailed in my July 2, 2021 Opinion & Order. (*See* July 2021 Op. 2–5.)[6] In that Opinion, I: (1) granted MMA's motion for a preliminary injunction, (*id*. at 32–39); (2) denied Ferguson's motion

---

[5] MMA re-filed the complaint on July 12, 2019, (Doc. 57), as the originally filed complaint, (Doc. 1), inadvertently omitted certain pages.

[6] I note that Ferguson initially appeared in this action represented by counsel. (*See* Docs. 7–8.) I granted Ferguson's attorney's motion to withdraw on September 6, 2019, (Doc. 70), and Ferguson appeared pro se on September 19, 2019, (Docs. 75–76).

4

to dismiss MMA's complaint for lack of standing, (*id*. at 20–26); and (3) granted Ferguson's motion to compel arbitration of this action before FINRA, (*id*. at 26–32).

Following my July 2021 Opinion, the parties arbitrated MMA's claims against Ferguson before FINRA Dispute Resolution Services (the "Arbitrator"). (*See* Docs. 113, 115, 118, 119, 122 (status reports).) The Arbitrator held a hearing in June 2023, and on October 6, 2023 rendered an opinion and award in MMA's favor, (the "Award"). (*See* Doc. 123-1 ("Award").)[7] The Arbitrator also found that claims Ferguson lodged against MMA in the arbitration were without merit. (*Id*.)

On November 21, 2023, MMA filed a motion to confirm the Award, (Doc. 126), a supporting memorandum of law (Doc. 127 ("Arb. Mot.")), and a declaration, (Doc. 128 ("1st Weber Decl.")). The same day, Ferguson filed a "motion to dismiss Plaintiff's claims, reverse prior orders, and vacate FINRA award." (Doc. 129 at 1 (capitalization altered).) Ferguson refiled this motion on December 4, 2023 with corrected exhibits. (Doc. 133 ("Def. Mot."); *see also* Doc. 131 (Defendant's letter explaining refiling).) As discussed *infra* § IV, I construe Ferguson's motion as a motion for reconsideration of my July 2021 Opinion, a motion to vacate the FINRA Award, and as an opposition to Plaintiff's motion to confirm the Award. On December 4, 2023, MMA filed a memorandum of law in opposition to Ferguson's motion, (Doc. 132 ("Opp'n Def. Mot.")), and a supporting declaration, (Doc. 134 ("2d Weber Decl.")). On December 11, 2023, MMA filed a reply memorandum of law in support of its motion to confirm the Award, (Doc. 136 ("Arb. Reply")), and a supporting declaration, (Doc. 137 ("3d Weber Decl.")). The same day, Ferguson filed a reply in support of his motion. (Doc. 139 ("Def.

---

[7] Pincites to this document refer to the internal pagination of the Award. The Award is also in the record as an attachment to the First Weber Declaration, (Doc. 128-20), an exhibit to Ferguson's motion, (Doc. 133 at 31–69), an attachment to the Second Weber Declaration, (Doc. 134-31), and an attachment to the Third Weber Declaration, (Doc. 137-20–137-21).

5

Reply").) On April 23, 2024, Ferguson resubmitted various documents not previously filed. (Docs. 140–41.)

### III. Legal Standards

#### A. *Reconsideration*

Local Rule 6.3 as well as Federal Rules of Civil Procedure 59(e) and 60(b) each authorize a form of reconsideration of a prior order or judgment, and each Rule is governed by the same standard. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016). "A motion for reconsideration" under any of these Rules "should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted). A party may not use a motion for reconsideration as "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation modified). In addition, "a party is 'barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.'" *Berg v. Kelly*, 343 F. Supp. 3d 419, 424 (S.D.N.Y. 2018) (quoting *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 315 (S.D.N.Y. 2013)). "[T]he 'reconsideration rule' must be 'narrowly construed and strictly applied so as to avoid duplicative rulings on previously considered issues.'" *Id.* at 424 (quoting *Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016)).

### B. *Confirmation of Arbitration Award*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted). An award may only be "vacated, modified, or corrected 'as prescribed' in [Sections] 10 and 11." *Hall St. Assocs.*, 552 U.S. at 582 (quoting 9 U.S.C. § 9).

"The party moving the court to vacate [modify, or correct] an arbitral award 'must clear a high hurdle,' and bears a 'heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law.'" *Sea Shipping Inc. v. Half Moon Shipping, LLC*, 848 F. Supp. 2d 448, 454 (S.D.N.Y. 2012) (first quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010), then quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("The showing required to avoid summary confirmation of an arbitration award is high."). Under Section 10 of the FAA, a district court may vacate an arbitration award on four grounds, including "where there was evident partiality or corruption in the arbitrators, or either of them" or "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(2), (3). Section 11 authorizes a district court to modify or correct an award if, *inter alia*, "there was an evident material

7

miscalculation of figures or . . . in the description of any person, thing, or property referred to in the award," or if "the arbitrators have awarded upon a matter not submitted to them." 9 U.S.C. § 11(a)–(b). "Consistent with federal policy favoring arbitration, these . . . provisions are to be accorded the narrowest of readings." *Beljakovic v. Melohn Properties, Inc.*, No. 04-CV-3694, 2012 WL 5429438, at *2 (S.D.N.Y. Nov. 7, 2012) (internal quotation marks omitted), *aff'd*, 542 F. App'x 72 (2d Cir. 2013) (summary order).

Additionally, "an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121–22 (2d Cir. 2011) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 208 (2d Cir. 2002)). The party seeking to vacate an arbitration award on this ground must show that "'the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable,'" and that "the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" *Id.* at 121 n.1 (quoting *Westerbeke*, 304 F.3d at 209). In other words, an award may not be vacated "because of 'a simple error in law or a failure by the arbitrators to understand or apply it,' but only when a party clearly demonstrates 'that the panel intentionally defied the law.'" *STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389, 393 (2d Cir. 2003)).

### C. *Pro Se Litigant*

"Courts afford a special solicitude to motions brought by *pro se* litigants, including motions for reconsideration." *Weir v. Montefiore Med. Ctr.*, No. 23-CV-4468, 2024 WL 2049411, at *3 (S.D.N.Y. May 6, 2024) (citing *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010)), *aff'd*, No. 24-1527, 2025 WL 289497 (2d Cir. Jan. 24, 2025). Further, all pleadings of a

8

pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "That said, this solicitude does not 'excuse frivolous or vexatious filings by *pro se* litigants,' nor does it require the Court to raise 'arguments that the submissions themselves do not suggest.'" *Weir*, 2024 WL 2049411, at *3 (first quoting *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2005), then quoting *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

## IV. Discussion

In the various pending motions, Plaintiff seeks to confirm the FINRA Award, (*see* Arb. Mot.), and Defendant seeks to reverse my prior orders "under Rule 60," to dismiss Plaintiff's claims for lack of standing, and to vacate the FINRA Award, (Def. Mot. 7, 8–14). Given that I ruled on Defendant's motion to dismiss for lack of standing in my July 2021 Opinion, (*see* July 2021 Op. 20–26), that Defendant specifically invokes Federal Rule of Civil Procedure 60, which governs "relief from [an] . . . order," Fed. R. Civ. P. 60(b) (capitalization altered), and that Defendant did not file a formal opposition brief to Plaintiff's motion to confirm the FINRA Award, I liberally construe Defendant's motion as a motion for reconsideration, a motion to vacate the FINRA Award, and as an opposition to Plaintiff's motion to confirm the Award. *Cf. Castro v. United States*, 540 U.S. 375, 381–82 (2003) ("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to . . . create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis.").

Having liberally construed Ferguson's motions, I first address his arguments for why he is entitled to reconsideration of my July 2021 Opinion. Concluding that reconsideration of the

9

July 2021 Opinion is unwarranted, I next address the motion to confirm, vacate, modify, and/or correct the Award. I conclude that Defendant has not carried his "heavy burden" of showing that vacatur or modification of the Award is appropriate.

### A. *Reconsideration*

Ferguson invites reconsideration of his argument—an argument I rejected in my July 2021 Opinion, (July 2021 Op. 20–26)—that Plaintiff MMA has not suffered a legally cognizable injury sufficient to for it to have Article III standing to bring any of its claims, (Def. Mot. 8–14).

#### 1. Timeliness

As a preliminary matter, Defendant's reconsideration motion is time barred. My July 2021 Opinion issued on July 2, 2021. (*See* July 2021 Op.) Plaintiff filed his motion for reconsideration on November 21, 2023, (*see* Def. Mot. 24), 872 days (over two years) after I issued my July 2021 Opinion. Local Rule 6.3 provides that "notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." Federal Rule of Civil Procedure 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Federal Rule of Civil Procedure 60(c)(1) provides that a motion under Rule 60(b) "must be made . . . no more than a year after the entry of the judgment or order" that is being challenged.[8] Ferguson's motion is untimely under either of these Rules, that on its own is a sufficient basis to deny reconsideration. *See, e.g.*, *Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03-CV-10254, 2009 WL 4667102, at *3 (S.D.N.Y. Dec. 9, 2009) ("Failure to adhere to Local Rule 6.3's time limitations is in and of itself a sufficient reason to deny a motion for reconsideration."); *Corbett v. Guardian Worldwide Moving Co.*, 164 F.R.D.

---

[8] On reply, Ferguson claims his motion falls under Rule 60(a), (Def. Reply 6), but Rule 60(a) "deals solely with the correction of errors that properly may be described as clerical or as arising from oversight or omission," 11 Fed. Prac. & Proc. Civ. § 2854 (3d ed. Apr. 2025 update). Since Ferguson seeks to "change what has been deliberately done," Rule 60(a) does not apply. *Id.*

10

323, 327 (E.D.N.Y. 1995) (denying Rule 59(e) motion as untimely); *Stefanopoulos v. City of N.Y.*, 299 F. App'x 49, 50 (2d Cir. 2008) (summary order) (affirming denial of Rule 60 motion as untimely). As I next discuss, if Defendant's motion were timely, he has not established that reconsideration of my conclusion that MMA has standing is warranted.

### 2. New Evidence

Ferguson's attempt to present testimony from MMA's witnesses during the arbitration as "new evidence" to support reconsideration is without merit. *Kolel Beth Yechiel Mechil*, 729 F.3d at 104. (*See* Doc. 129 at 26–29.) First, "when arguing for reconsideration based on new evidence, the moving party must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence before the court issued the earlier, adverse decision." *Doe v. Combs*, No. 24-CV-8054, 2024 WL 4753565, at *1 (S.D.N.Y. Nov. 12, 2024) (citation modified). Here, many of the witnesses who gave purportedly inconsistent testimony in the arbitration were MMA employees available for Ferguson's examination at the October 3, 2019 evidentiary hearing held before me. (*Compare* Doc. 129 at 26–27 (listing witnesses' purportedly inconsistent testimony), *with* Doc. 67 (listing same witnesses as attending 2019 evidentiary hearing).) Ferguson makes no attempt to explain why he could not have examined any other witnesses at this hearing, or deposed them during the subsequent period of discovery. (*See* Doc. 72 (granting leave for Ferguson to serve subpoenas).) Second, given the untimeliness of Ferguson's motion, Rule 60 only permits relief based on "fraud upon the court," and "new evidence which contradicts [prior] testimony . . . is insufficient for [such] a finding." *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972) (discussing Rule 60(b)). Third, the testimony during the arbitration hearing did not contradict my previous conclusion that "MMA had its own economic interest in [MMAS's] client list."

11

(July 2021 Op. 24.) Rather, Ferguson's cherry-picked quotations aside, each of the witnesses' testimony as a whole is consistent with the notion that MMA suffered an injury in fact when MMAS lost clients. (*See* Opp'n Def. Mot. 13–18.)

Thus, Ferguson may not obtain reconsideration on this ground.

### 3. Clear Error or Manifest Injustice

Even if Ferguson's motion were timely, and even if I were to revisit the reasoning of my July 2021 Opinion, Ferguson has not shown the type of "clear error" or "manifest injustice" warranting a different outcome. *Kolel Beth Yechiel Mechil*, 729 F.3d at 104 (internal quotation marks omitted). With regard to Ferguson's standing argument, a necessary element of standing is that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified).[9] Also relevant to Ferguson's argument is the "axiom[] that corporate parents cannot generally bring suit for injuries to their subsidiaries." *Suedrohrbau Saudi Co. v. Bazzi*, No. 19-CV-5130, 2021 WL 980883, at *3 (E.D.N.Y. Mar. 16, 2021) (citing, *inter alia*, *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 420 (S.D.N.Y. 2011); Deborah A. DeMott, Shareholder Deriv. Actions: L. & Prac. § 2:2 (2020–21)). Here, (1) MMA's asserted injuries are the monetary value of the client business that Ferguson poached when he left to Teros Advisors; and (2) due to federal regulations, Ferguson provided any investment advice to MMA's clients through MMAS, which is MMA's subsidiary. *See supra* § I. Ferguson also states that "the retirement plans at issue in this case were clients of [MMAS], which is a separate legal entity from MMA." (Def.

---

[9] The other elements of standing, not relevant here, are that the injury is "fairly traceable to the challenged action of the defendant," and that it is "likely . . . that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (citation modified).

Mot. 9.) Thus, Ferguson argues that any lost client business was an injury to MMAS, not MMA, such that MMA lacks an injury in fact sufficient to establish standing under Article III.[10]

In my July 2021 Opinion, I explained that since MMA (a) provided administrative and financial support to MMAS, (b) recruited employees on behalf of MMAS, (c) received a portion of MMAS's revenue, and (d) cross-sold its own products from lines of business unaffected by the broker-dealer rule to MMAS clients, "MMA had its own economic interest in [MMAS's] client list, even if the clients' contractual relationship was with MMAS." (July 2021 Op. 22–24.) I also examined Ferguson's specific employment arrangement, concluding that various aspects of his relationships with MMA and MMAS supported the proposition that Ferguson's poaching of MMAS clients harmed MMA directly. (*Id*. 24–26.)

Ferguson's primary contention in support of reconsideration seems to be that MMA's arrangement with MMAS—that MMAS provided the services of a registered broker-dealer to MMA's benefit—was contrary to federal and state law. (*See* Def. Mot. 9–14.) For instance, Ferguson states that if my prior finding that MMAS paid a portion of its clients' fees to MMA were true, "MMA would have been acting as an unregistered investment adviser by receiving compensation for the provision of investment advice." (*Id*. at 14.) He further states that my July 2021 Opinion "has authorized MMA to act as an unregistered investment adviser in clear violation of federal and state law." (*Id*.)

There are multiple problems with this argument. For one, it is not at all clear that MMA and MMAS are violating the law. As the Arbitrator pointed out in rejecting the same contention,

---

[10] As Ferguson concedes, he "put forth" this argument "previously" in moving to dismiss MMA's claims against him. (Def. Mot. 7; *see also* Doc. 24 at 8–12 (asserting argument in briefing on Defendant's prior motion to dismiss).) This is another independent reason to deny Ferguson's motion, as a motion for reconsideration is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs.*, 684 F.3d at 52 (citation modified).

13

MMA and MMAS "are working within a highly regulated structure," and Ferguson "worked within said structure since 2007, first with Barney & Barney as his employer, using his FINRA registration [at SagePoint] to provide [B&B] clients securities services; and then with MMAS." (Award 15–16.)  Ferguson cites various enforcement actions purportedly similar to MMA and MMAS's arrangement, but unlike here, where MMAS was a registered broker-dealer, none of the defendants in the cited actions was registered with any regulator.  *See* Compl., *SEC v. Concord Mgmt. LLC*, No. 23-CV-8253 (S.D.N.Y. Sept. 19, 2023), ECF No. 1 ¶¶ 71–76 (alleging defendants failed to register as investment advisers).  (*See* Doc. 129-4 at 86–110 (attaching *Concord* complaint); *id*. at 111–20 (attaching similar case from California court).)

More fundamentally, Ferguson misinterprets my July 2021 Opinion and the standing inquiry.  My finding that MMA suffered an injury in fact when Ferguson poached clients serviced through MMAS turned on harms to MMA's "economic interest[s]."  (July 2021 Op. 24.)  By establishing that Ferguson's actions in poaching clients from MMAS harmed MMA's economic interests, MMA established standing to assert its claims against Ferguson, because "monetary harms" are the types of harms "traditionally recognized as providing a basis for a lawsuit in American courts."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (internal quotation marks omitted).  The inquiry into a plaintiff's injury in fact "is distinct from whether a plaintiff has a cause of action" or whether "particular conduct is illegal."  *Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 473 (S.D.N.Y. 2021) (internal quotation marks omitted).  This means that Ferguson's emphasis on the formal distinction between MMA and MMAS is misplaced.  Consider my determination that MMA "has a broader interest in maintaining MMAS'[s] client base because [salespeople] cross-sell products across MMA's three different

14

groups."[11] (July 2021 Op. 24.)  Thus, the loss of an MMAS client also harms MMA's other revenue streams.  (*See id*.)  This injury is "separate and distinct from the injury sustained by" MMAS, and therefore sufficient for Article III purposes to enable MMA to bring suit, *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993).[12]

In a sense, Ferguson seems to assert MMA's relationship with MMAS as a sort of unclean-hands defense, a doctrine which "prohibits awarding equitable relief[13] to a party that has acted fraudulently or deceitfully to gain an unfair advantage." *City of N.Y. v. Fedex Ground Package Sys., Inc.*, 314 F.R.D. 348, 356–57 (S.D.N.Y. 2016).  Courts have considered unclean hands in the context of Article III standing.  *See 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.*, No. 15-CV-4516, 2018 WL 4608198, at *9–10 (E.D.N.Y. Sept. 25, 2018) (rejecting defendant's argument that plaintiff lacked standing due to unclean hands).  However, Ferguson has not shown that MMA's purportedly wrongful conduct "has immediate and necessary relation to the equity that [MMA] seeks in respect to the matter in litigation," nor has he shown he was "injured by [MMA's] allegedly inequitable conduct" of relying on MMAS's broker-dealer registration.  *Id*. at *9 (internal quotation marks omitted).  In other words, even if Ferguson is correct that MMA and MMAS's arrangement violated applicable broker-dealer regulations, he cites no legal authority—nor have I located any—for the proposition that any such violation would affect MMA's standing to bring this lawsuit.

---

[11] MMA's other divisions are "Employee Health and Benefits" and "Business Insurance."  (July 2021 Op. 10.)

[12] As I stated in the July 2021 Opinion, "although Defendant's evidence may suggest that MMAS has standing to bring this action, he fails to offer any evidence or authority establishing that this means that MMA does not have standing to bring this action."  (July 2021 Op. 23.)  *Cf. Excimer Assocs., Inc. v. LCA Vision, Inc.*, 292 F.3d 134, 140 (2d Cir. 2002) ("[W]here the plaintiff's injury is direct, the fact that another party may also have been injured and could assert its own claim does not preclude the plaintiff from asserting its claim directly.").

[13] Although only some of Ferguson's claims are equitable in nature, the unclean-hands defense could perhaps be asserted against the entry of the temporary restraining order or preliminary injunction, which are equitable remedies.  *See Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 533–34 (S.D.N.Y. 2009) (examining the unclean-hands defense).

15

In short, Ferguson has not shown that reconsideration of my July 2021 Opinion is warranted, and his motion is therefore DENIED.

### B.  *Confirmation of Arbitration Award*

I next turn to whether confirmation of the Award is appropriate.  As discussed *supra* § III.B., in most circumstances, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *D.H. Blair*, 462 F.3d at 110 (internal quotation marks omitted).  The Arbitrators found for MMA on seven of its ten claims against Ferguson.[14]  (*See* Award 23–32.)  After noting that MMA sought approximately $836,034 in damages and $1,062,335 in attorneys' fees, the Arbitrators awarded MMA $248,411 in compensatory damages, $248,411 in exemplary damages under the California Uniform Trade Secrets Act, and $267,064.15 in attorneys' fees.  (*See* Award 32–36.)  Having reviewed the Award and the record before me, I find that there is no indication that the Award was procured through fraud or dishonesty, and no indication that the Arbitrators acted in disregard of the applicable law or outside the scope of their authority.  Rather, the record demonstrates that after Ferguson successfully moved before this Court to compel arbitration of MMA's claims, the Arbitrators construed the relevant law, applied it to the evidence before them, and issued an Award accordingly.

Ferguson asserts that the Award was "necessarily based upon findings that MMA had a legally recognizable right to assert ownership over Ferguson's provision of investment advisory

---

[14] Specifically, the Arbitrators found for MMA on its claims for breach of contract, breach of the duty of loyalty, tortious interference, unfair competition, misappropriation, violation of Section 502 of the California Penal Code, and violation of the California Uniform Trade Secrets Act.  (*See* Award 23–32.)  The Arbitrators found that MMA had not sustained its burden of proof on the claims for statutory unfair competition, violation of the California Labor Code, and defamation.  (*See id.*)

16

services to the clients in question." (Def. Mot. 15–16.) Because "MMA was not registered to provide [such] services" under the relevant laws and regulations, Ferguson argues, it follows that the Arbitrators rendered their decision in "manifest disregard of [the] law." (*Id*. at 14, 16.) I disagree.

Ferguson cannot show that "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable" as required for vacatur under the manifest-disregard standard. *Jock*, 646 F.3d at 121 n.1 (quoting *Westerbeke,* 304 F.3d at 209). This is because the Securities and Exchange Commission has "issued a number of no-action letters that permit insurance agencies to enter into insurance networking arrangements with registered broker-dealers for the offer and sale of variable products—which are both insurance products under state law and securities under the federal securities laws—without the insurance agencies registering as broker-dealers under Section 15(b) of the Exchange Act." Securities Industry and Financial Markets Association, SEC Staff No-Action Letter, 2013 WL 1771299, at *1 (Apr. 23, 2013) ("SIFMA Letter"). As the Arbitrators noted in rejecting Ferguson's broker-dealer argument, MMA and MMAS "are working within a highly regulated structure," and an insurer working closely with a third-party broker dealer is a common practice in the industry. (Award 15–16.) In light of this common practice, and that "insurance networking arrangements" appear to be primarily regulated through "no-action letters," *id.*,[15] it was at best "ambiguous" whether MMA violated the applicable regulations, and "misapplication of an ambiguous law does not constitute manifest disregard," *Duferco*, 333 F.3d at 390. *Cf. U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 188 F. Supp. 2d 358, 370–72 (S.D.N.Y. 2002) (concluding that letter from

---

[15] A no-action letter "is an informal response, and does not amount to an official statement of the SEC's views" or "interpose or fix a legal relationship upon any of the parties." *N.Y. City Emps.' Ret. Sys. v. S.E.C.*, 45 F.3d 7, 12 (2d Cir. 1995) (citations omitted).

17

agency attorneys did not "express[] an authoritative 'ruling'" on the law clear enough for an arbitrator to manifestly disregard), *aff'd*, 51 F. App'x 66 (2d Cir. 2002) (summary order).  The opacity of the regulations Ferguson claims to have been violated.[16] dooms his attempt to vacate the Award.

Additionally, there is no evidence that the Arbitrators "intentionally defied the law" under the manifest-disregard standard.  *STMicroelectronics*, 648 F.3d at 78 (internal quotation marks omitted).  Indeed, although Ferguson challenges the decision to award MMA damages against Ferguson on the basis of MMA's standing to receive such damages, *see supra* § IV.A.3, he does not challenge the merits of the arbitration panel's decisions on MMA's claims.  (*See* Def. Mot. 14–22.)  As repeatedly discussed, Ferguson's standing argument fails, and his disagreement with the Arbitrators' conclusions "is not a basis to vacate an arbitration award." *Shenzhen Zongheng Domain Network Co. v. Amazon.com Servs. LLC*, No. 23-CV-3334, 2023 WL 7327140, at *5 (S.D.N.Y. Nov. 7, 2023).

Ferguson has not shown he is entitled to vacatur, modification, or correction of the Award, and his motion for such relief is DENIED.  MMA's motion to confirm the Award is therefore GRANTED.

## V.  Conclusion

For the foregoing reasons, Plaintiff's motion to confirm the arbitration award is GRANTED, and Defendant's motion to dismiss Plaintiff's claims and to vacate or modify the arbitration Award is DENIED.

---

[16] Ferguson's citation, (Def. Mot. 18–21), to another no-action letter, Herbruck, Adler & Co, SEC Staff No-Action Letter, 2002 WL 32169905 (May 3, 2002), reaching a contrary result to the SIFMA No-Action Letter reinforces the point that the laws in this area are not the sort of well-defined rules with which an arbitrator can act in manifest disregard.

On or before June 23, 2025, Plaintiff shall submit a proposed judgment that is consistent with the Award and this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 126, 129, and 133.

SO ORDERED.

Dated: June 9, 2025
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge